IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

RENSSELAER POLYTECHNIC
INSTITUTE AND
DYNAMIC ADVANCES, LLC,

                    Plaintiffs,

          v.

APPLE INC.,

                    Defendant.

Civil Action No.1:13-cv-00633-DNH-DEP

JURY TRIAL DEMANDED

**PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO STAY LITIGATION
PENDING INTER PARTES REVIEW**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT ........................................................................................................... 3

    I.    Legal Standards Governing Apple's Motion to Stay .................................. 3

    II.    Granting a Stay of the Litigation Creates Undue Prejudice and
    Tactical Disadvantage for RPI and Dynamic Advances ............................ 3

        A.    Granting a Stay Prior to the PTO's Institution of Apple's
        Requested IPR Unduly Prejudices RPI and Dynamic
        Advances ....................................................................................... 5

            1.    Litigation stays prior to the PTO's decision to institute
            an IPR are prejudicial to patent owners ............................... 6
            2.    RPI and Dynamic Advances will be unduly prejudiced
            from a stay because Apple's IPR petition is unlikely to
            be instituted ....................................................................... 7

        B.    Even upon Institution of an IPR Proceeding, Staying the
        Litigation Unduly Prejudices RPI and Dynamic Advances ........... 13

    III.    Granting a Stay of the Litigation Will Not Simplify Issues for Trial ........... 18

    IV.    The Stage of This Litigation Supports Denying Apple's Request for
    a Stay ...................................................................................................... 20

CONCLUSION ..................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anascape, Ltd. v. Microsoft,*
  475 F. Supp. 2d 612 (E.D. Tex. 2007) ........................................................................ 15

*Anascape, Ltd. v. Nintendo of Am., Inc.*,
  601 F.3d 1333 (Fed. Cir. 2010) ................................................................................. 15

*Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.,*
  No. 6:12-cv-1727, 2013 U.S. Dist. LEXIS 67790 (M.D. Fla. May 13, 2013)......... 3, 6, 7

*Bausch & Lomb, Inc. v. Rexall Sundown, Inc.*,
  554 F. Supp. 2d 386 (W.D.N.Y. May 19, 2008) ........................................................ 21

*Belden Techs. Inc. v. Superior Essex Commc'ns. LP*,
  No. 08-63-SLR, 2010 U.S. Dist. LEXIS 90960 (D. Del. Sept. 2, 2010) ............... 13, 19

*Biax Corp. v. Fujitsu Computer Sys. Corp.,*
  No. 2:06-cv-364, 2007 U.S. Dist. LEXIS 12973 (E.D. Tex. Feb. 26, 2007)............... 13

*Boston Sci. Corp. v. Cordis Corp.*,
  777 F.Supp. 2d 783 (D. Del. 2011) ............................................................................ 16

*Cooper Notification, Inc. v. Twitter, Inc.*,
  No. 09-865-LPS, 2010 U.S. Dist. LEXIS 131385 (D. Del. Dec. 13, 2010) ............... 14

*Cuozzo Speed Techs. LLC v. Garmin Int'l*
  (D.N.J. Aug. 20, 2012) (No. 2:12-cv-3623) ............................................................... 12

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988) ................................................................................... 6

*Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*,
  Case IPR2012-00001, 25–27 (P.T.A.B. Jan. 9, 2013).............................................. 12

*Heinz Kettler GMBH & Co. v. Indian Indus., Inc.*,
  592 F. Supp. 2d 880 (E.D. Va. 2009) ..........................................................................7

*Idle Free Sys., Inc. v. Bergstrom, Inc.,*
  IPR2012-00027, slip op. (P.T.A.B. June 11, 2013)................................................... 11

*Interval Licensing LLC v. AOL, Inc.*,
  No. C10-1385, 2011 U.S. Dist. LEXIS 51195 (W.D. Wash. Apr. 29, 2011) ................ 6

*Perricone v. Unimed Nutritional Servs., Inc.*,
  No. 3:01-CV-512, 2002 U.S. Dist. LEXIS 17613 (D. Conn. Jul. 18, 2002)................. 21

ii

*Roy-G-Biv Corp. v. Fanuc Ltd.,*
No. 2:07-cv-418, 2009 U.S. Dist. LEXIS 69004 (E.D. Tex. Apr. 14, 2009) ............... 12

*Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.,*
436 F. Supp. 2d 252 (D. Mass. 2006) ..................................................................... 3, 6

*Sears Petroleum & Transp. Corp. v. Archer Daniels Midland Co.,*
No. 5:03-cv-1120-DEP, Dkt. 301 (N.D.N.Y. Oct. 6, 2008) ........................................ 21

*SenoRX, Inc. v. Hologic, Inc.,*
No. 12-173-LPS-CJB, 2013 U.S. Dist. LEXIS 8044 (D. Del. Jan. 11, 2013) ............. 21

*Softview Computer Prods. Corp. v. Haworth, Inc.,*
No. 97 Civ. 8815, 2000 U.S. Dist. LEXIS 11274 (S.D.N.Y. Aug. 9, 2000) .......... 21, 22

*SuperGuide Corp. v. DirectTV Enters.,*
358 F. 3d 870 (Fed. Cir. 2004) ................................................................................. 9

*Tierravision, Inc. v. Google, Inc.,*
No. 11cv2179 DMS(BGS), 2012 U.S. Dist. LEXIS 21463 (S.D. Cal. Feb. 21, 2012) . 22

*Tric Tools, Inc. v. TT Techs., Inc.,*
No. 12-cv-3490, 2012 U.S. Dist. LEXIS 153820 (N.D. Cal. Oct. 25, 2012) ................. 6

*TuitionFund, LLC v. SunTrust Banks, Inc.,*
No. 3:11-00069, 2012 U.S. Dist. LEXIS 144408 (M.D. Tenn. Oct. 5, 2012) ............. 19

*Universal Elecs. Inc. v. Universal Remote Control*,
943 F. Supp. 2d 1028, No. SACV 12-00329 AG, 2013 U.S. Dist. LEXIS 64154 (C.D. Cal. May 2, 2013) ......................................................................................... 3, 18, 21

*Xerox Corp. v. 3Com Corp.*,
69 F. Supp. 2d 404 (W.D.N.Y. 1999) (reexamination request granted) .................... 21

**Rules**

35 U.S.C. § 112 ................................................................................................... 13, 19

35 U.S.C. § 315(e)(1) ............................................................................................... 19

35 U.S.C. § 317(a) ............................................................................................... 19, 20

35 U.S.C. §315(b) ..................................................................................................... 10

35 U.S.C. 316(d) ...................................................................................................... 11

37 C.F.R. § 42.108(a) .................................................................................................. 5

37 C.F.R. 42.121 ...................................................................................................... 11

77 Fed. Reg. 48,689 (Aug. 14, 2012) ............................................................... 5

## INTRODUCTION

Plaintiffs Rensselaer Polytechnic Institute ("RPI") and Dynamic Advances oppose Defendant Apple Inc.'s motion to stay this litigation in its entirety. Apple's motion requests two forms of extraordinary relief: (1) Apple seeks a stay of the litigation for several months pending the U.S. Patent & Trademark Office's ("PTO") decision on whether it will even institute an *inter partes* review ("IPR") proceeding based on Apple's petition challenging the validity of all 21 claims of RPI's U.S. Patent No. 7,177,798 (the '798 Patent); and (2) if the PTO institutes IPR proceedings for even one of the 21 claims of RPI's '798 Patent, Apple requests a further stay of the litigation of an unknown length, but likely more than two years, pending the completion of IPR proceedings. Apple has the burden of establishing that any stay is appropriate and it has not met its burden.

*First*, a stay should be denied because Apple has not come forward with any evidence showing that the PTO is likely to grant the IPR petition Apple actually filed. Apple also has not presented any evidence showing that, if an IPR commences, it is likely to result in a finding that any of the '798 Patent's 21 asserted claims—much less all 21 of the claims—are invalid. Instead, Apple relies exclusively on the small set of IPR statistics available to contend that because many IPR petitions are granted, Apple's petition will likewise be granted and all 21 of the '798 Patent's claims will be invalidated. But Apple's *hope* that it can invalidate all 21 of the asserted claims in an IPR proceeding, before that proceeding has even begun, is not sufficient evidence for Apple to carry its burden for a stay of litigation that will last many years. Plaintiffs will establish herein, with actual evidence and arguments specific to the patent at issue in this case, that Apple's IPR petition is not likely to succeed.

*Second*, a stay should be denied because Apple's delay in filing its IPR petition,

as well as its delay in moving to stay the litigation after filing its petition, will unduly prejudice Plaintiffs if a stay is granted. The America Invents Act requires Apple to file an IPR no later than one year after service of a complaint alleging patent infringement. Apple waited to file its IPR petition for 363 days after it was served with the complaint alleging that it infringes the '798 Patent. Apple then waited more than two months after filing its IPR petition (more than 14 months after service of the complaint) to move for a stay of the litigation—and during that two months Apple conducted extensive document discovery from Plaintiffs and deposed RPI's employee-inventor. As a result, if Apple's stay is granted, Plaintiffs will be severely prejudiced given that the lawsuit will likely not be resolved for more than 4–5 years from the date of its filing.

*Third*, a stay should be denied because it will not simplify the issues for trial. If the PTO does not institute an IPR proceeding, a stay will only prejudice Plaintiffs from needless delay. Even if an IPR proceeding is instituted, a stay would not simplify the issues for trial under the vast majority of possible IPR outcomes. In fact, if the IPR is instituted for some, but not all, of Plaintiffs' asserted claims, a stay would not only fail to simplify the issues for trial—it would increase the complexity of the trial by creating a litany of complex collateral estoppel issues for trial that have never been addressed. And finally, even if an IPR proceeding is instituted for all 21 of Plaintiffs' asserted claims, the *de minimis* simplification of trial issues that could potentially occur is vastly outweighed by the prejudice to Plaintiffs that is certain to arise from having their day in court delayed for several years.

**ARGUMENT**

## I.   Legal Standards Governing Apple's Motion to Stay

District courts are "not required to stay judicial proceedings" pending an *inter partes* review. *Universal Elecs. Inc. v. Universal Remote Control*, 943 F. Supp. 2d 1028, No. SACV 12-00329 AG, 2013 U.S. Dist. LEXIS 64154, at *7 (C.D. Cal. May 2, 2013). Permitting an extended stay pending IPR may prejudice patentees by preventing them from vindicating their rights. *Id.* To determine whether to grant a stay pending an IPR, courts examine the totality of the circumstances, guided by the following three factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay would simplify the issues for trial; and (3) the stage of the litigation. *Id.* at *7–19.

Apple bears the burden of establishing that a stay is appropriate. *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.,* No. 6:12-cv-1727, 2013 U.S. Dist. LEXIS 67790, at *3 (M.D. Fla. May 13, 2013). "To be entitled to a stay, a party must demonstrate a clear case of hardship if there is a danger that the stay will damage the other party." *Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.,* 436 F. Supp. 2d 252, 253 (D. Mass. 2006). In this case, Apple has not demonstrated such clear hardship. And, a stay of the litigation would prejudice Plaintiffs and not simplify the issues for trial.

## II.   Granting a Stay of the Litigation Creates Undue Prejudice and Tactical Disadvantage for RPI and Dynamic Advances

Granting a stay would unduly prejudice and create a tactical disadvantage for Plaintiffs. Apple's motion fails to establish, as it must, a clear case of hardship that would arise from denying a stay and moving forward with the litigation. *Id.* Apple's only

3

attempt to demonstrate clear hardship is its argument that, absent a stay, it will need to expend resources on discovery and claim construction. (Apple Brief at 11–12 (hereinafter "Apple Br.").) However, nowhere does Apple show that expending standard litigation resources, for a company of its size and means, is any hardship. In fact, not only did Apple have no objection to the "hardship" of conducting significant discovery during the two months that elapsed between the date Apple filed its IPR petition and the date it requested a stay from this Court, Apple itself facilitated the allegedly unnecessary expending of resources. Specifically, Apple agreed during a telephonic hearing with this Court—which occurred after it filed the IPR petition—that RPI's inventor deposition should move forward as scheduled. (*See* Ex. 1, Declaration of Alexander E. Gasser ("Gasser Decl.") ¶ 4.) Apple also agreed to the current claim construction schedule during the same telephonic hearing. (Gasser Decl. ¶ 5.)

As such, it is now apparent that Apple wanted the tactical advantage of continuing to take discovery from RPI, regardless of the resources it had to expend, even though Apple had already filed its IPR petition. And now that Apple has taken the document and deposition discovery from RPI that it coveted, Apple seeks to stay this case and prevent RPI from conducting discovery of Apple, citing the expenditure of resources. Although that fact alone illustrates that Apple's motion to stay is designed to create a tactical disadvantage for Plaintiffs—and rebuts Apple's belated claim of hardship—there are a host of additional reasons for which the Court should deny Apple's requested stay based on the undue prejudice and tactical disadvantage it creates for Plaintiffs.[1]

_____

[1] Notably, in an effort to streamline the parties' dispute and avoid the unnecessary and

**A. Granting a Stay Prior to the PTO's Institution of Apple's Requested IPR Unduly Prejudices RPI and Dynamic Advances**

As Apple concedes, the PTAB has not granted Apple's IPR petition on RPI's '798 Patent and there is no guarantee that the PTAB will ever grant the petition. And even if the PTAB were inclined to grant any portion of Apple's IPR petition, the scope of that review is entirely indeterminate until the PTO's actual determination, because the regulations that implement the America Invents Act provide that the PTO may choose to review "all or some of the grounds of unpatentability asserted for each claim." 37 C.F.R. § 42.108(a). In fact, even if all the grounds in a petition are well-taken, the PTO may authorize the review to proceed on only "some of the challenged claims" or on only "some of the grounds of unpatentability asserted for each claim." *Id.* Indeed, the PTO may decline to conduct the review altogether if it cannot proceed with a review within the mandated timeframe. *See* Changes to Implement Inter Partes Review Proceedings, 77 Fed. Reg. 48,689 (Aug. 14, 2012) (to be codified at 37 C.F.R. pt. 42).

---

duplicative expenditure of resources, on December 6, 2013, Plaintiffs proposed to Apple that if the parties agreed to resolve all validity issues arising under 35 U.S.C. §§ 102 or 103 in the IPR proceeding Apple initiated, Plaintiffs would agree to a stay. (Gasser Decl. ¶ 14.) Tellingly, Apple rejected this proposal out of hand without even proposing any modifications that might make this proposal acceptable to Apple. (*Id.* at ¶ 15) While Apple refused to discuss the proposal, Apple's curious statement that it is planning to file a second IPR lays its strategy bare. Apple has forecasted that it plans to file a second IPR, and this could be conceivably followed by an *ex parte* reexamination and Apple could be seeking to use a third party to file an additional IPR to avoid the real party in interest requirement under the AIA. Based on these actions, Plaintiffs contend that judicial and case efficiency are not the real goals Apple is seeking to promote with its motion to stay.

### 1.  Litigation stays prior to the PTO's decision to institute an IPR are prejudicial to patent owners

Apple's requested stay proceeds from the assumption that their IPR petition will be granted for all 21 claims of RPI's '798 Patent. This assumption is a thin reed upon which to grant Apple's motion to stay:

> [I]t seems clear that a stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter-partes* review was filed in the PTO. All in all, a petition can be pending before the PTO for up to six months before the agency decides to "initiate" an *inter-partes* review. This six months is a kind of limbo that requires the court and the parties to wait while the PTO makes its decision. If it chooses not to proceed, this action will have been left languishing on the Court's docket with no discovery, no positioning of the parties on claim construction, and no dispositive motions.

*Automatic Mfg. Sys.* at *7. Apple's request for a "stay [pending a request for *inter-partes* review] is, at best, premature, and at worst, an indicator of a tactical delay strategy." *Tric Tools, Inc. v. TT Techs., Inc.*, No. 12-cv-3490, 2012 U.S. Dist. LEXIS 153820, at *7 (N.D. Cal. Oct. 25, 2012); s*ee also Saint-Gobain Performance Plastics Corp.* at 253 (denying motion to stay pending only a request for reexamination).

The Federal Circuit and courts from multiple jurisdictions have long recognized that a stay is not favored where, as here, the PTO has not yet granted a request for a post-grant challenge. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1424 (Fed. Cir. 1988) (noting that the district court denied a request to stay litigation where the request was filed before the PTO granted the reexamination); *Interval Licensing LLC v. AOL, Inc.*, No. C10-1385, 2011 U.S. Dist. LEXIS 51195, at *13 (W.D. Wash. Apr. 29, 2011) (denying a request for a stay pending reexamination and holding a request for stay pending reexamination was premature where the PTO had not determined whether it would accept the request for reexamination); *Heinz Kettler GMBH & Co. v. Indian*

*Indus., Inc.*, 592 F. Supp. 2d 880, 882 (E.D. Va. 2009) ("Because [defendant's] request for reexamination is still pending, a stay is premature. Put simply, at this juncture, a stay of this litigation is inappropriate.").

Courts have specifically determined that even a six month delay of litigation pending the PTO's decision to initiate IPR proceedings can constitute undue prejudice and present a clear tactical disadvantage to patent owners:

> Thus, because a petition does not shed much light on the potential scope of an *inter partes* review, and **because a stay could delay these proceedings for at least six months with little to show, the Court finds that a stay would unduly prejudice or present a clear tactical disadvantage to Plaintiff.** The patent owner should be able, if it desires, to prosecute its claims, to take discovery, and to set its litigation positions, at least until such a time as the USPTO takes an interest in reviewing the challenged claims. Only at that time will the scope of the *inter partes* review be known. While the USPTO decides whether to initiate a review, the parties will have sufficient time to ferret out the issues involved in this action, identify the relevant claims and defenses, and solidify their claim construction positions. Then, and only then, will the Court be in a position to make an informed decision as to whether the *inter partes* review will simplify the issues and trial.

*Automatic Mfg. Sys.* at 8–9 (emphasis added).

## 2.   RPI and Dynamic Advances will be unduly prejudiced from a stay because Apple's IPR petition is unlikely to be instituted

The '798 Patent is a university-owned patent covering pioneering inventions, and Plaintiffs contend that Apple's Siri infringes all 21 claims of the '798 Patent. The novelty and non-obviousness of the '798 Patent's claims is supported by expert testimony that none of the references upon which Apple relies in its IPR petition disclose all of the limitations of the claims in RPI's '798 Patent. (*See* Ex. 2, Declaration of Dr. Jaime Carbonell ("Carbonell Decl."), *passim.*) As a result, it is unlikely that the PTO will institute an IPR against all 21 of RPI's asserted claims.

In its IPR Petition, Apple argues that the claims of the '798 Patent are invalid under Section 102 (anticipation) and Section 103 (obviousness) of the Patent Act based on certain prior art references. (*Apple Inc. v. Rensselaer Polytechnic Institute/Dynamic Advances, LLC*, Case IPR2014-00077, *passim* (P.T.A.B. Oct. 21, 2013)). Apple's invalidity arguments are premised on its argument that the prior art references upon which it relies disclose every claim limitation of every claim of RPI's '798 Patent. But Dr. Carbonell's testimony establishes that each of the references—whether alone or in combination—fail to disclose certain key limitations common to all claims of RPI's '798 Patent. (Carbonell Decl. ¶ 39.) Thus, Apple's invalidity arguments are likely to fail and the PTO may decline to institute an IPR on *any* claims, and even if the PTO does institute an IPR it is unlikely that it will institute an IPR for *all* claims of RPI's '798 Patent.

For example, Claim 1 of the '798 Patent recites the following limitations (letters and numbers have been added to denote sub-limitations of the claim):

1. A method for processing a natural language input provided by a user, the method comprising:

    a. providing a natural language query input by the user;

    b. performing, based on the input, without augmentation, a search of one or more language-based databases including at least one metadata database comprising at least one of a group of information types comprising:

        i. case information;
        ii. keywords;
        iii. information models; **and** (emphasis added)
        iv. database values;

    c. providing, through a user interface, a result of the search to the user;

    d. identifying, for the one or more language-based databases, a finite number of database objects; and

     e.  determining a plurality of combinations of the finite number of database objects.

Element (b) of Claim 1 should be construed to mean that a metadata database comprising one or more groups of information types requires at least one group containing all four of the claimed information types: case information, keywords, information models, **and** database values. (Carbonell Decl. ¶ 24.) This construction is fully supported by the plain language of the claim and the '798 Patent as a whole. *See SuperGuide Corp. v. DirectTV Enters.,* 358 F. 3d 870, 885–87 (Fed. Cir. 2004) (the phrase "at least one of" preceding a list separated by the term "and" connotes a conjunctive list). For example, the patent specification explains that, "there are four layers of enterprise metadata (resources of search) considered; i.e., cases, keywords, information models and database values, they are integrated in an extensible metadata representation method so that every resource[] item references all other related resources for query interpretation." (Carbonell Decl. ¶ 2.) As a result, these four information types are meant to function together, as a group, as claimed in Claim 1. (Carbonell Decl. ¶ 24.)

Claim 9 largely parallels Claim 1 with respect to the group of information types, and recites "…at least one of a group of information comprising case information, keywords, information models, and database values." (*Id.*) Moreover a "group" cannot refer to a single element, and "database values" are not in themselves metadata (although they can be contained in a metadata database along with metadata). Hence the above construction is the one most consistent with the patent's specification, the other claims, and the normal meaning of the claim's list containing the conjunctive "and," as well as the claim terms "group," and "metadata." (*Id.*)

Element (b) of claim 1 of the '798 Patent, and the corresponding elements of claims 4, 9, and 14 are absent from all of the prior art references that Apple included in its IPR Petition. For example, none of Apple's prior art references disclose case information as metadata, and it is beyond dispute that none of Apple's prior art references disclose the combination of all four information types in at least one group in a metadata database for natural language processing of database queries.[2] (Carbonell Decl. ¶ 25.)

To support its requested stay, Apple utterly fails to establish that the PTO is likely to institute proceedings on the actual IPR petition it filed. (Apple Br., *passim*.) Instead, Apple relies entirely on PTO statistics regarding the percentages of ruled-upon IPR petitions that the PTO granted (88.3%) and the percentage of granted IPR petitions in which the PTO granted review of all claims challenged by the petition (83%). (Apple Br. at 11.) Other than its statement that "Apple's petition presented substantial bases for invalidating the '798 Patent over multiple references," Apple has not explained why the PTO is likely to determine that Apple's IPR petition will be treated like the 88.3% of petitions that have been granted on at least one claim, as opposed to treating Apple's petition like the 11.7% of petitions that were denied outright. (*Id.*)

---

[2] Apple itself is apparently concerned about the weakness of its present IPR petition, given its cryptic statement that it intends to file a second IPR petition no later than this month. (Apple Br. at 7 n.6.) In any event, Apple cannot file a second IPR petition. The America Invents Act, 35 U.S.C. §315(b), prohibits the institution of an IPR proceeding "if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petition is served with a complaint alleging infringement of the patent." This one year period expired October 23, 2013, two days after Apple filed its only IPR petition against RPI's '798 Patent. Accordingly, 35 U.S.C. §315(b) prohibits Apple from filing a second petition, and Plaintiffs will oppose any second IPR petition.

Likewise, Apple provides no basis for this Court to determine whether the PTO is more likely to treat Apple's IPR petition like the 83% of IPR petitions that have been granted for all challenged claims, or like the 17% of IPR petitions in which the PTO institutes proceedings on fewer than all challenged claims. (*Id.*)

And even if the PTO does institute proceedings on Apple's IPR petition, Apple does not provide any evidentiary basis for the Court to make any reasoned judgment as to whether the PTO would ultimately deny the validity of any or all claims that Apple's IPR petition challenges. (*Id.*, *passim.*) Given that the PTO has issued only one decision following the trial process of an IPR (*Id.* at 9 n.8), Apple is apparently relying on older *inter partes* **reexamination** statistics to support its argument that at least one claim was modified or cancelled in 89% of *inter partes* proceedings, and all challenged claims were cancelled or disclaimed in 42% of reexamination proceedings. (*Id.* at 8 n.7.)

But here again, Apple does not offer any specific evidence to support why the actual IPR Petition it filed will have a similar degree of success. In fact, Apple's statistics show that in a significant majority of *inter partes* proceedings (i.e., 58%) at least one or more claims survived the reexamination process intact—without amendment[3] or cancellation. Apple's exclusive reliance on statistical results from unrelated IPR petitions (or unrelated reexamination proceedings) are insufficient to meet its burden of proof to

---

[3] Apple's reliance on statistics from reexaminations to inform the Court regarding anticipated likelihoods of modified and/or cancelled claims is also misleading because the requirements for amending claims in an IPR proceeding are vastly more limiting and difficult to accomplish when compared to reexamination because IPR proceedings impose strict limits on the number of claims that can be added, requires new/amended claims to be responsive to the petition's grounds for unpatentability, all within an inflexible fifteen page limit that the PTO is unlikely to enlarge. *See* 35 U.S.C. 316(d); 37 C.F.R. 42.121; *Idle Free Sys., Inc. v. Bergstrom, Inc.,* IPR2012-00027, slip op. (P.T.A.B. June 11, 2013).

stay these proceedings. *Roy-G-Biv Corp. v. Fanuc Ltd.,* No. 2:07-cv-418, 2009 U.S.

Dist. LEXIS 69004, at *8 (E.D. Tex. Apr. 14, 2009) ("To convince this Court that a stay

will actually simplify a case, the requesting party must do more than merely proffer oft-

cited reexamination statistics and generic judicial efficiency arguments."). Unlike Apple,

Plaintiffs have specifically provided a basis, supported by expert testimony, showing

how and why it is unlikely that the PTO will institute proceedings in response to Apple's

IPR petition as to any or all of 21 challenged claims.

The statistics contradict Apple's contention that an IPR proceeding will simplify

litigation. Apple recognizes that one—and only one—IPR proceeding has been

completed to date. And while Apple cites that proceeding in support of its motion to

stay, it fails to point out that the proceeding addressed only three of eleven claims

asserted in the litigation. *Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, Case

IPR2012-00001, 25–27 (P.T.A.B. Jan. 9, 2013) ("the [IPR] trial is limited to the two

above-stated grounds of obviousness directed to claims 10, 14, and 17, and that no

other ground for any claim is authorized for trial"); First Amended Complaint at ¶ 18,

*Cuozzo Speed Techs. LLC v. Garmin Int'l*, No. 2:12-cv-3623 (D.N.J. Aug. 20, 2012)

(alleging that "at least claims 1, 2, 6, 9, 10, 11, 12, 13, 18, 19, and 20" are infringed).

Indeed, that litigation is ongoing, now complicated—not simplified—by the IPR decision

affecting only some of the asserted claims.

In short, it is unlikely that every one of the 21 claims in RPI's '798 Patent will be

the subject of IPR proceedings—much less that all 21 claims will be rejected or

changed during any such proceedings. This unlikely result does not justify the

significant delay of this litigation that would result from a stay. *See, e.g., Biax Corp. v.*

12

*Fujitsu Computer Sys. Corp.,* No. 2:06-cv-364, 2007 U.S. Dist. LEXIS 12973, at *5 (E.D. Tex. Feb. 26, 2007) ("The Court agrees that some claims and issues will likely remain after the reexamination has been completed. . . . Accordingly, waiting for the completion of the reexamination may only simplify the case to a limited degree. This factor is speculative and does not support a stay.").

### B.  Even upon Institution of an IPR Proceeding, Staying the Litigation Unduly Prejudices RPI and Dynamic Advances

In the event that the PTO institutes IPR proceedings on any part of Apple's petition, Plaintiffs would also be unduly prejudiced if the litigation is stayed pending final resolution of the IPR proceeding. As noted above, the PTO is unlikely to institute any IPR proceeding addressing the validity of all 21 claims of RPI's '798 Patent—much less make a final determination that all 21 claims are invalid. And even if the PTO addressed and upheld the validity of all 21 claims of RPI's '798 Patent, Apple would still likely challenge the validity of all 21 claims based on grounds that Apple cannot raise and the PTO cannot address in an IPR proceeding (such as validity under 35 U.S.C. § 112). Under such circumstances, a stay is not warranted, and proceeding with the parties' dispute in the piecemeal fashion Apple proposes would be contrary to judicial and administrative efficiency, and unduly prejudice RPI and Dynamic Advances. *See Belden Techs. Inc. v. Superior Essex Commc'ns. LP*, No. 08-63-SLR, 2010 U.S. Dist. LEXIS 90960, at *6 (D. Del. Sept. 2, 2010) ("[A] stay is more appropriate when the only issues left for trial completely overlap with those typically resolved upon reexamination.").

The expected 12–18 month IPR trial period that follows the six month petition period presents a potential 24 month delay solely to complete a single IPR proceeding. And in addition to this 24 month period, any appeal that the losing party would likely

pursue adds an additional 12–18 months before the IPR proceeding will be final, for a total delay resulting from a stay of 36–42 months. This kind of lengthy delay prejudices RPI and Dynamic Advances in a significantly greater fashion than Apple's phantom "hardship":

> Much of the evidence [Plaintiffs] must amass to prove infringement exists in the minds of witnesses, whose memories will inevitably fade, and who may be difficult to find as time passes. Infringement will also depend to some extent on how [Apple's] accused products and services function today, which will be harder to prove years from now. By contrast, some of the matters on which [Apple] bear[s] the burden, such as invalidity of the ['798] patent due to anticipation or obviousness, may not grow more difficult to prove, as they are based largely on prior art references, which do not change.

*Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 U.S. Dist. LEXIS 131385, at *13 (D. Del. Dec. 13, 2010).

Critically, given the schedule in this case and the timing of Apple's IPR petition, a denial of the requested stay would permit the litigation to proceed to final judgment—and such final judgment is likely to occur *prior to* any final determination from an IPR proceeding. In other cases—where little progress has been made in the litigation, an IPR petition is filed early in the proceedings, and a stay is promptly requested—it may be prudent to stay a parallel district court action pending an IPR proceeding. But that is not this case.

This case is different because Apple waited a full year to file its petition for IPR, and then waited more than two months after that to request a stay.[4] And because so much time has passed, the parties are now in a position to complete the claim

---

[4] Apple was served with the lawsuit on October 23, 2012, and filed its IPR petition on October 21, 2013. (Gasser Decl. ¶ 23.)

construction process and the vast majority of fact discovery within the next few months.[5]

This fact should be dispositive because it means that the present litigation—including

any appeals—will very likely result in a final judgment before an IPR proceeding

(including any appeals) reaches finality. So long as this case stays on a pace similar to

the parties' original proposed scheduling order and the Case Management Schedule the

Court entered,[6] the merits of this case can be fully resolved on summary judgment or by

jury verdict before the PTO issues a decision on the IPR (assuming that the PTO

decides to institute the IPR in the first place).[7]

Further, several courts have recognized that the grant of stay will negatively

affect discovery in the related litigation because, for example, "crucial witnesses are

more likely to be located if discovery is allowed to proceed now, rather than later."

*Anascape, Ltd. v. Microsoft,* 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007) *rv'd on other*

*grounds sub nom.*, *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333 (Fed. Cir.

2010). By the time the requested stay would be lifted—potentially two to four years from

now—witnesses who should have been deposed in 2013–2014 may forget important

---

[5] Plaintiffs' document productions are already substantially complete, and Apple
communicated its intention to substantially complete its document production by the end
of 2013. (Gasser Decl. ¶¶ 6f, 7, 11.

[6] See Dkt. No. 33-1, Proposed Case Management Schedule; Dkt. No. 45-1, Case
Management Schedule (both in Case 1:12-cv-01579). Those documents reveal that if
the claim construction briefing was complete by August 19, 2013, the parties
contemplated a trial date of April 18, 2014. Under the revised Scheduling Order (Dkt.
35, Case 1:13-cv-0063), claim construction briefing will be complete by February 17,
2014—only six months later than originally contemplated, and thus the trial could begin
at the end of **October 2014**.

[7] The PTAB's decision on whether to institute the IPR is likely to occur in late March or
early April 2014. If the IPR is instituted, the PTAB has 12 months from the time it is
instituted to issue its written decision (and one 6-month extension to that deadline is
permitted). As a result, the PTAB's final written decision would not be due until around
**April 2015** (or October 2015 upon a 6-month extension).

details on key issues to the litigation. Even the concern regarding faulty memories from time elapsed assumes that potential deponents are actually available in 2015–2019 when the requested stay is lifted, and do not move, switch jobs, or otherwise become unavailable during the delay period. Additionally, by 2015–2019, documents may be more difficult to collect. Third parties not bound by any preservation requirements may lose or destroy documents in the normal course. Documents stored and backed up by the parties may become much more expensive to access if any of the companies switch to newer versions of data management software or entirely new data management software all together.

Apple argues that whether the parties are competitors controls the issue of potential undue prejudice arising from a stay. (Apple Br. at 15–16.) But whether the parties are competitors is merely one of four factors courts consider to determine whether a non-moving party would be unduly prejudiced. Specifically, courts also consider: (1) the timing of the review request; (2) the timing of the request for stay; and (3) the status of the review proceedings. *See Boston Sci. Corp. v. Cordis Corp.*, 777 F.Supp. 2d 783, 789 (D. Del. 2011). These three factors all strongly weigh in favor of denying Apple's requested stay.

With respect to the timing of the IPR request itself, Apple delayed virtually an entire year after it was served with the complaint to submit its IPR petition. (Gasser Decl. ¶¶ 2–3). By this time, as the Court is aware, the parties had conducted extensive discovery, Plaintiffs had nearly completed their document production, depositions were being scheduled and conducted, and a firm schedule was established for claim construction proceedings. (Gasser Decl. ¶¶ 6, 8.)

Apple likewise delayed a significant amount of time during a critical portion of the litigation schedule to request the stay it now seeks. Specifically, Apple filed its IPR petition on Monday, October 21, 2013, and then participated in a scheduling status conference with Plaintiffs and this Court the very next day (Tuesday, October 22, 2013). (Gasser Decl. ¶¶ 2, 5.) Incredibly, **Apple did not raise or even mention during the scheduling conference that it had filed the IPR petition**—instead Apple agreed to the current schedule for discovery and claim construction briefing—only to now complain about the resources it will expend absent a stay. (Apple Br. at 11–12.) (*Id.* ¶ 5.) But Apple did not even submit its present request for a stay until December 23, 2013, over two months after its IPR petition filing. (*Id.* ¶ 3.) During those two months, the parties engaged in depositions, including the deposition Apple took of a current RPI professor and the first-named co-inventor of RPI's '798 Patent. (*Id.* ¶ 6.) Moreover, RPI prepared privilege logs, and the parties engaged in significant document processing, review, and production—an exercise that Apple insisted RPI complete before claim construction proceedings could begin. *Id.* Plaintiffs would be significantly prejudiced if the work they performed and time they expended—which occurred at Apple's insistence even though it had already filed its IPR Petition—was effectively nullified with a lengthy and indeterminate stay of the litigation.

Finally, the third additional undue prejudice factor, the status of the review proceeding, also strongly supports denying a stay of the litigation. The review proceeding remains in the petition stage, and thus the PTO has not granted any portion of Apple's petition. Accordingly, at least three of the four undue prejudice factors support a denial of Apple's request for a stay of the litigation.

17

**III.    Granting a Stay of the Litigation Will Not Simplify Issues for Trial**

The second factor governing a motion to stay is whether a stay would simplify

issues for trial. *Universal Elecs. Inc. v. Universal Remote Control*, 943 F. Supp. 2d

1028, No. SACV 12-00329 AG, 2013 U.S. Dist. LEXIS 64154, at *9–13 (C.D. Cal. May

2, 2013). At this point, because the PTO has not instituted a review of any claim of

RPI's '798 Patent, a stay cannot simplify any of the issues for trial. Although Apple has

asserted some of the same Section 102 (anticipation) and Section 103 (obviousness)

invalidity arguments in this litigation that it presented in its IPR petition, without knowing

whether the PTO intends to even address these invalidity issues, a stay at this juncture

would not simplify any issues for trial and would only cause significant and unnecessary

delay of this litigation. In fact, if the PTO denies Apple's IPR petition in its entirety, a stay

would be especially prejudicial to Plaintiffs and not simplify any issues for trial.

And even if the PTO institutes an IPR proceeding for some of the claims in RPI's

'798 Patent, neither that proceeding, nor a stay, will simplify the issues for trial. If the

PTO institutes an IPR proceeding for only some of the asserted claims, the AIA's

collateral estoppel rules that arise from an IPR proceeding would not prevent Apple

from raising Section 102 and 103 invalidity arguments against claims asserted in the

litigation that are not at issue in the IPR proceeding. In fact, Apple could raise the exact

same prior art in two different forums at two different times: in the IPR proceeding

against the challenged claims under review, and again at trial for the asserted claims

not at issue in the IPR proceeding. As a result, such an IPR proceeding cannot—and

will not—address: (1) Apple's Section 102 and 103 arguments against asserted claims

not at issue in the IPR; (2) Plaintiffs' infringement allegations; (3) damages due from any

infringement; (4) Apple's invalidity defenses under 35 U.S.C. §112; and (5) any

equitable defenses that Apple may raise. All of those issues will have to be litigated in this Court regardless of what may happen at the PTO. *See TuitionFund, LLC v. SunTrust Banks, Inc.*, No. 3:11-00069, 2012 U.S. Dist. LEXIS 144408, at *5 (M.D. Tenn. Oct. 5, 2012) (denying a stay where "the Court [was] not convinced that a stay . . . [would] simplify the issues in question, or the trial of the case"); *Belden Techs.*, 2010 U.S. Dist. LEXIS 90960, at *6 ("[A] stay is not favored when infringement, validity under 35 U.S.C. § 112, or other issues . . . remain to be tried.").

Finally, even if the PTO institutes an IPR of <u>all</u> claims of the '798 Patent, a stay would not simplify any of the issues for trial. Instead, in this scenario, the existence of the IPR combined with case management procedures—not a litigation stay—could simplify the issues for trial by removing the Section 102 and 103 invalidity issues from the litigation. Specifically, the parties or the Court, as a case management procedure, could elect to simplify the issues for trial by moving forward in the litigation on all of the issues except the Section 102 and 103 invalidity issues that have been raised (or reasonably could have been raised) in the IPR proceeding.

The AIA's collateral estoppel rules for IPRs provide that a petitioner is estopped from raising arguments before the district court that it raised or reasonably could have raised during an IPR proceeding. 35 U.S.C. § 315(e)(2). Under these rules, estoppel does not legally arise unless and until the PTO issues its final determination on the challenged claims. *Id.* But even though IPR estoppel does not arise pursuant to the AIA until the PTO issues a final determination on the challenged claims, if the PTO institutes an IPR against all asserted claims there is no mechanism for Apple to unilaterally terminate the IPR proceeding. No statute or PTO rule provides for Apple's unilateral

withdrawal from an IPR that the PTO institutes. Instead, the statute and rules provide for termination of an IPR proceeding based on agreed stipulations by the parties (i.e., upon settlement or the parties' agreement to litigate 102 and 103 issues in the district court). 35 U.S.C. 317(a).

As a result, absent a settlement or an agreement by the parties to dismiss the IPR in favor of litigating 102 and 103 issues in the district court proceeding, the IPR will proceed to its conclusion on Apple's 102 and 103 arguments. And because IPR collateral estoppel will necessarily attach upon the conclusion of the IPR proceeding absent the parties' agreement to dismiss the IPR, the parties or the Court could use case management tools to remove 102 and 103 validity issues from the litigation prior to the conclusion of the IPR proceeding to avoid litigating those issues in two different forums at the same time.

In any event, in this case a stay would not simplify the issues for trial under virtually any circumstance. The only scenario under which Apple's IPR petition would justify a stay of this litigation is highly unlikely—the PTO would only eliminate the need for a trial in its entirety if it instituted IPR proceedings for all 21 claims of RPI's '798 Patent, and also ultimately determined that all 21 claim are invalid. As explained above, it is extremely unlikely that the PTO would make such a determination, because each of the references upon which Apple relies in its present petition fails to disclose at least one required element of each claim within the '798 Patent. (Carbonell Decl., *passim*.)

## IV.    The Stage of This Litigation Supports Denying Apple's Request for a Stay

The third factor governing motions to stay is the stage of the litigation. *Universal Elecs. Inc. v. Universal Remote Control*, 943 F. Supp. 2d 1028, No. SACV 12-00329

AG, 2013 U.S. Dist. LEXIS 64154, at *7–9 (C.D. Cal. May 2, 2013). As noted above, Apple filed its IPR petition nearly one year after litigation between the parties commenced, and contrary to Apple's representations, this litigation is not in the early stages. (Gasser Decl. ¶¶ 2, 3, 6, 8.) The document productions of both RPI and Dynamic Advances are substantially complete. (*Id.* at ¶¶ 6f, 11.) Both sides have exchanged infringement contentions, non-infringement contentions, and invalidity contentions. (*Id.* at ¶ 8a.) Plaintiffs have conducted a review of Apple's source code, the parties have commenced depositions, exchanged preliminary claim constructions, and claim construction briefing is scheduled to commence in two weeks. (*Id.*)

Apple cites eight cases purportedly in support of its argument that the current stage of this case favors a stay. (Apple Br. at 12–15.) In particular, Apple compares the present litigation to the *Softview* case, and suggests that *Softview* was further along than the present litigation, and the court granted a stay. (*Id.* at 14.) However, in seven of Apple's eight cited cases, including *Softview*, **the PTO had already granted the pertinent request for reexamination**. *See Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (reexamination request granted); *Perricone v. Unimed Nutritional Servs., Inc.*, No. 3:01-CV-512, 2002 U.S. Dist. LEXIS 17613, at *9–10 (D. Conn. Jul. 18, 2002) (same); *SenoRX, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 U.S. Dist. LEXIS 8044, at *4 (D. Del. Jan. 11, 2013) (same); *Sears Petroleum & Transp. Corp. v. Archer Daniels Midland Co.*, No. 5:03-cv-1120-DEP, Dkt. 301 at 3 (N.D.N.Y. Oct. 6, 2008) (PTO granted reexamination and ultimately rejected each patent claim upon which plaintiffs' infringement counts were predicated.); *Bausch & Lomb, Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 388 (W.D.N.Y. May 19, 2008)

21

(reexamination request granted); *Tierravision, Inc. v. Google, Inc.*, No. 11cv2179

DMS(BGS), 2012 U.S. Dist. LEXIS 21463, at *2 (S.D. Cal. Feb. 21, 2012) (same);

*Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 Civ. 8815, 2000 U.S. Dist.

LEXIS 11274, at *2 (S.D.N.Y. Aug. 9, 2000) (same).

Accordingly, these cases, including *Softview*, are distinguishable on that basis

alone. However, in order to make a meaningful comparison, even if the PTO granted

Apple's IPR petition, by that time (likely more than three months from now), in addition

to the significant work that the parties and Court have already completed, the parties will

also have completed the claim construction process, including the briefing and hearing.

In addition to its year-long delay in filing its IPR petition, Apple also took

significant time to request its stay of the litigation even after it filed its IPR petition.

(Gasser Decl. ¶¶ 2, 3.) Indeed, Apple filed its IPR petition on Monday, October 21,

2013, and then participated in a scheduling status conference with this Court the next

day (Tuesday, October 22, 2013). (*Id.* at ¶¶ 3–5.)  As stated previously, Apple did not

raise or even mention during the scheduling conference that it had filed the IPR

petition—instead Apple proceeded with the deposition of an RPI employee-inventor,

agreed to the current schedule for discovery and claim construction briefing—only to

now complain that resources will need to be expended if the litigation is not stayed. (*Id.*)

Apple's delay in filing its IPR petition, as well as its delay in seeking a stay, is reason

enough to deny Apple's requested stay.

Moreover, the stage of this litigation would be even more substantially advanced,

but for Apple's concerted tactical efforts to delay the litigation. Apple attempts to

attribute the allegedly slow pace of this litigation to the fact that RPI was not named as a

party in the first complaint. (Apple Br. at 2–4.) But as both Apple and this Court know, the addition of RPI as a party **prevented** a delay in the litigation (based on Apple's threatened motion practice to challenge Dynamic Advances' standing)—it did not lead to litigation delays. In fact, when RPI entered as a party, the parties stipulated and this Court ordered that all discovery, all orders, and all positions taken by the parties in the first litigation would carry over, and be deemed part of, the second case:

> All disclosures, discovery, and filings made by Dynamic Advances, LLC in 1:12-cv-1579 are hereby deemed to have occurred in this action as made jointly by both Dynamic Advances, LLC and RPI, including all reservations of rights. All disclosures, discovery, and filings made by Apple, Inc. in 1:12-cv-1579 are hereby deemed to have occurred in this action, including all reservations of rights. All discovery in 1:12-cv-1579 is hereby deemed served in this action. All rulings and orders in 1:12-cv-1579 are hereby entered in this action. RPI agrees to be bound by these rulings and orders to the same extent Dynamic Advances, LLC is bound by the rulings and orders…In this action, Dynamic Advances, LLC and RPI agree to be bound to the positions taken by Dynamic Advances, LLC in 1:12-cv-1579 to the same extent that Dynamic Advances, LLC would be in 1:12-cv-1579. In this action, Apple, Inc. agrees to be bound to its positions in 1:12-cv-1579 to the same extent it would be in 1:12-cv-1579.

Text of Stipulation and Order, Docket No. 20, dated July 22, 2013.

To the extent any delay arose from the first case, such delay arose from Apple wasting the parties' and the Court's time in meet-and-confers, discussions with the Court, and its demand for briefing its opposition to Plaintiffs' proposal to consolidate the first-filed case with the second-filed case, only to withdraw its opposition at the last minute. (Gasser Decl. ¶ 16.)

It is now apparent that Apple's pattern of delaying this litigation was calculated to setup the very stay it now belatedly seeks. For example, Apple delayed the entire claim construction process by insisting that Professor Hsu, a co-inventor of the '798 Patent, must be deposed first, despite the fact that such extrinsic evidence adds little

value to the construction of the disputed claim terms.

Further, Apple refused to produce any of the five 30(b)(1) witnesses that Plaintiffs noticed for deposition in March, April, and May, until Plaintiffs provided a 30(b)(6) notice because Apple claimed that its 30(b)(1) witnesses would testify on 30(b)(6) topics and should not be deposed twice. (Gasser Decl. ¶¶ 8c, 9.) Yet, even after Plaintiffs served its 30(b)(6) notice in August, Apple delayed providing dates for the 30(b)(1) and 30(b)(6) witnesses until November 1, and only after being ordered by the Court to do so. (*Id.* at ¶ 10.) And contrary to the pretext Apple provided for delaying the 30(b)(1) depositions, in the end, Apple did not designate a single one of those 30(b)(1) witnesses to testify on any 30(b)(6) topic.[8] (*Id.*)

Apple has still not provided its documents related to its acquisition of Siri, Inc., or sales or financial data for the accused products, or licensing information, despite agreeing to produce these documents that are responsive to requests served more than eight months ago. It now appears that Apple's refusal to produce such documents was based on the belief and hope that it would never have to produce such documents if it succeeded in getting the litigation stayed upon filing its IPR petition. Contrary to Apple's contention on page 4 of its brief that Plaintiffs declined several deposition dates "without

---

[8] Apple may suggest that none of Plaintiffs' 30(b)(6) topics overlapped with the topics on which Apple stated at least some of their 30(b)(1) witnesses would testify. However, this is inaccurate. For example, Apple stated that one of their witnesses, Darren Haas, was expected to testify on: Siri operations; the organization, structure, and maintenance of Siri's source code; development, build, or release processes. (Gasser Decl. ¶ 9.) These topics overlap significantly with at least the following 30(b)(6) topics: TOPIC 33, [t]he location, structure, and details of Siri's source code; TOPIC 34, [t]he location, structure, and details of Siri's executable code; TOPIC 35, [t]he location, structure, and details of any server that implements or executes any part of Siri (including guzzoni.apple.com); TOPIC 36, Siri's specifications, capabilities, design, or function.

reason" (Apple Br. at 4), Plaintiffs informed Apple that Plaintiffs could not accept proposed dates for several witnesses, because those witnesses were designated by Apple to testify on 30(b)(6) topics relating to the sales, licensing, or financial data that required documents Apple had not yet produced. (Gasser Decl. ¶ 20.)

In short, Apple has used one dilatory tactic after another to carefully and deliberately slow the progress of this litigation, and manufacture a justification for the proposed stay it now seeks, which, if granted, will foster even more delay.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Apple's Motion to Stay Litigation Pending *Inter Partes* Review in its entirety with prejudice, and without the opportunity to move for a stay a second time in the event the PTO institutes IPR proceedings. Apple chose to file its motion to stay prior to the PTO's decision on whether to institute IPR proceedings, rather than waiting to find out whether IPR proceedings will occur at all. As a result, if the PTO does not institute IPR proceedings, Apple's motion will have wasted the parties' and this Court's time and resources on the instant motion.

Even if the PTO institutes an IPR proceeding, Apple could have waited to file its motion at that time, which would have allowed Apple to tailor its motion based on the specific contours of the PTO's decision to institute an IPR proceeding. But Apple chose the timing of its motion and should not be provided with a second bite if the Court denies Apple's motion and the PTO subsequently institutes IPR proceedings. Instead, if the PTO institutes the IPR, Plaintiffs respectfully submit that the Court should conduct a hearing to determine the most efficient method to proceed with the litigation based on the specifics of the topics that will be at issue in any IPR proceeding that commences.

Date:  January 3, 2014                          Respectfully Submitted:


Nicholas Mesiti (102192)                         */s/ Paul J. Skiermont*
**HESLIN ROTHENBERG FARLEY &**        Paul J. Skiermont (107001)
**MESITI**                                       Amy E. LaValle (517854)
5 Columbia Cir.                                  Donald E. Tiller (107002)
Albany, New York 12203                           Lenny Huang (107012)
(518) 452-5600 (telephone)                       Alexander E. Gasser (603023)
(518) 452-5579 (facsimile)
nm@hrfmlaw.com                                   **SKIERMONT PUCKETT LLP**
                                                 2200 Ross Avenue, Suite 4800W
*Counsel for Plaintiff*                          Dallas, Texas 75201
*Rensselaer Polytechnic Institute*               (214) 978-6600 (telephone)
                                                 (214) 978-6601 (facsimile)
James R. Muldoon (506772)                        paul.skiermont@skiermontpuckett.com
**HARRIS BEACH PLLC**                            amy.lavalle@skiermontpuckett.com
333 W. Washington Street                         don.tiller@skiermontpuckett.com
Suite 200                                        lenny.huang@skiermontpuckett.com
Syracuse, New York 13202                         alex.gasser@skiermontpuckett.com
(315) 423-7100 (telephone)
(315) 422-9331 (facsimile)                       *Counsel for Plaintiffs*
jmuldoon@harrisbeach.com                         *Rensselaer Polytechnic Institute and*
                                                 *Dynamic Advances, LLC*
Steven P. Nonkes (517931)
**HARRIS BEACH PLLC**
99 Garnsey Road
Pittsford, New York 14534
(585) 419-8800 (telephone)
(585) 419-8813 (facsimile)
snonkes@harrisbeach.com


*Counsel for Plaintiff*
*Dynamic Advances, LLC*

26

## CERTIFICATE OF SERVICE

I hereby certify that, on January 3, 2014, a true and correct copy of the foregoing document, **PLAINTIFFS RENSSELAER POLYTECHNIC INSTITUTE AND DYNAMIC ADVANCES' OPPOSITION TO APPLE'S MOTION TO STAY LITIGATION PENDING INTER PARTES REVIEW** was served on the following counsel of record via one or more of the following: the individual email addresses set forth below, the court's regular ECF filing procedures, and counsel's provided list service address:

Apple-DynamicAdvancesService@fenwick.com.

Mitchell J. Katz (301057)
**MENTER, RUDIN & TRIVELPIECE, P.C.**
308 Maltbie Street Suite 200
Syracuse, New York 13204-1498
(315) 474-7541 (telephone)
(315) 474-4040 (facsimile)
mkatz@menterlaw.com

Teresa M. Corbin
David M. Lacy Kusters
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, California 94104
(415) 875-2300 (telephone)
(415) 281-1350 (facsimile)
tcorbin@fenwick.com
dlacykusters@fenwick.com

Hector J. Ribera
William A. Moseley, Jr.
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, California 94041
(650) 988-8500 (telephone)
(650) 938-5200 (facsimile)
hribera@fenwick.com
wmoseley@fenwick.com

*/s/ Alexander E. Gasser*

27