# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | |
|---|---|
| RENSSELAER POLYTECHNIC INSTITUTE AND DYNAMIC ADVANCES, LLC, | |
| Plaintiffs, | Civil Action No. 1:13-cv-00633-DEP |
| v. | JURY TRIAL DEMANDED |
| APPLE INC., | |
| Defendant. | |

## DECLARATION OF ALEXANDER E. GASSER

I, Alexander E. Gasser, declare as follows:

1.     I am an attorney with the law firm of Skiermont Puckett LLP, counsel to

Plaintiffs Rensselaer Polytechnic Institute and Dynamic Advances, LLP in this action.  I

am a member in good standing of the State Bar of Wisconsin.  I have personal

knowledge of the facts set forth in this declaration, except where otherwise stated, and

could testify competently to such facts under oath if called as a witness.

2.     Upon information and belief, Apple was served on October 23, 2012, with

a complaint for infringement of U.S. Patent No. 7,177,798, ("the '798 Patent"), filed

before this court, in Civil Action No. 1:12-cv-01579-DNH-DEP.  *See* Dkt. 7, entered

October 26, 2012, in Civil Docket for Case No. 1:12-cv-01579-DNH-DEP.

3.     Upon information and belief, Apple filed a petition on October 21, 2013,

with the U.S. Patent and Trademark Office ("USPTO") requesting *inter partes* review

1

("IPR") of the '798 Patent in what the USPTO has designated Case No. IPR2014-00077.

4.      During a telephonic hearing with the Court in this matter on October 22, 2013, Apple's counsel agreed that the deposition of Dr. Cheng Hsu, RPI's inventor, should proceed as scheduled, after RPI's related production of documents and emails was complete.

5.       During the same telephonic hearing with the Court on October 22, 2013, Apple agreed to the current claim construction schedule and made no mention to the Court or Plaintiffs' counsel that it filed an IPR petition with respect to the '798 Patent.

6.      Between October 21, 2013 and December 23, 2013, Plaintiffs engaged in and completed the following activities:

a.  Prepared for and conducted several multi-hour telephone conferences with Apple's counsel regarding discovery issues, including, in particular, Apple's discovery deficiencies.

b.  Prepared Dr. Cheng Hsu, RPI Professor and first-named co-inventor of the '798 patent, for his deposition and defended his deposition on December 16, 2013;

c.  Prepared for and took the deposition of Apple employee Didier Guzzoni on December 10, 2013;

d.  Prepared and transmitted to Apple's counsel a limited privilege log of RPI related documents;

e.  Reviewed and produced to Apple's counsel Dr. Cheng Hsu's email correspondence;

f.   Reviewed and produced to Apple's counsel RPI's document production, such that, upon information and belief, RPI substantially completed its production of non-privileged responsive documents, located through a reasonable search.

7.   On October 30, 2013, Plaintiffs' counsel conducted one of several multi-hour telephone conferences to meet and confer with Apple's counsel regarding discovery issues, including, in particular, Apple's discovery deficiencies.  During this particular conference call, Apple's counsel communicated its intention to substantially complete its document production by the end of 2013. *See* email from Apple's counsel dated October 31, 2013, a true and correct copy of which is attached as Exhibit A.

8.   With respect to additional activities completed by the parties in this litigation:

a.   Upon information and belief, the parties exchanged the following disclosures or contentions on the following dates:

i.   On March 5, 2013, Plaintiff Dynamic Advances, LLC served its Infringement Contentions;

ii.   On April 4, 2013, Apple served its non-infringement and invalidity contentions, which Apple supplemented on April 25, 2013;

iii.   On May 13, 2013, the parties exchanged identifications of claim terms for construction;

iv.   On June 3, 2013, the parties exchanged preliminary constructions of claim terms.

b.   With respect to written discovery, Plaintiffs served three sets of document requests on March 15, March 22, and April 5, 2013.

   c. With respect to Apple employees or as a corporation, upon information and belief, Plaintiffs served eight deposition notices on the following dates for the following individuals:

      i. Didier Guzzoni, on March 22, 2013

      ii. Darren Haas, on April 5, 2013;

      iii. Vinet Khosla, on April 5, 2013;

      iv. Bill Stasior, on May 13, 2013;

      v. Tom Gruber, on May 13, 2013;

      vi. 30(b)(6) for Apple Inc., on August 23, 2013;

      vii. Apple's Record Custodian, on August 23, 2013;

      viii. Peter Oppenheimer, on October 11, 2013;

   d. Plaintiffs' counsel, together with an expert consultant, conducted a review of Apple's source code on October 7, 2013.

9.    Upon information and belief, Apple refused for many months to produce any of Messrs. Guzzoni, Haas, Khosla, Stasior, or Gruber, noticed for deposition in March, April, and May, until Plaintiffs provided a 30(b)(6) notice, because Apple claimed that its 30(b)(1) witnesses would testify on 30(b)(6) topics and should not be deposed twice. *See* letter from Apple's counsel dated April 30, 2013, a true and correct copy of which is attached as Exhibit B.

10.    When Apple finally identified its 30(b)(6) designees, it did not designate any one of its 30(b)(1) witnesses to testify on any 30(b)(6) topic. *See* attached email from Apple's counsel dated November 1, 2013, a true and correct copy of which is attached as Exhibit C.

11.     Upon information and belief, Plaintiff Dynamic Advances, LLC. has substantially completed its production of non-privileged, responsive documents, located through a reasonable search.

12.      Attached as Exhibit D is a true and correct copy of the paper 15, titled "Decision to Initiate Trial for Inter Partes Review," filed in IPR2012-00001.  The cover page of Paper 15 states, "Petitioner Garmin International Inc. et al. requests *inter partes* review of claims 1-20 of US Patent 6,778,074."  Page 27 of paper 15 further states, "trial is limited to the two above-stated grounds of obviousness directed to claims 10, 14, and 17, and that no other ground for any claim is authorized for trial."

13.     Attached as Exhibit E is a true and correct copy of paper/notice 3 from IPR2012-00001, which is First Amended Complaint, *Cuozzo Speed Techs. LLC v. Garmin Int'l* (D.N.J. Aug. 20, 2012) (No. 2:12-cv-3623). In Paragraph 18 the complaint, the patentee alleges that "at least claims 1, 2, 6, 9, 10, 11, 12, 13, 18, 19, and 20" are infringed by Garmin International.

14.     Attached as Exhibit F is a true and correct copy of a letter dated December 6, 2013, sent from Plaintiff's counsel to Apple's counsel proposing terms under which Plaintiffs would agree to a stay of this litigation.

15.     Attached as Exhibit G is a true and correct copy of an email chain, the most recent of which is an email dated December 6, 2013, in which Apple's counsel rejected Plaintiffs' proposed conditions to agree to a stay of this litigation.

16.     Attached as Exhibit H is a true and correct copy of an email chain, the most recent of which is an email dated June 21, 2013, which, upon information and belief, memorializes a conversation between Plaintiffs' and Apple's counsel regarding the potential consolidation of related complaints against Apple.

17.     Attached as Exhibit I is a true and correct copy of a printout of the CM/ECF docket report from *Cuozzo Speed Techs. LLC v. Garmin Int'l,* No. 2:12-cv-3623 pending in the United States District Court for the District of New Jersey. This was generated January 3, 2014.

18.     Attached as Exhibit J is a true and correct copy of a letter from Garmin International informing the United States District Court for the District of New Jersey of the Final Written Decision in IPR2012-00001 and seeking "leave to file a single-issue summary judgment motion predicated on the Patent Office's claims construction findings." This summary judgment motion is one for non-infringement—and is not related to invalidity. The letter was filed November 19, 2013 in *Cuozzo Speed Techs. LLC v. Garmin Int'l,* No. 2:12-cv-362.

19.     Attached as Exhibit K is a true and correct copy of a letter from Cuozzo Speed Technologies LLC to the United States District Court for the District of New Jersey in response to Garmin's November 19, 2013 letter seeking leave to file a motion for summary judgment of non-infringement.  In the letter, Plaintiff notes that "Plaintiff believes that the PTAB's claim construction is not binding on this Court and was, nevertheless, incorrect and intends to appeal this construction" and "Plaintiffs believe that leave should not be granted because the petition was denied as to claims 1-9, 11-13, 15, 16 and 18-20 and, therefore, these claims remain unaffected by the written opinion." This letter was filed November 20, 2013 in *Cuozzo Speed Techs. LLC v. Garmin Int'l,* No. 2:12-cv-362.

20.     Attached as Exhibit L is a true and correct copy of an email dated November 19, 2013, transmitted by Plaintiffs' counsel to Apple's counsel, informing Apple that Plaintiffs could not accept proposed dates for several witnesses, because

those witnesses were designated by Apple to testify on 30(b)(6) topics on which Apple

had not produced sufficient documents.


      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.


Executed on January 3, 2014, at Dallas, Texas.

                                  _/s/ Alexander E. Gasser_
                                    Alexander E. Gasser

# EXHIBIT A

**Jennifer Westin**

| | |
|---|---|
| **From:** | Leslie Kramer <lkramer@fenwick.com> |
| **Sent:** | Thursday, October 31, 2013 11:50 AM |
| **To:** | Alex Gasser |
| **Cc:** | Dynamic_Service; David Lacy Kusters; Jeffrey Ware |
| **Subject:** | RE: RPI et al v Apple - Meet and Confer Notes |

Thank you Alex.  I want to clarify a few things:

First, we intend to get back to you regarding additional amendment decisions on requests numbers 43, 44, and 48 (relating to profits), 49 (relating to what standard costs includes),  and 68, 69 and 78 (relating to representations or documents from Siri Inc. about the value of the company prior to the acquisition) by Friday.  We expect to serve amended responses for the requests for production (as described during the call and incorporating any additional amendments that we are considering in response to the call) early next week.

Second, DA agreed to consider compromises that we proposed or additional explanations for requests numbers 42, 63, 64, 71, 72, 73, and 77.  We would appreciated getting your feedback on these as soon as possible since they may inform our amended responses.

Third, Apple does plan on its next production, including additional damages documents, in early November.  We are hoping for substantial completion by the end of the year, but we can't commit to a date until we have a resolution on the scope of these requests.

A couple of additional details to note on the requests:

RFP 42: Apple agreed to provide additional non-privileged documents, including marketing plans, business plans, market research, and consumer research or surveys related to Siri to the extent such documents exist.  We agreed to consider the additional categories of identified in the request (budgets, forecasts, financial reports, and management reports) if DA could provide clarification on why such items were relevant.  We discussed limiting these topics to the time period of the hypothetical negotiation, and asked that DA provide the approximate date for that hypothetical negotiation.  DA agreed to get back to us on whether it would provide a more limited time frame for these categories or an explanation for why they are relevant.

RFP 43/44/48/49:  Apple agreed to provide U.S. revenue, unit sales, and standard costs for products containing Siri.  Apple will consider DA's arguments regarding profits and worldwide data.

RFP 45:  DA agreed that Apple's proposed amendment was acceptable (subject to DA's review of the amended responses early next week).

RFP 46: Apple agreed to supplement this response to include non-privileged documents relating to market research or analysis, including consumer research or surveys, relating to the U.S. market for Siri's accused natural language processing technology in smart phones, to the extent such documents exist.  I do not believe that we agreed to get back to you with anything further on this request, but if there is something additional, please let us know.

RFP 47: DA agreed that Apple's proposed amendment was acceptable (subject to DA's review of the amended responses early next week).

RFP 51/52: DA agreed that Apple's proposed amendment was acceptable (subject to DA's review of the amended responses early next week).

RFP 63:  Apple stressed the burdensome nature of this request in light of the numerous lawsuits that relate in some way to Siri and the fact that these documents are subject to protective orders in each of those cases.  Apple has agreed in its original responses to provide information relating to statements made by Apple relating to the value and functionality of the natural language processing component of Siri.  DA agreed to consider limiting the response to expert reports, interrogatories, and expert depositions relating to the value and functionality of Siri in patent litigation matters involving Siri.  Once we have confirmation that this limitation is acceptable to DA, we will discuss it with our client.

RFP 64:  DA argued that Apple's production should include publicly available documents.  Apple stated that this position was inconsistent with the approach taken by DA in responding to Apple's discovery requests.  DA agreed that it would inquire into the difficulty of obtaining publicly available documents in China and let us know if this process was extremely burdensome.

RFP 65: Apple agreed to amend this response to include non-privileged documents relating to Apple's economic evaluation of Siri Inc. and the impact of  natural language processing technology on the market for Apple products, to the extent such documents exist.  I do not believe that we agreed to get back to you with anything further on this request, but if there is something additional, please let us know.

RFP 66: DA agreed that Apple's proposed amendment was acceptable (subject to review of the amended responses early next week).

RFP 67: DA agreed that Apple's proposed amendment was acceptable (subject to review of the amended responses early next week).

RFP 68/69: DA clarified that this request was directed to Siri, Inc.'s valuation of itself or IP.  Based on this clarification, Apple agreed to discuss with our client.

RFP 70: DA agreed that Apple's proposed amendment was acceptable (subject to review of the amended responses early next week).

RFP 71: DA will consider whether there were particular governmental agencies that it had in mind when drafting this request and whether such statements would be relevant, beyond what Apple has already agreed to provide in response to other requests.

RFP 72/73: Based on Apple's proposed amendments to other RFPs, DA believed these requests are redundant in light of other requests and interrogatory responses.  If DA continues to have an issues with these requests or the interrogatory responses, it will let us know.

RFP 75: DA agreed that Apple's proposed amendment was acceptable (subject to review of the amended responses early next week).

RFP 76: DA agreed that Apple's proposed amendment was acceptable (subject to review of the amended responses early next week).

RFP 77: Apple agreed to provide documents concerning presentations or representations to government agencies concerning the formation of Siri Inc. that relate to the value of Siri Inc.  DA will consider whether there were particular governmental agencies that it had in mind when drafting this request and whether such statements would be relevant, beyond what Apple has already agreed to provide in response to other requests.

RFP 78:  Apple agreed to provide statements to investors of Siri Inc. relating to the value of Siri Inc.'s intellectual property, to the extent those documents exist and are in Apple's possession.  Apple will consider further amending this response to include statements made to Siri Inc. investors concerning the value of Siri Inc.

The scheduled two hour meeting ended before DA's remaining issues on RFPs 3 and 14-16 were addressed.  We propose continuing the conference on Nov. 1, 7 or 8.  At that conference, please be prepared to address Apple's issues with the insufficiency of RPI's production as described in Jeff Ware's letter October 29.  You mentioned during the call that you planned on serving amended RFP responses on behalf of DA.  Perhaps it makes sense for us to review those in advance of the call so that we can have a more efficient conference.  When do you expect to have those ready?

Regarding deposition scheduling, Apple continues to make good progress and currently expects to provide information by November 1, per the teleconference on October 22.

Best,
Leslie

**From:** Alex Gasser [mailto:alex.gasser@skiermontpuckett.com]
**Sent:** Wednesday, October 30, 2013 4:59 PM
**To:** Leslie Kramer; David Lacy Kusters
**Cc:** Apple-Dynamic Advances Service; Dynamic_Team; Dynamic_Service
**Subject:** RPI et al v Apple - Meet and Confer Notes

Leslie and David,

Thank you for speaking with us for two hours this afternoon for our meet and confer on damages-related documents that Apple has not yet produced.

Confirming some of our discussion points:

You indicated that you would provide amended responses to our document requests by early next week.

You will confer with your client regarding several remaining issues in dispute, the two most important issues being:
> 1) Apple's production of worldwide financials (given our understanding that Apple's servers performing the claimed functionality are located in the U.S.); and
> 2) Apple's production of documents relating to profits or the profitability of Apple products containing Siri.

In addition to these two issues, you will confer with your client and get back to us regarding the scope of Apple's supplementation of Document Request Nos. 43, 44, 46, 48, 49, 63, 65, 68, 69, and 78.

You intend to inform us of your client's supplementation decisions, including Apple's position on the above two issues by the end of this week.

You also represented that Apple's rolling production of damages related documents would commence in early November, and that it would be substantially complete by the end of this year.

We need to continue our meet and confer process with respect to the technical issues (including document request nos. 3, 14-16) as soon as possible, and to address remaining discovery issues, including deposition scheduling.  Please let us know when you are available to address these remaining issues.

Best regards,

Alex

Alexander E. Gasser | SKIERMONT PUCKETT LLP
2200 Ross Ave., Suite 4800W, Dallas, Texas 75201
Office: 214.978.6605 | Fax: 214.978.6601

www.skiermontpuckett.com

**This message is the property of SKIERMONT PUCKETT LLP and contains confidential information.  If this message has been delivered to you by mistake, then do not copy or deliver this message to anyone.  Instead, destroy it and notify me by reply e-mail.**

--------------------------------------------

IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
--------------------------------------------

ATTENTION:

The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT B

**Fenwick**
**FENWICK & WEST LLP**

555 CALIFORNIA STREET, 12TH FLOOR   SAN FRANCISCO, CA 94104
TEL: 415.875.2300   FAX: 415.281.1350   WWW.FENWICK.COM

April 30, 2013

DAVID LACY KUSTERS

EMAIL DLACYKUSTERS@FENWICK.COM
Direct Dial (415) 875-2373

**VIA E-MAIL (DON.TILLER@SKIERMONTPUCKETT.COM)**

Donald Tiller
Skiermont Puckett Law Firm
2200 Ross Avenue, Suite 4800W
Dallas, TX 75201

      Re:    *Dynamic Advances, LLC v. Apple Inc.* (N.D.N.Y. Case No. 1:12-cv-01579)

Dear Don:

      I am writing regarding the deposition notices served for Apple employees Didier Rene Guzzoni, Darren Haas, and Vineet Khosla. I want to clarify Apple's position with respect to these depositions.

      I understand from your April 17 email that Dynamic Advances is refusing to serve a Rule 30(b)(6) deposition notice in advance of these depositions, despite Apple advising that these witnesses would likely be designated pursuant to Rule 30(b)(6). That is Dynamic Advances' choice; however, I want to be clear regarding Apple's position on this matter. While Apple intends to fully comply with its discovery obligations, it must do so in the most efficient manner and in a manner that minimizes the disruption to its on-going business and the work of its employees. It is early in the discovery period of this case, and Apple cannot discern, nor have you articulated, any prejudice to Dynamic Advances in proceeding with one deposition of witnesses that will be both fact and 30(b)(6) witnesses. In the absence of Dynamic Advances serving a 30(b)(6) notice, Apple has endeavored to identify the persons most knowledgeable on probable 30(b)(6) topics. Apple believes it is appropriate for each of these witnesses to be made available for one deposition. This is true for all three of the witnesses above, but especially for Mr. Guzzoni, who, as you know, resides in Switzerland.

      If Dynamic Advances later serves a 30(b)(6) notice identifying topics on matters where these witnesses would be the most knowledgeable, Apple will not be producing either these witnesses again or a second witness to cover the topics that are most appropriately covered by these witnesses. In order to put Dynamic Advances on notice of what these topics are, listed below are the topics that Apple can foresee they would be designated to cover:

      <u>Didier Guzzoni</u>: History of Siri; Mr. Guzzoni's 2007 thesis (*Active: A unified platform for building intelligent assistant applications* – published on October 25, 2007); the functionality of Siri domains; development at SRI International

      <u>Darren Haas</u>: Siri operations; the organization, structure, and maintenance of Siri's source code; development, build, or release processes. Note that we believe these topics

# EXHIBIT B

Donald Tiller
April 30, 2013
Page 2

to be only marginally relevant and not a good use of your allotted deposition hours.  If you have questions, please let us know.

<u>Vineet Khosla</u>: Rule-based and grammar-based processing

Of course, there may be additional topics in Dynamic Advances' 30(b)(6) notice for which these individuals would be the designee, which is why Apple believes it is appropriate for Dynamic Advances to serve its 30(b)(6) notice in advance.  We are hopeful that we can resolve this issue between us.  If Dynamic Advances will not agree to serve its 30(b)(6) notice in advance and to proceed with these depositions once, please let me know your availability to meet and confer pursuant to Local Rule 7.1(d).  If we cannot reach an agreement, it would be best to get the Court's guidance on how to proceed in advance of these depositions.  Assuming an agreement is reached or the Court resolves this matter, Mr. Guzzoni will be available for his deposition on June 18.

Finally, thank you for your confirmation that Dynamic Advances is not seeking email from Mr. Haas and Mr. Khosla in advance of their depositions.  I can confirm that Apple will be producing any responsive, non-privileged documents found after a reasonable search of these employees' files.  Does Dynamic Advances intend to seek email in advance of Mr. Guzzoni's deposition?  If so, Apple needs to know the applicable search terms as soon as possible; otherwise, Apple cannot commit to producing Mr. Guzzoni's email in advance of a June deposition.

Sincerely,

FENWICK & WEST LLP


*/s/ David Lacy Kusters*

David Lacy Kusters

DLK:an

# EXHIBIT C

**Jennifer Westin**

| | |
|---|---|
| **From:** | Leslie Kramer <lkramer@fenwick.com> |
| **Sent:** | Friday, November 01, 2013 10:05 PM |
| **To:** | Don Tiller; Alex Gasser |
| **Cc:** | Dynamic_Service; Teresa Corbin; Hector Ribera; David Lacy Kusters; Jeffrey Ware; Will Moseley |
| **Subject:** | Dynamic Advances/RPI v. Apple: Deposition Objections and Dates |
| **Attachments:** | 2013 11 01 -- Apple Objections to 30(b)(6) Deposition Notice.pdf |

Don and Alex,

Attached are Apple's objections to the 30(b)(6) deposition notice.  Below are dates of availability for both Apple's designees and the 30(b)(1) deponents.  All depositions will be in or around Cupertino, CA.

Given the Court's guidance to Apple to provide dates for the noticed depositions and Dynamic Advances' expressed urgency to take these depositions we have endeavored to provide availability for the witnesses in the next four months, but, in practice, the range of dates seem somewhat compressed.  Given the lack of a deadline for the close of discovery, we propose that the parties confer about spreading the depositions over a longer range of dates.  Please let me know your thoughts on the scheduling.

| Date | Witness | 30(b)(6) Topics (if any) |
|---|---|---|
| 12/10/2013 | Guzzoni | N/A |
| 12/12/2013 | Bellegarda | 3 |
| 12/17/2013 | Kellerman | 45, 46, 49 |
| 1/7/2014 | Murphy | 19, 20, 21, 22, 23, 27, 37 |
| 1/14/2014 | Stasior | N/A |
| 1/16/2014 | Khosla | N/A |
| 1/23/2014 | Haas | N/A |
| 2/7/2014 | Gruber | N/A |
| 2/11/2014 | Buckley | 8,  11, 15, 16, 17, 18 |
| 2/25/2014 | Denison | 1, 2, 9, 10 |
| TBD (likely mid-January) | Treadgold | 33, 34, 35, 36, 38 |
| TBD | Perica | 3, 5, 6, 7, 30, 31 |

As you can see from the chart, there are a few witnesses that we have not been able to confirm dates with yet.  We are working diligently on this.  Nick Treadgold resides in Australia.  We would like to schedule his deposition during engineering week in January.  As soon as his dates are set, we will be able to select a date.  I expect to have dates for Adrien Perica by early next week at the latest.

Regarding Peter Oppenheimer, Apple requests a conference of counsel on his deposition notice.  Please let me know when you are available to confer on this issue.

Regarding Bill Stasior, Mr. Stasior has only a supervisory role and is a recent addition to the Siri group.  As such, he is unlikely to have any relevant personal knowledge that cannot be obtained from other, more relevant witnesses.  Nonetheless, we have provided you with a date for his deposition.

Best,
Leslie



**LESLIE KRAMER**
Fenwick & West LLP
Associate, Litigation Group
☎ (415) 875-2396
🖨 (415) 281-1350
✉ lkramer@fenwick.com

-----------------------------------------------
IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
-----------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT D

Trials@uspto.gov                                          Paper 15
571-272-7822                                    Date: January 9, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

GARMIN INTERNATIONAL, INC. ET AL.
Petitioner

v.

Patent of CUOZZO SPEED TECHNOLOGIES LLC
Patent Owner

_____

Case IPR2012-00001 (JL)
Patent 6,778,074

_____

Before MICHAEL P. TIERNEY, *Lead Administrative Patent Judge*, JAMESON LEE and JOSIAH COCKS, *Administrative Patent Judges*.

LEE, *Administrative Patent Judge*.

DECISION TO INITIATE
TRIAL FOR INTER PARTES REVIEW

BACKGROUND

Petitioner Garmin International Inc. et al. requests inter partes review of claims 1-20 of US Patent 6,778,074 ('074 Patent) pursuant to 35 U.S.C. §§ 311 et seq.  The Patent Owner, Cuozzo Speed Technologies LLC., has waived its right to

IPR2012-00001
Patent 6,778,074

file a preliminary response under 37 C.F.R. § 42.107(b).  (Paper 10).  We have jurisdiction under 35 U.S.C. § 314.

The standard for instituting inter partes review is set forth in 35 U.S.C. § 314(a) which provides:

> THRESHOLD -- The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

Petitioner challenges the patentability of claims 1-20 on the basis of the following items of prior art:

| | | |
|---|---|---|
| US 6,633,811 (**Aumayer**) | October 14, 2003 | Ex. 1001 |
| US 6,515,596 (**Awada**) | February 4, 2003 | Ex. 1010 |
| German DE 19755470 A1 (**Tegethoff**) | September 24, 1998 | Ex. 1002 |
| English Translation of Tegethoff | | Ex. 1003 |
| JP H07-182598 (**Hamamura**) | July 21, 1995 | Ex. 1006 |
| English Translation of Hamamura | | Ex. 1007 |
| US 5,375,043 (**Tokunaga**) | December 20, 1994 | Ex. 1005 |
| US 3,980,041 (**Evans**) | September 14, 1976 | Ex. 1009 |
| US 2,711,153 (**Wendt**) | June 21, 1955 | Ex. 1011 |

In this opinion, citations to Tegethoff and Hamamura are made with respect to their respective English translations noted above.

Petitioner expressly asserts these grounds of unpatentability:

1.     Claims 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, 18, 19, and 20 are unpatentable under 35 U.S.C. § 102(e) as anticipated by Aumayer.

2.     Claims 1, 2, 6, and 7 are unpatentable under 35 U.S.C. § 102(b) as anticipated by Tegethoff.

2

IPR2012-00001
Patent 6,778,074

     3.     Claim 1 is unpatentable under 35 U.S.C. § 102(b) as anticipated by Tokunaga.

     4.     Claims 3, 4, 5, 14, 15, and 16 are unpatentable under 35 U.S.C. § 103 as obvious over Aumayer and Evans.

     5.     Claim 17 is unpatentable under 35 U.S.C. § 103 as obvious over Aumayer, Evans, and Wendt.

     6.     Claims 3, 4, and 5 are unpatentable under 35 U.S.C. § 103 as obvious over Tegethoff and Evans.

     7.     Claims 8, 9, 10, 11, 12, 13, 18, 19, and 20 are unpatentable under 35 U.S.C. § 103 as obvious over Tegethoff and Awada.

     8.     Claims 14, 15, and 16 are unpatentable under 35 U.S.C. § 103 as obvious over Tegethoff, Awada, and Evans.

     9.     Claim 17 is unpatentable under 35 U.S.C. § 103 as obvious over Tegethoff, Awada, Evans, and Wendt.

     10.   Claims 10 and 20 are unpatentable under 35 U.S.C. § 103 as obvious over Tokunaga and Hamamura.

## DISCUSSION

Our decision hinges on the meaning of "integrally attached" in independent claims 1 and 10.

### Claim Construction

Consistent with the statute and the legislative history of the AIA, the Board interprets claim terms by applying the broadest reasonable construction in the context of the specification in which the claims reside. 37 C.F.R. § 42.100(b); *see* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48766 (Aug. 14, 2012).

IPR2012-00001
Patent 6,778,074

Also, we give claim terms their ordinary and accustomed meaning as would be understood by one of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1326 (Fed. Cir. 2005)(en banc). That ordinary and accustomed meaning applies unless the inventor as a lexicographer has set forth a special meaning for a term. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998); *York Prods., Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572 (Fed. Cir. 1996). When an inventor acts as a lexicographer, the definition must be set forth with reasonable clarity, deliberateness, and precision. *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998).

If we need not rely on a feature to give meaning to what the inventor means by a claim term, that feature would be "extraneous" and should not be read into the claim. *Renishaw PLC*, 158 F.3d at 1249. The construction that stays true to the claim language and most naturally aligns with the inventor's description is likely the correct interpretation. *See Id.*, 158 F.3d at 1254.

In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. *Phillips v. AWH Corp.*, 415 F.3d at 1314. In this case, Petitioner sets forth no claim construction that is purportedly different between that from the perspective of one with ordinary skill in the art on the one hand and that of lay persons on the other. We have no basis to think differently and to conclude otherwise. So for purposes of this decision we proceed on the basis that the plain and ordinary meaning of words in their common usage applies, albeit taken in the context of the disclosure of the '074 Patent.

IPR2012-00001
Patent 6,778,074

The Invention of the '074 Patent

The disclosed invention of the '074 Patent is directed to a speed limit indicator and method for displaying speed and the relevant speed limit for use in connection with vehicles.  (Spec. 1:9-11).  Specifically, the speed indicator displays the current speed of a vehicle and how it relates to the legal speed limit for the current location in which the vehicle is traveling.  (Spec. 1:13-16).  It provides the benefit of eliminating the need for the driver to take eyes off the road to look for speed limit signs and to resolve any confusion that might exist as to what is the current legal speed limit.  (Spec. 1:22-25).

Figure 1 illustrates the specifically disclosed embodiment:



Figure 1 illustrates a specifically disclosed embodiment

Speedometer 12 is mounted on dashboard 26.  (Spec. 5:8-9).  Speedometer 12 has a backplate 14 made of plastic, speed denoting markings 16 painted on backplate 14, a colored display 18 made of red plastic filter, and a plastic needle 20 rotatably mounted in the center of backplate 14.  (Spec. 8-11).  A global positioning receiver 22 is positioned adjacent to speedometer 12 and other gauges typically present on a vehicle dashboard 26 are included.  (Spec. 5:13-15).

5

IPR2012-00001
Patent 6,778,074

Referring to a flowchart provided in Figure 2 with numerical references to individual steps and not individual parts, the specification of the '074 Patent describes operation of the speed limit indicator as follows (Spec. 5:25-39):

> Uploading unit 38 uploads current data to a regional speed limit database 40.  The global positioning system receiver 42 tracks the vehicle's location and speed, and identifies the relevant speed limit from the database for that location.  The global positioning system receiver compares the vehicle's speed and the relevant speed limit 44, and uses a tone generator 46 to generate a tone in the event that the vehicle's speed exceeds the relevant speed limit.  The speed limit information is sent from the global positioning system receiver to a filter control unit 48. **The control unit adjusts the color filter so that the speeds above the legal speed limit are displayed in red 50 while the legal speeds are displayed in white 52.  This is accomplished by the control unit rotating the red filter disc 54 to the appropriate degree**.  (Emphasis added.)

Claims 1 and 10 are the only independent claims.  Claim 1 is reproduced below:

> 1.      A speed limit indicator comprising:

> a colored display to delineate which speed readings are in violation of the speed limit at a vehicle's current location;

> a speedometer **integrally attached** to said colored display; and

> a display controller connected to said colored display, wherein said display controller adjusts said colored display independently of said speedometer to continuously update the delineation of which speed readings are in violation of the speed limit at a vehicle's present location.  (Emphasis added.)

Claim 1 requires that the speedometer be "integrally attached" to the colored display.  Claim 10 is the same, as it also recites: "a speedometer integrally attached to said colored display."

Claim 20 is reproduced below:

> 20.    A method of determining speed, the relevant speed limit, and displaying same, which comprises the steps of:
>
> uploading current information to regional speed limit database;
>
> determining vehicle location and speed;
>
> obtaining speed limit for said vehicle location from said database;
>
> comparing vehicle speed to said speed limit;
>
> generating tone if said vehicle speed exceeds said speed limit;
>
> sending speed limit to display control unit; and
>
> modifying **the limit indicator as defined in claim 1** to reflect which speeds are below said speed limit and which speeds exceed said speed limit.  (Emphasis added.)

In its last clause, claim 20 specifically refers to the structure of the speed limit indicator of claim 1.  Thus, claim 20 is dependent on claim 1 and also includes the limitation that the speedometer is integrally attached to the colored display.  Petitioner has not taken any contrary position in the Petition.

Petitioner does not make known its construction of "integrally attached." Instead, Petitioner states that the term has to mean, in this proceeding, what the Patent Owner asserts it means in the infringement suits the Patent owner has filed against various parties including Petitioner.  That argument is without merit.  The meaning of claim terms is not governed by what the Patent Owner says they mean in filing an infringement suit based on the '074 Patent.  There is no reason to assume that the Patent Owner's litigation position is correct.  Litigation positions taken subsequent to issuance of the patent are unreliable.  *See Phillips v. AWH*

IPR2012-00001
Patent 6,778,074

*Corp.*, 415 F.3d at 1318.  In any event, the Petition itself does not disclose or discuss the Patent Owner's position and Petitioner even states that the Patent Owner's litigation position in the infringement suits is not necessarily correct. (Petition 18: n.1).

On this record, we construe "integrally attached" as applied to the colored display and the speedometer in the context of the disclosure of the '074 Patent as meaning that the two elements are discrete parts physically joined together as a unit without each part losing its own separate identity.  In the combined unit, the colored display is still the colored display and the speedometer is still the speedometer; each retains its own separate identity.  The specification of the '074 Patent discloses that colored display 18 is a separate item from backplate 14 and from speed denoting marking 16 on backplate 14.  ('074 Patent 5:9-12).  Claim 1 even expressly recites that the display controller adjusts the colored display independently of the speedometer.  In that connection, we note further that Patent Owner's amendment in the prosecution history of the '074 Patent, dated January 9, 2004, states (Ex. 1013 7:23-25):

> Support for the amendment to specify that the speedometer is integrally attached to the colored display is found in the specification at p.7, lines 28-30, p.8, lines 21-23, and in Fig. 1, 3, and 4.

The above-quoted portions of the specification describe speedometer backplate 14 and speed denoting markings 16 painted on backplate 14 as separate and discrete elements from the colored display 18.  Petitioner has not presented a reasonable basis to broaden out the interpretation of "integrally attached" to cover the case of a single electronic display that itself operates both as a speedometer and a colored display.  The Patent Owner relied on separate components as providing written description support for the term.

Aumayer

Aumayer discloses a method for displaying vehicle speed.  (Abstract:1-2).
Also, the speed limit at the current location may be displayed on a speed scale by
highlighting a scale mark or producing a scale mark of a different length or color.
(Abstract:9-12).  The current location of the vehicle is determined by use of a GPS
locating device.  (Aumayer 4:41-45).  The speed limit at the current location of the
vehicle is retrieved from a data storage media according to the determined current
location.  (Abstract:13-15; Aumayer 4:45-53).  Aumayer also describes (Aumayer
7:34-37):

> The display device 211 comprises a display controller and a display
> medium, for example a display screen provided by **a liquid crystal
> display device, a plasma screen or a cathode ray tube**.  (Emphasis
> added.)

Figure 2d of Aumayer is reproduced below, which illustrates an electronic
display according to practicing Aumayer's disclosed method:



Figure 2d shows a display according to Aumayer's method

9

IPR2012-00001
Patent 6,778,074

     With respect to Figure 2d, Aumayer describes that the determined speed limit of 80 km/hr for the vehicle's current location is shown by the speed scale value 124 and speed scale mark 127 at the speed limit, both of which are highlighted or emphasized such as by use of color different from that used for the remainder of the display device, by enlargement, and/or by widening, on the electronic display.  (Aumayer 6:21-27).  Aumayer expressly states that the speed limit is highlighted or emphasized by the scale mark 127.  (Aumayer 6:33-35).

     Aumayer further states that "it is also possible to use a commercial combined apparatus with mechanical display elements for the display device 211." (Aumayer 7:42-44).  Specific details of that mechanical embodiment are not described.  However, Aumayer states that for example, "a speed limit can be made visible by background lighting in a different color at the scale mark associated with the corresponding speed limit."  (Aumayer 7:48-51).

Tegethoff

     Tegethoff discloses an image display system for use on a vehicle, which includes an image screen and an image generating computer.  (Tegethoff 4:2:16-18).  The image displayed on the screen mimics that of analog mechanical pointer instruments, and in their outer image form cannot be distinguished from purely mechanical devices.  (Tegethoff 4:2:34-40).  Figure 2 of Tegethoff is reproduced below, which illustrates an image of a speedometer and other useful information (Tegethoff 5:2:30-32):

10

IPR2012-00001
Patent 6,778,074



Fig. 2

Figure 2 shows an embodiment of Tegethoff's image display

On the image shown above is displayed a mark 5 for indicating a currently permissible maximum speed for the road section where the vehicle is currently located. (Tegethoff 6:1:9-12). According to Tegethoff, that speed limit can be set according to an element for navigation and a database. (Tegethoff 6:1:13-15). Tegethoff describes that the critical markings such as that showing the speed limit can be colored red. (Tegethoff 7:1:38-45).

Tokunaga

Tokunaga discloses a lighting unit capable of varying the luminescence and color of illumination with respect to a target to be lit thereby to provide an effective display of the target, and capable of itself serving as a display unit. (Abstract 1-5). Tokunaga discloses two embodiments of the lighting unit, one shown in Figure 1and one shown in Figure 3:



Figures 1 and 3 illustrate separate embodiments of a lighting unit

In both embodiments, there is a light guide plate 1.  In the Figure 1 embodiment, LEDs 2a-2d are directly fitted to the side edges of the light guide plate, and in the Figure 3 embodiment, LEDs 2a-2d are indirectly provided to the side edges of the light guide plate 1 through optical transmission media such as optical fibers 5a-5d.  (Tokunaga 2:12-22).  The light guide plate 1 is suitable for use as a backlight for a liquid crystal display panel on a portable electronic device.  (Tokunaga 2:37-41).  Figure 2 shows the light guide plate 1 disposed next to a liquid crystal display panel:





Figure 2 illustrates a partial sectional view of light guide plate 1

IPR2012-00001
Patent 6,778,074

Tokunaga describes that a liquid crystal display panel 3 is disposed on top of the light guide plate 1 so as to permit the content of the liquid crystal display to be irradiated with light sent from the light guide plate 1, and that under the light guide plate 1 there is an electronic circuit board 4 for operating the liquid crystal display panel.  (Tokunaga 2:66 to 3:5).  Tokunaga describes that the lighting unit can be used to illuminate the liquid crystal display panel of a portable electronic game machine such as GAME BOY®.  (Tokunaga 3:54-59).  Tokunaga also describes that the liquid crystal display panel of the game machine is operated according to image signals from an operation circuit and the light guide plate 1 is incorporated into the game machine to illuminate the liquid crystal display.  (Tokunaga 3:63-68).

Tokunaga does not, however, describe specifically how the light guide plate 1 is put in position relative to liquid crystal display panel 3 or electronic circuit board 4.  It is known only that the light guide plate 1 is incorporated into the overall game machine, that the liquid crystal display is disposed on one side, and that the electronic circuit board is disposed on the opposing side as shown in Figure 2.

Tokunaga further states that although the description of the lighting unit provided in the disclosure is made by way of example in the context of a game machine, it would be obvious to those of ordinary skill in the art that the lighting unit has other applications such as illuminating the display surfaces of a vehicle speedometer.  (Tokunaga 4:62-67).   However, the statement of potential application elsewhere is only general and Tokunaga does not describe any specific structural implementation of the application of the lighting unit to a vehicle speedometer.  Tokunaga does state that in the case of application to a vehicle speedometer, the color of the display light for the speedometer can be changed

13

IPR2012-00001
Patent 6,778,074

from blue to red if the vehicle speed exceeds a legal speed limit.  (Tokunaga 5:1-5).  But it does not describe that the "legal speed limit" it refers to is one associated specifically to the current location of the vehicle.

A.      The alleged grounds based in whole or in part on Aumayer

Each of independent claims 1 and 10 requires that the speedometer be "integrally attached" to the colored display.  According to the petitioner, a single liquid crystal display screen such as that of Aumayer's display device 211, which displays the image of both the speedometer and the colored scale mark 107 showing the speed limit, satisfies the claim requirement of an integral attachment between a speedometer and a colored display.  (Petition 18:1-4).

For reasons already discussed above, on this record we construe "integrally attached" differently from the Petitioner.  The single electronic display screen of Aumayer showing both the image of a speedometer and a colored scale mark indicating the current speed limit does not meet the claim recitation "integrally attached" as applied to a speedometer and a colored display.  There, the speedometer and the colored display are not discrete and separately recognizable parts that are "integrally attached" to each other.  Rather, the liquid crystal display screen is itself a single component which performs the function of both the speedometer and colored display.

We recognized already that Aumayer states that "it is also possible to use a commercial combined apparatus with mechanical display elements for the display device 211." (Aumayer 7:42-44).  We also already recognized that Aumayer states that "a speed limit can be made visible by background lighting in a different color at the scale mark associated with the corresponding speed limit."  (Aumayer 7:48-51).   None of that disclosure indicates that a colored display is necessarily integrally attached to the speedometer.  No specific embodiment of a combined

14

IPR2012-00001
Patent 6,778,074

apparatus with mechanical display elements is described in sufficient detail.  Even Petitioner has not explained how such general disclosure meets the requirement of "integrally attached" between the speedometer and the colored display.

A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently, in a single prior art reference *Verdegaal Bros., Inc. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987).

Claims 2, 6-13, and 18-20 each depend directly or indirectly from either claim 1 or claim 10.  Because Aumayer fails to disclose the "integrally attached" element of  claims 1 and 10 as applied to the speedometer and the colored display, there is not a reasonable likelihood that the Petitioner would prevail on its assertion that claims 1, 2, 6-13, and 18-20 are anticipated by Aumayer under 35 U.S.C. § 102(e).

The above-noted deficiency of Aumayer with respect to independent claim 1 undermines Petitioner's assertion of obviousness of claims 4 and 5 over Aumayer and Evans under 35 U.S.C. § 103.  Claim 4 depends on claim 1 and claim 5 depends on claim 4.  Claims 4 and 5 recite the specific mechanical structure of a speedometer, such as a needle, an axle, and a cable (claim 4), and a backplate and a housing (claim 5).  As applied by Petitioner to claims 4 and 5, Evans discloses all of those elements but does not cure the above-noted deficiency of Aumayer discussed in the context of independent claim 1 with regard to a colored display being "integrally attached" to the speedometer.  There is not a reasonable likelihood that the petitioner would prevail on its assertion that claims 4 and 5 would have been obvious over Aumayer and Evans under 35 U.S.C. § 103.

Petitioner also asserts that claims 3 and 14-16 would have been obvious over Aumayer and Evans, and that claim 17 would have been obvious over Aumayer, Evans, and Wendt, under 35 U.S.C. § 103.  As applied by Petitioner to claims 3

15

IPR2012-00001
Patent 6,778,074

and 14-16, Evans does seemingly disclose what Aumayer does not disclose, *i.e.*, a colored display which is "integrally attached" to the speedometer.  However, the above-noted deficiency of Aumayer is not cured by Petitioner's reliance on Evans because Petitioner has not articulated a credible rationale for combining the teachings of Aumayer and Evans to arrive at the claimed invention.

Aumayer discloses an embodiment including each of the recited elements of independent claims 1 and 10 of the '074 Patent, except for the requirement that the speedometer and the colored display are "integrally attached."  Claim 3 depends on claim 1 and recites that the colored display is a colored filter.  Claim 14 depends on claim 10 and also recites that the colored display is a colored filter.  Claim 15 depends on claim 14 and claim 16 depends on claim 15.

Evans discloses a combined vehicle speedometer and speed warning indicator.  (Evans 1:68 to 2:23).  The speed warning indicator is installed on the speedometer cover.  (Evans 2:16-17)  It comprises a transparent plate attached to the transparent front cover of the speedometer.  (Evans 2:1-3).  Evans describes the speed warning indicator as follows (Evans 2:3-8):

> The plate bears warning indicia, for example, **a special color** and/or a plurality of marks, spaces, ridges, etc. so that when the speedometer dial is viewed through it, a portion of the dial representing speeds in excess of a predetermined limit are demarked by the warning indicia. (Emphasis added.)

Evans describes that a driver can tell what speeds are under or in excess of the speed limit by making a swift reference to the speedometer through the indicator and see whether the speedometer needle is in or out of the warning area on the indicator plate.  (Evans 2:9-13).  Evans further describes that the indicator plate can be made adjustable for changes in the speed limit.  (Evans 2:18-19).  As shown in Figure 3, the red colored plate 12 is positioned on speed dial 30 so that

16

IPR2012-00001
Patent 6,778,074

only the portion of the dial which contains numbers representing speeds in excess of the speed limit is overlaid by the plate:



Figure 3 illustrates a front elevation view of the
combined speedometer and speed warning indicator

The colored filter plate 12 of Evans is a fixed structure integrally attached to the speedometer.  However, although the plate may be removed and replaced, in its operational state it is a fixed, non-moveable, and non-adjustable structure.  In that connection, Evans states (Evans 3:37-44):

> It will be understood that plate 12 can, if desired, be removed from cover 24 and either another similar plate of different configuration can be substituted or plate 12 can be recut and repositioned or merely repositioned on cover 24 so as to extend over another range of speed numbers on dial 30.  For example this would be desirable in the event that the 55 mph current speed limit were abolished.

With regard to claims 3 and 14-16, Petitioner has not explained why one with ordinary skill in the art would have chosen to use the fixed and immovable colored plate 12 of Evans in combination with the dynamic display system of

17

IPR2012-00001
Patent 6,778,074

Aumayer which provides the benefits of a continuously controlled and updated colored display to indicate the applicable speed limit for the vehicle at its current location.

Accordingly, there is not a reasonable likelihood that the petitioner would prevail on its assertion that claims 3 and 14-16 would have been obvious over Aumayer and Evans under 35 U.S.C. § 103.

Claim 17 depends on claim 14, and states that the display controller rotates the colored filter independently of the speedometer to continuously update the delineation of which speed readings are in violation of the speed limit at a vehicle's present location.  For claim 17, Petitioner relies on Wendt in combination with Aumayer and Evans.  Wendt and Evans in combination seemingly cures the above-noted deficiency of Aumayer with regard to independent claim 10 and of Aumayer and Evans with regard to claim 14.  That is because Wendt teaches the desirability of a rotatably moveable structure to indicate the speed limit.

The combined teachings of Aumayer, Evans, and Wendt appears to account for all the features of claim 17.  Accordingly, there is a reasonable likelihood that the petitioner would prevail on its assertion that 17 would have been obvious over Aumayer, Evans, and Wendt under 35 U.S.C. § 103.

Because claim 17 depends on claim 14 which depends on claim 10, and because dependent claims include all of the features of the claims on which they depend, Petitioner also has shown a reasonable likelihood that it would prevail on demonstrating that claims 10 and 14 would have been obvious over the combined teachings of Aumayer, Evans, and Wendt.  We recognize that Petitioner did not specifically articulate a ground of unpatentability against claims 10 and 14 based on Aumayer, Evans, and Wendt.  However, we exercise discretion to recognize

IPR2012-00001
Patent 6,778,074

that the assertion was implicitly made by Petitioner's alleging that claim 17 would have been obvious over Aumayer, Evans, and Wendt.

For claims 1-9, 11-13, 15, 16, and 18-20, we have not considered the ground of obviousness under 35 U.S.C. § 103, based on the combined teachings of Aumayer, Evans, and Wendt, and take no position in that regard.  In this petition, that ground of obviousness has not been asserted by Petitioner against those claims, either expressly or by implication.

B.     The alleged grounds based in whole or in part on Tegethoff

Each of independent claims 1 and 10 requires that the speedometer be "integrally attached" to the colored display.  Tegethoff shares the same deficiency in that regard with Aumayer as discussed above.  According to the Petitioner, a single digital electronic display screen 37 that displays the image of both the speedometer and the colored tick mark 5 showing the speed limit satisfies the claim requirement of an integral attachment between a speedometer and a colored display.  (Petition 22:1-4).

For reasons already discussed above, on this record we construe "integrally attached" differently from the Petitioner.  The single digital electronic display screen 37 of Tegethoff displaying both the image of a speedometer and a colored tick mark 5 indicating the current speed limit does not meet the claim recitation "integrally attached" as applied to a speedometer and a colored display.  There, the speedometer and the colored display are not discrete and separately recognizable parts that are "integrally attached" to each other.  Rather, the screen performs the function of both the speedometer and colored display.

Claims 2, 6,and 7 each depend directly from claim 1.  Because Tegethoff fails to disclose the "integrally attached" element of  claim 1 as applied to the speedometer and the colored display, there is not a reasonable likelihood that the

19

IPR2012-00001
Patent 6,778,074

Petitioner would prevail on its assertion that claims 1, 2, 6, and 7 are anticipated by Tegethoff under 35 U.S.C. § 102(b).

The above-noted deficiency of Tegethoff with respect to independent claim 1 undermines Petitioner's assertion of obviousness of claims 4 and 5 over Tegethoff and Evans under 35 U.S.C. § 103. Claim 4 depends on claim 1 and claim 5 depends on claim 4. Claims 4 and 5 recite the specific mechanical structure of a speedometer, such as a needle, an axle, and a cable (claim 4), and a backplate and a housing (claim 5). As applied by Petitioner to claims 4 and 5, Evans discloses all of those elements but does not cure the above-noted deficiency of Tegethoff discussed in the context of independent claim 1 with regard to a colored display being "integrally attached" to the speedometer. There is not a reasonable likelihood that Petitioner would prevail on its assertion that claims 4 and 5 would have been obvious over Tegethoff and Evans under 35 U.S.C. § 103.

Petitioner also asserts that claim 3 would have been obvious over Tegethoff and Evans under 35 U.S.C. § 103. As applied by Petitioner to claim 3, Evans does disclose what Aumayer does not disclose, *i.e.*, a colored display which is "integrally attached" to the speedometer. However, the above-noted deficiency of Tegethoff is not cured by reliance on Evans because Petitioner has not articulated a credible rationale for combining the teachings of Tegethoff and Evans to arrive at the claimed invention. The deficiency is the same as that discussed above on the lack of sufficient basis to combine the teachings of Evans and Aumayer. We note again that the color filter of Evans is fixed and immoveable. Tegethoff requires a colored display that is variable in position to reflect the current speed limit at the current location of the vehicle. Accordingly, there is not a reasonable likelihood that the Petitioner would prevail on its assertion that claim 3 would have been obvious over Tegethoff and Evans under 35 U.S.C. § 103.

IPR2012-00001
Patent 6,778,074

As is the case with claim 1, with respect to claim 10 Tegethoff does not disclose the limitation of a speedometer integrally attached to a colored display. Petitioner's reliance on Awada in combination with Tegethoff does not cure that deficiency. Awada is relied on by the Petitioner in connection with claim 10 as teaching the use of a global positioning system connected to a display controller for providing signals for continuously updating the delineation of which speed readings are in violation of the speed limit at the vehicle's current location.

Claims 8, 9, and 20 each depend directly or indirectly on claim 1. Claims 11-13, 18, and 19 each depend directly or indirectly on claim 10. Petitioner relies on Awada in combination with Tegethoff as teaching the specific features added by these dependent claims. However, as applied by the Petitioner, Awada does not cure the deficiency of Tegethoff with respect to the limitation in independent claims 1 and 10 that the speedometer is integrally attached to the colored display. Thus, there is not a reasonable likelihood that the Petitioner would prevail on its assertion that claims 8-13, and 18-20 would have been obvious over Tegethoff and Awada under 35 U.S.C. § 103.

Claim 14 depends on claim 10 and recites that the colored display is a colored filter. Claim 15 depends on claim 14 and claim 16 depends on claim 15.

For claims 14-16, Petitioner relies on Evans as teaching the use of a colored filter that is attached to a speedometer. However, as is the case with Petitioner's attempted combination of Aumayer and Evans, already discussed above, Petitioner has not articulated a credible rationale to make the purported combination of Tegethoff and Evans. The colored filter of Evans is fixed and immoveable during operation. Tegethoff, on the other hand, requires a colored display that can be variably adjusted while the vehicle is in motion, to match the applicable speed limit for the current location of the vehicle. Accordingly, there is not a reasonable

21

likelihood that the Petitioner would prevail on its assertion that claims 14-16 would have been obvious over Tegethoff, Awada, and Evans under 35 U.S.C. § 103.

Claim 17 depends on claim 14 and adds that the display controller rotates the colored filter independently of the speedometer to continuously update the delineation of which speed readings are in violation of the speed limit at the vehicle's present location. For claim 17, Petitioner relies on Wendt in combination with Tegethoff, Awada, and Evans. Wendt and Evans together in combination with Tegethoff and Awada seemingly cures the above-noted deficiency of Tegethoff and Awada with regard to independent claim 10, and of Tegethoff, Awada, and Evans with respect to claim 14. That is because Wendt teaches the desirability of a rotatably moveable structure to indicate the speed limit.

The combined teachings of Tegethoff, Awada, Evans, and Wendt appears to account for all of the features of claim 17. Accordingly, there is a reasonable likelihood that Petitioner would prevail on its assertion that claim 17 would have been obvious over Tegethoff, Awada, Evans, and Wendt under 35 U.S.C. § 103.

Because claim 17 depends on claim 14 which depends on claim 10, and because dependent claims include all of the features of the claims on which they depend, Petitioner also has shown a reasonable likelihood that it would prevail on demonstrating that claims 10 and 14 would have been obvious over the combined teachings of Tegethoff, Awada, Evans, and Wendt. We recognize that Petitioner did not specifically articulate a ground of unpatentability against claims 10 and 14 based on Tegethoff, Awada, Evans, and Wendt. However, we exercise discretion to recognize that the assertion was implicitly made by Petitioner's alleging that claim 17 would have been obvious over Tegethoff, Awada, Evans, and Wendt.

For claims 1-9, 11-13, 15, 16, and 18-20, we have not considered the ground of obviousness under 35 U.S.C. § 103, based on the combined teachings of

22

IPR2012-00001
Patent 6,778,074

Tegethoff, Awada, Evans, and Wendt, and take no position in that regard.  In this
petition, that ground of obviousness has not been asserted by Petitioner against
those claims, either expressly or by implication.

C.      The alleged grounds based in whole or in part on Tokunaga

According to Petitioner, Tokunaga discloses each and every element of
independent claim 1.  There are two problems with that assertion.

The first still relates to that same limitation which undermines the
anticipation assertion based on Aumayer and on Tegethoff, *i.e.*, that the
speedometer is "integrally connected" to the colored display.  Petitioner points out
that Tokunaga discloses that its lighting unit is incorporated into the game machine
so as to illuminate the liquid crystal display, and that in lieu of the gaming device
the lighting unit has other applications, for example, for providing illumination to
the surface of a vehicle speedometer.  (Petition 23:16-21).  On that basis alone,
Petitioner concludes that the "integrally connected" limitation is met.  We disagree.

Tokunaga provides no specific description of how the lighting unit would be
attached to the display surface of a vehicle speedometer or if it is even attached.
And even in the context of a game machine, Tokunaga describes that liquid crystal
display panel 3 is disposed on top of the light guide plate 1 to permit the content of
the liquid crystal display to be irradiated with light sent from the light guide
plate 1, and that under the light guide plate 1 there is an electronic circuit board 4
for operating the liquid crystal display panel.  (Tokunaga 2:66 to 3:5).  That is not
a specific description of how the light guide plate 1 is put in position relative to
liquid crystal display panel 3.  It is known only that light guide plate 1 is
incorporated into the overall game machine, that the liquid crystal display 3 is
disposed on one side of the light guide plate 1 and the electronic circuit board is
disposed on the opposing side as shown in Figure 2.

IPR2012-00001
Patent 6,778,074

Secondly, claim 1 requires a colored display to delineate which speed readings are in violation of "the speed limit at a vehicle's current location." Tokunaga does state that in the case of application to a vehicle speedometer, the color of the display light for the speedometer can be changed from blue to red if the vehicle speed exceeds a legal speed limit.  (Tokunaga 5:1-5).  But it does not describe that the legal speed limit it refers to is associated specifically with the current location of the vehicle.  Petitioner has pointed to no description that the referenced speed limit is location-based.

Accordingly, there is a not reasonable likelihood that Petitioner would prevail on its assertion that claim 1 is anticipated by Tokunaga under 35 U.S.C. § 102(b).

As compared to claim 1, independent claim 10 adds the requirement of a global positioning system receiver which outputs signals to the display controller which adjusts the display to continuously update the delineation of which speed readings are in violation of the speed limit at the vehicle's current position.  For that limitation, Petitioner relies on the teachings of Hamamura, in combination with that of Tokunaga.  However, reliance on Hamamura does not cure the above-noted deficiency of Tokunaga with regard to the "integrally attached" requirement for the speedometer and the colored display.

Because it depends on claim 1, claim 20 also includes the requirement that the speedometer is "integrally connected" to the colored display.  As noted above, however, with respect to that limitation, Petitioner's reliance on Hamamura does not cure the deficiency of Tokunaga.

In any event, Petitioner's reliance on Hamamura to account for the limitation of continuous updating the delineation of which speed readings are in violation of the speed limit at the vehicle's current location is misplaced because Petitioner's

24

IPR2012-00001
Patent 6,778,074

analysis of Hamamura equates "safe speed" at a location with the speed limit at that location.  In the context of Hamamura, that is clearly not the case.  Hamamura discloses determining a safe speed for a vehicle location based on the speed limit for that location, road shape "and the like" of each road.  (Hamamura 3:[0008]).  Hamamura discloses displaying the "safe speed" at the vehicle's current location (Hamamura 1:[Constitution]:3-4) and states that the legal speed limit of a road on which the vehicle is currently running may not agree with a speed at which the vehicle can actually run safely.  (Hamamura 3:[0004]:12-14).

There is a not reasonable likelihood that Petitioner would prevail on its assertion that claims 10 and 20 would have been obvious over Tokunaga and Hamamura under 35 U.S.C. § 103.

## CONCLUSION

Petitioner has demonstrated a reasonable likelihood of prevailing on its challenge of claims 10, 14, and 17 of the '074 Patent as obvious under 35 U.S.C. § 103 (1) over Aumayer, Evans, and Wendt, and (2) over Tegethoff, Awada, Evans, and Wendt.

Petitioner has not demonstrated a reasonable likelihood of prevailing on its challenge of any other claim on any ground.

### Order

It is

**ORDERED** that the Petition is *denied* as to claims 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, and 18-20 of the '074 patent on the alleged ground of anticipation by Aumayer under 35 U.S.C. § 102(e);

**FURTHER ORDERED** that the Petition is *denied* as to claims 1, 2, 6, and 7 of the '074 patent on the alleged ground of anticipation by Tegethoff under 35 U.S.C. § 102(b);

25

IPR2012-00001
Patent 6,778,074

**FURTHER ORDERED** that the Petition is *denied* as to claim 1 of the '074 patent on the alleged ground of anticipation by Tokunaga under 35 U.S.C. § 102(b);

**FURTHER ORDERED** that the Petition is *denied* as to claims 3-5 and 14-16 of the '074 patent on the alleged ground of obviousness over Aumayer and Evans under 35 U.S.C. § 103;

**FURTHER ORDERED** that the Petition is *granted* as to claims 10, 14, and 17 of the '074 patent on the alleged ground of obviousness over Aumayer, Evans, and Wendt under 35 U.S.C. § 103;

**FURTHER ORDERED** that the Petition is *denied* as to claims 3-5 on the alleged ground of obviousness over Tegethoff and Evans under 35 U.S.C. § 103;

**FURTHER ORDERED** that the Petition is *denied* as to claims 8-13 and 18-20 on the alleged ground of obviousness over Tegethoff and Awada under 35 U.S.C. § 103;

**FURTHER ORDERED** that the Petition is *denied* as to claims 14, 15, and 16 on the alleged ground of obviousness over Tegethoff, Awada, and Evans under 35 U.S.C. § 103;

**FURTHER ORDERED** that the Petition is *granted* as to claims 10, 14, and 17 on the alleged basis of obviousness over Tegethoff, Awada, Evans, and Wendt under 35 U.S.C. § 103;

**FURTHER ORDERED** that the Petition is *denied* as to claims 10 and 20 on the alleged ground of obviousness over Tokunaga and Hamamura under 35 U.S.C. § 103;

**FURTHER ORDERED** that pursuant to 35 U.S.C. § 314(a), a trial for inter partes review of the '074 patent is hereby instituted, commencing on the entry date

IPR2012-00001
Patent 6,778,074

of this Order, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of trial;

**FURTHER ORDERED** that the trial is limited to the two above-stated grounds of obviousness directed to claims 10, 14, and 17, and that no other ground for any claim is authorized for trial; and

**FURTHER ORDERED** that an initial conference call with the Board is scheduled for **1 PM EST on January 23, 2013**; the parties are directed to the Office Trial Practice Guide, 77 Fed. Reg. 48756, 48765-66 (Aug. 14, 2012) for guidance in preparing for the initial conference call, and should come prepared to discuss any proposed changes to the Scheduling Order entered herewith and any motions the parties anticipate filing during the trial.

IPR2012-00001
Patent 6,778,074

For PETITIONER:

Jennifer C. Bailey
HOVEY WILLIAMS LLP
jcb@hoveywilliams.com

For PATENT OWNER

John R. Kasha
Kasha Law LLC
john.kasha@kashalaw.com

Cabrach J. Connor
Reed & Scardino LLP
cconnor@reedscardino.com

# EXHIBIT E

Bruce D. Vargo, Esq.
SCARPONE & VARGO LLC
50 Park Place, Suite 1003
Newark, New Jersey 07102
Tel: (973) 623-4101
Fax: (973) 623-4181
bvargo@scarponevargo.com
*Attorneys for Plaintiff Cuozzo Speed Technologies LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CUOZZO SPEED TECHNOLOGIES LLC, | CIV. NO. 12-cv-3623 (CCC)(JAD) |
| Plaintiff, | CIVIL ACTION |
| v. | |
| GARMIN INTERNATIONAL INC.; GARMIN USA, INC.; and CHRYSLER GROUP LLC, | **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| Defendants. | |

Plaintiff Cuozzo Speed Technologies LLC, for its First Amended Complaint

against Defendants Garmin International Inc. and Garmin USA, Inc. (collectively,

"Garmin"), and Chrysler Group LLC states and alleges:

**PARTIES**

1.     Plaintiff Cuozzo Speed Technologies LLC ("CST") is a limited

liability company organized under New Jersey law with a principal place of

business at 14 Ver Valen St., Closter, New Jersey 07624.

**Garmin International, Inc.**                                    **Exhibit 1014 - 1**

2.      Defendant Garmin International Inc. ("Garmin International") is a corporation organized under Kansas law with a principal place of business at 1200 E. 151st Street, Olathe, Kansas 66062.  Garmin International may be served with process through its registered agent, David Ayres, 1200 East 151st Street, Olathe, Kansas 66062.

3.      Defendant Garmin USA, Inc. ("Garmin USA") is a corporation organized under Kansas law with a principal place of business at 1200 E. 151st Street, Olathe, Kansas 66062.  Garmin USA may be served with process through its registered agent, National Registered Agents, Inc. of NJ, 100 Canal Pointe Blvd., Suite 212, Princeton, New Jersey 08540.

4.      Defendant Chrysler Group LLC ("Chrysler") is a limited liability company organized under the laws of Delaware with a principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.  Chrysler may be served with process through its registered agent, The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

### JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, including § 271.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

**Garmin International, Inc.**

**Exhibit 1014 - 2**

6.     Venue is proper in this District under 28 U.S.C. § 1391 (b)-(c) and §
1400 (b) because (1) Defendants regularly conduct business in this District and are
subject to personal jurisdiction here; (2) a substantial part of the events giving rise
to CST's claims occurred in this District; (3) Defendants have committed and
continue to commit acts of infringement in this District; and (4) Defendants have
harmed and continue to cause harm to CST in this District.

### GENERAL ALLEGATIONS

7.     On August 17, 2004, the United States Patent and Trademark Office
issued United States Patent No. 6,778,074 (the '074 Patent) after a full and fair
examination.  The '074 Patent is titled "Speed Limit Indicator and Method for
Displaying Speed and the Relevant Speed Limit" and issued to the sole inventor,
Giuseppe A. Cuozzo.  A true and correct copy of the '074 Patent is attached as
Exhibit A.

8.     The '074 Patent is presumed valid and enforceable under 35 U.S.C. §
282.

9.     Since the '074 Patent issued, mobile device manufacturers, software
developers, and GPS navigation system manufacturers, including Defendants
Garmin USA and Garmin International, and automakers, including Chrysler brands
Dodge, Jeep, and FIAT, have recognized the value of Mr. Cuozzo's invention

**Garmin International, Inc.**                    **Exhibit 1014 - 3**

and developed and sold products and services meeting each and every claim element or practicing each and every step of the claims of the '074 Patent.

10.   Garmin International and Garmin USA manufacture, sell, offer to sell, import, and distribute GPS-based navigation systems that provide speed limit warnings to alert drivers that they are exceeding the speed limit.

11.   Chrysler imports, manufactures, sells, offers to sell, and distributes vehicles, including the FIAT 500 with the FIAT Blue&Me navigation system, or Garmin nüvi 3790T or nüvi 3760T GPS-based navigation systems, which warn a driver if he or she is driving over a speed limit.

12.   Chrysler manufactures, sells, and distributes vehicles, including the Jeep Grand Cherokee, Dodge Journey, and Dodge Challenger with the Garmin uConnect system, which alert a driver when he or she exceeds a speed limit.

13.   The uConnect GPS-based navigation system is a product of collaboration between Garmin and Chrysler.

14.   CST owns all right, title, and interest to the '074 Patent, including the exclusive right to enforce the '074 Patent, the exclusive right to license the '074 Patent, and the exclusive right to seek and collect all past and future monetary or injunctive relief for infringement of the '074 Patent.

4

**Garmin International, Inc.**                                                       **Exhibit 1014 - 4**

## INFRINGEMENT OF U.S. PATENT NO. 6,778,074

15.    CST incorporates each of the preceding paragraphs as if fully set forth herein.

16.    Garmin has been and is infringing literally and/or under the doctrine of equivalents, directly, contributorily, or by inducement, the '074 Patent.

17.    Garmin directly infringes, and will continue to infringe, the '074 patent in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale, and/or importing, without authority, products embodying one or more claims of the '074 Patent.

18.    Infringing Garmin products that embody at least claims 1, 2, 6, 9, 10, 11, 12, 13, 18, 19, and 20 of the '074 Patent include, without limitation, the Garmin dezl 560; nuvi 30; nuvi 40; nuvi 50 nuvi 1200 series (excluding the nuvi 1200); nuvi 1300 series (excluding the nuvi 1300) nuvi 1400 series; nuvi 1690; nuvi 2200 series; nuvi 2300 series; nuvi 2400 series; nuvi 2405 series; nuvi 2505 series; nuvi 3400 series; nuvi 3500 series; nuvi 3700 series; LIVE 1695; and LIVE 2300 series.

19.    Chrysler has been and is infringing literally and/or under the doctrine of equivalents, directly, contributorily, or by inducement, the '074 Patent.

20.    Chrysler directly infringes, and will continue to infringe, the '074 patent in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale,

**Garmin International, Inc.**

**Exhibit 1014 - 5**

and/or importing, without authority, products embodying one or more claims of the '074 Patent.

21.    Infringing Chrysler products that embody at least claims 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, 18, 19, and 20 of the '074 Patent include, without limitation, navigation systems in FIAT 500 Sport, 500 Lounge, and 500c Cabrio Lounge vehicles such as the Blue&Me navigation system that includes a "speeding alert" feature that will alert a driver when he or she exceeds the speed limit and FIAT 500 vehicles with Garmin nüvi 3790T or nüvi 3760T GPS-navigation systems.

22.    Infringing Chrysler products that embody at least claims 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, 18, 19, and 20 of the '074 Patent also include, without limitation, the Garmin Uconnect navigation systems installed in Jeep Grand Cherokee, Dodge Journey, and Dodge Challenger vehicles for alerting a driver if he or she is exceeding a speed limit.

23.    Garmin and Chrysler have contributed and continue to contribute to direct infringement of the '074 Patent by others including consumers in violation of 35 U.S.C. § 271(c) by providing Garmin and Chrysler customers navigation systems with speed limit warning features that are not staple articles of commerce suitable for substantial non-infringing use, are specially adapted for an infringing use of the '074 Patent, and embody a material part of the inventions claimed in the '074 Patent. Garmin and Chrysler have had knowledge of the '074 Patent as of the

6

**Garmin International, Inc.**                                                    **Exhibit 1014 - 6**

Case 2:12-cv-08623-CCC-JAD   Document 25   Filed 08/30/12   Page 10 of 16 PageID: 4029

date of service of this lawsuit. Garmin and Chrysler actively induce consumers and others to directly infringe the '074 Patent, in violation of 35 U.S.C. § 271(b), by providing products including those listed above with instructions, user manuals, or technical assistance, actively and directly, assisting, and encouraging infringement of the '074 Patent, and/or by providing navigation systems having a core and common feature leading to third-party infringement of the '074 Patent.

24.     Garmin and Chrysler committed and continue to commit these acts of infringement without license or authorization.

25.     Garmin contributes to infringement by car makers, including Chrysler, which make and sell GPS units that embody at least claims 1 and 10, by providing navigation components (e.g., software, hardware, or firmware) used in the GPS units. For example, Jeep Wranglers include Uconnect systems with "Garmin GPS Navigation" that includes functionality for determining when a vehicle's speed is in violation of a speed limit at a vehicle's location and displaying information related to the violation. *See* http://www.driveuconnect.com/system/2012/jeep/wrangler/touch430nrhb/ viewed August 2, 2012. Garmin provides to Chrysler GPS-based navigation systems having key features including speed limit warning:

Garmin International, Inc.

Exhibit 1014 - 7

> **Uconnect Navigation**
>
> Uconnect Navigation offers customers reliable, seamless use of what has become a necessary technology and Wrangler offers two navigation solutions. Garmin® and Chrysler Group LLC have teamed up to bring consumer-friendly navigation. The Garmin navigation radio is designed with simplicity in mind. With just a glance, you can get visual navigation cues while you stay focused on driving. Key navigation features include Lane Assist and Junction View, speed limit information, map data, including United States, Canada and Mexico, and more than six million points of interest with the intuitive Garmin user interface.

26.     Garmin components in Chrysler's Uconnect system provide a display and warning indicating when vehicle speed exceeds the speed limit. The picture below                          from                          Dodge's                          Website (http://www.dodge.com/en/2012/charger/technology/uconnect/)          shows          the Uconnect system in a Dodge Charger that is traveling at 44 m.p.h. in a 45 m.p.h. speed zone.   If the vehicle speed exceeds the speed limit by an amount the consumer may set, the Uconnect/Garmin system changes the color of the displayed vehicle speed to red.



**Garmin International, Inc.**                                    **Exhibit 1014 - 8**

Case 2:12-cv-00623-CCC-JAD   Document 25   Filed 08/06/12   Page 9 of 16 PageID: 4031

27.    The components constitute material components of the GPS units that include special and generally separable features for determining when a vehicle's speed is in violation of a speed limit at a vehicle's location and displaying information related to the violation as recited in claims 1 and 10 of the '074 patent.

28.    Garmin induces end users to directly infringe by performing each of the steps of claim 20. Garmin provides data accessed by end users to upload current information to a regional speed limit database. Garmin provides data to end user infringers through map purchase and map updates. Garmin advertises these products at its website at http://www8.garmin.com/updatemaps/. Garmin provides for Speed Limit Error Reporting to change an incorrect or nonexistent speed limit. Garmin instructs consumers how to make such database corrections at https://support.garmin.com/support/searchSupport/case.faces?caseId=%7Bc 9512840-ea61-11de-5887-000000000000%7D. Garmin provides GPS units that provide speed limit alerts, and in accordance with claim 20 determine a vehicle's location and speed, obtain a speed limit from the database, compare the vehicle's speed to the speed limit, and generate a tone if the vehicle exceeds the speed limit. The GPS units include components that display which speeds are below the speed limit and which speeds are above the speed limit. Garmin provides instructions and directions to the end users for performing these steps with the GPS units provided by Garmin, with the intent that the end users perform the steps with the

**Garmin International, Inc.**

**Exhibit 1014 - 9**

GPS units.  Garmin provides accused devices with Speed Limit Alert functionality.

Garmin provides instructions, for example on its website, to end users to configure

the devices to play an attention tone when speeding occurs.  See

https://support.garmin.com/support/searchSupport/case.faces?caseId=%7B780629e

0-18d7-11e0-489e-000000000000%7D.

    29.    CST has incurred and will incur attorneys' fees, costs, and expenses in

the prosecution of this action.  As a result of Defendants' infringement, CST has

been damaged in an amount not presently known.

### NOTICE OF REQUIREMENT OF LITIGATION HOLD

    30.    Defendants are hereby notified that they are legally obligated to

locate, preserve, and maintain all records, notes, drawings, documents, data,

communications, materials, electronic recordings, audio/video/photographic

recordings, and digital files, including edited and unedited or "raw" source

material, and other information and tangible things that Defendants know, or

reasonably should know, may be relevant to actual or potential claims,

counterclaims, defenses, and/or damages by any party or potential party in this

lawsuit, whether created or residing in hard copy form or in the form of

electronically stored information (hereafter collectively referred to as "Potential

Evidence").

10

**Garmin International, Inc.**

**Exhibit 1014 - 10**

31.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of Defendants' agents or employees if Defendants' electronically stored information resides there.

32.    Defendants are hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court

11

and/or jury that the Potential Evidence is not favorable to Defendants' claims and/or defenses. To avoid such a result, Defendants' preservation duties include, but are not limited to, the requirement that Defendants immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendants' electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

### PRAYER FOR RELIEF

Cuozzo Speed Technologies LLC requests that judgment be entered in its favor and against Defendants, and that the Court award the following relief:

A.    Judgment that Defendants have infringed one or more claims of the '074 Patent either literally or under the doctrine of equivalents;

B.    Damages pursuant to 35 U.S.C. § 284 sufficient to compensate CST for Defendants' past infringement and any continuing or future infringement and in no event less than a reasonable royalty;

C.    Judgment and order requiring Defendants provide an accounting and pay supplemental damages to CST, including without limitation, pre-judgment and post-judgment interest; and

D.    Any and all other relief to which CST may show itself to be entitled or to which this Court may deem is just and proper.

Garmin International, Inc.

Exhibit 1014 - 12

## DEMAND FOR JURY TRIAL

Cuozzo Speed Technologies LLC demands a trial by jury on all issues so triable.

OF COUNSEL

Cabrach J. Connor
Jason W. Deats
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel: (512) 474-2449
Fax: (512) 474-2622
*cconnor@reedscardino.com*
*jdeats@reedscardino.com*

Ed Goldstein
Alisa Lipski
GOLDSTEIN & LIPSKI PLLC
1177 West Loop South, Suite 400
Houston, TX 77027
Tel: (713) 877-1515
Fax: (713) 877-1145
*egoldstein@gliplaw.com*
*alipski@gliplaw.com*

SCARPONE & VARGO LLC
50 Park Place, Suite 1003
Newark, New Jersey 07102
Tel: (973) 623-4101
Fax: (973) 623-4181
*bvargo@scarponevargo.com*

By: */s/ Bruce D. Vargo*
Bruce D. Vargo

Attorneys for Plaintiff Cuozzo Speed Technologies LLC

Dated: August 20, 2012

13

EXHIBIT F

# SKIERMONT SP PUCKETT LLP

2200 Ross Ave., Suite 4800W
Dallas, TX 75201
www.skiermontpuckett.com

Amy E. LaValle, Partner                                         Tel:  214-978-6600
amy.lavalle@skiermontpuckett.com                               Fax: 214-978-6601

December 6, 2013

**<u>Via Electronic Mail</u>**
Teresa Corbin
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104
tcorbin@fenwick.com

**Re: Rensselaer Polytechnic Institute, et al. v. Apple Inc. (N.D.N.Y. No. 1:13-cv-633)**

Dear Terry:

Further to our November 26 phone conference, we respond to your inquiry regarding Apple's proposed motion for an interim stay of proceedings pending Apple's petition for *inter partes* review.

Plaintiffs may not oppose Apple's motion for an interim stay if Apple agrees to the following conditions:

1. In any district court or appellate litigation (including the present litigation) Apple will not challenge the validity or patentability under 35 U.S.C. §§ 102 or 103 of any claim within U.S. Patent No. 7,177,798 (the '798 patent), using any printed publications or patents beyond those relied upon in its October 21, 2013 Petition for *Inter Parties* Review or its November 6, 2013 Resubmitted Petition for *Inter Partes* Review (together, "Apple's Petition").  This condition applies if the PTAB institutes *inter partes* review for all or less than all of the claims of the '798 patent, and applies if the PTAB does not institute or fully conclude (for any reason) *inter partes* review proceedings of the '798 patent in response to Apple's Petition;

2. Apple will file no further petition for *inter partes* review, nor will it request reexamination of any kind of any claim of the '798 patent, nor will Apple encourage or support, directly or indirectly, any third party filing of any petition for *inter partes* review or request for any other reexamination of any claim of the '798 patent; and

3. If the PTAB institutes *inter partes* review proceedings for any claim in the '798 patent in response to Apple's Petition, Apple will be bound by the PTAB's determinations in those proceedings, and will not seek appellate review of same.



Teresa Corbin
December 6, 2013
Page 2


Please inform us as soon as possible if Apple agrees to the above conditions.


Sincerely,

Amy E. LaValle

# EXHIBIT G

**Jennifer Westin**

| | |
|---|---|
| **From:** | Teresa Corbin <tcorbin@fenwick.com> |
| **Sent:** | Friday, December 06, 2013 6:09 PM |
| **To:** | Amy LaValle; David Lacy Kusters |
| **Cc:** | Muldoon JFWD; nm hrfmlaw; Paul Skiermont; Don Tiller; Alex Gasser; Jennifer Westin |
| **Subject:** | RE: Dynamic Advances meet and confer request |

Dear Amy, I am responding to your correspondence today regarding Apple's motion for stay.  The conditions you propose for not opposing Apple's request for an interim stay are not acceptable.  The patent statute provisions governing *inter partes* review ("IPR") proceedings define the scope of estoppel that applies to related civil actions.  35 U.S.C. Section 315(e)(2).  The conditions you propose are far broader and are not justified.

As I related during our meet and confer, Apple has to date and will continue to proceed with all discovery and other activities scheduled in the case, including upcoming depositions. The PTO will have until April to make a determination to institute the IPR.  As you know, there will be ongoing depositions and claim construction activity during this period.  Our aim was to provide prompt notice to the Court of our IPR petition and to provide your clients an opportunity to consider an interim stay so that our clients' and the Court's resources would not be spent unnecessarily.  We intend to promptly seek leave of Court to file our motion to stay.

Sincerely, Terry

**From:** Amy LaValle [mailto:amy.lavalle@skiermontpuckett.com]
**Sent:** Friday, December 06, 2013 10:23 AM
**To:** Teresa Corbin; David Lacy Kusters
**Cc:** Muldoon JFWD; nm hrfmlaw; Paul Skiermont; Don Tiller; Alex Gasser; Jennifer Westin
**Subject:** RE: Dynamic Advances meet and confer request

Terry,

Please see the attached letter.  Please let us know if you have any questions.

Thanks,

Amy

**From:** Teresa Corbin [mailto:tcorbin@fenwick.com]
**Sent:** Tuesday, December 03, 2013 10:02 AM
**To:** Teresa Corbin; Amy LaValle; David Lacy Kusters
**Cc:** Muldoon JFWD; nm hrfmlaw; Paul Skiermont; Don Tiller; Alex Gasser; Jennifer Westin
**Subject:** RE: Dynamic Advances meet and confer request

Hi Amy, I am checking in with you regarding your clients' response to our motion to stay.  We would like to file our letter with the Court this week.  Thank you, Terry

**From:** Teresa Corbin
**Sent:** Monday, November 25, 2013 3:07 PM
**To:** 'Amy LaValle'; David Lacy Kusters

**Cc:** Muldoon JFWD; nm hrfmlaw; Paul Skiermont; Don Tiller; Alex Gasser; Jennifer Westin
**Subject:** RE: Dynamic Advances meet and confer request

Hi Amy, We can use this number. Best regards, Terry

1-800-236-9601
Access Code: 8752303

---

**From:** Amy LaValle [mailto:amy.lavalle@skiermontpuckett.com]
**Sent:** Monday, November 25, 2013 3:04 PM
**To:** Teresa Corbin
**Cc:** Muldoon JFWD; nm hrfmlaw; Paul Skiermont; Don Tiller; Alex Gasser; Jennifer Westin
**Subject:** RE: Dynamic Advances meet and confer request

Terry,

We are available for a call at 11:00 a.m. Pacific (2:00 p.m. Eastern) tomorrow.  Can you send a dial-in number?

Thanks,

Amy

_____
Amy E. LaValle | SKIERMONT PUCKETT LLP
2200 Ross Ave., Suite 4800W, Dallas, Texas 75201
P: 214.978.6600 F: 214.978.6601
www.skiermontpuckett.com

This message is the property of SKIERMONT PUCKETT LLP and may contain privileged information or attorney work product.  If this message has been delivered to you by mistake, then do not copy or deliver this message to anyone.  Instead, destroy it and notify me by reply e-mail.

---

**From:** Teresa Corbin [mailto:tcorbin@fenwick.com]
**Sent:** Monday, November 25, 2013 3:27 PM
**To:** Don Tiller
**Cc:** David Lacy Kusters
**Subject:** Dynamic Advances meet and confer request

Hi Don, I would like to set up a telephone conference to confer about Apple's intention to file a motion to stay pending the inter partes review of the '798 patent.  My preference would be to hold the call at 11:00 or 1:00 tomorrow (Pacific).  Would either of those times work for you? Let me know.  If those times do not work, please let me know what time tomorrow would work for you. Thank you, Terry

---------------------------------------------
IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
---------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is

strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT H

## Jennifer Westin

| | |
|---|---|
| **From:** | Don Tiller |
| **Sent:** | Friday, June 21, 2013 1:43 PM |
| **To:** | Leslie Kramer |
| **Cc:** | David Lacy Kusters; Amy LaValle; Paul Skiermont |
| **Subject:** | RE: Dynamic Advances v. Apple |

Hi Leslie:

I have a few additions and clarifications:

I proposed a way to move forward with discovery from RPI in the second case: consolidate the two cases, immediately have our 26(f) conference in the second case, agree to entry of the current protective and e-discovery orders in the second case, agree to adopt the current discovery (including the patent-rule discovery) in the second case, and agree to adopt the current case schedule in the second case, perhaps with a two-month continuance so that Apple has a reasonable time to seek additional discovery from RPI, if Apple so chooses. You declined.

I stated that if Apple wishes to move to dismiss Dynamic Advances as improperly joined in the second case, it should do so in the second case under Rule 21, not waste the court's and the parties' time by bringing a Rule 12 motion in the first case. I stated that there was no conceivable proper purpose for bringing a Rule 12 motion in the first case. You did not articulate or defend the purpose of the Rule 12 motion.

Note also that RPI's reasonable inquiry has resulted in a substantial production, including many documents falling into the categories you list below:

HSU 0000001 – 0000593.
DA 0002376 – 0003818.
DA 0005077 – 0009002.

With respect to the relevance of the information you claim to need for claim construction, I stated that to the extent it has any marginal relevance to claim construction, it is cumulative of the produced documents and publicly available information concerning Dr. Hsu's research. The marginal relevance does not justify further delay of the litigation.

Regards,

Don

**Don Tiller | SKIERMONT PUCKETT LLP**
2200 Ross Ave., Suite 4800W, Dallas, Texas 75201
Office: 214.978.6611 | Mobile: 817.875.7052 | Fax: 214.978.6601
www.skiermontpuckett.com

**From:** Leslie Kramer [mailto:lkramer@fenwick.com]
**Sent:** Thursday, June 20, 2013 3:54 PM
**To:** Don Tiller
**Cc:** David Lacy Kusters; Amy LaValle
**Subject:** RE: Dynamic Advances v. Apple

Hi Don,

I am writing to memorialize our conversation from this afternoon's meet and confer on RPI's discovery.

David and I noted that with claim construction currently stayed (apart from the JCCS), we would like to find a way to move forward with getting discovery from RPI, who is now a party to the second case. To that end, I identified categories of documents that we believe are relevant to claim construction that have not been produced pursuant to the subpoena.

You stated that RPI believes its current document search was reasonable and that it has no other obligations under the subpoena. You stated that RPI would not conduct any search of its servers or email for responsive documents, beyond what it has already advised Apple that it has done. Moreover, you believe the documents that Apple is seeking are, at best, marginally relevant to claim construction. DA's position is that if Apple wants additional discovery, including the categories of documents identified in my earlier emails, it should conduct a Rule 26(f) conference, enter a protective order/ESI order, and serve formal party discovery in the second case.

Please let me know if you disagree with my recollection of the call.

Best,
Leslie

Fenwick
**FENWICK & WEST LLP**

**LESLIE KRAMER**
Fenwick & West LLP
Associate, Litigation Group

☎ (415) 875-2396
📠 (415) 281-1350
✉ lkramer@fenwick.com

---

**From:** Leslie Kramer
**Sent:** Thursday, June 20, 2013 12:33 PM
**To:** 'Don Tiller'
**Cc:** David Lacy Kusters; 'Amy LaValle'
**Subject:** RE: Dynamic Advances v. Apple

Hi Don,

Here are some additional categories of documents:

- Documents, including relevant email communications, from David Levermore relating to the invention.
- IP disclosure forms submitted by the inventors or David Levermore relating to natural language processing
- The file from the Office of Contracts and Grants (to the extent this is different from the Office of Technology Transfer and Commercialization) relating to this invention.
- Documents relating to conferences or presentations about natural language processing, including any presentations by the inventors.
- Documents submitted in support of any research grant relating to natural language processing (including grants other than the NSF grant)
- Research reports and other periodic reports provided in relationship to research grants (including grants other than the NSF grant)

Although not tied to claim construction, we will also be seeking additional documents, including email, relating to licensing of the patent to a non-practicing entity.

---

**From:** Leslie Kramer
**Sent:** Thursday, June 20, 2013 11:40 AM
**To:** 'Don Tiller'
**Cc:** David Lacy Kusters; Amy LaValle
**Subject:** RE: Dynamic Advances v. Apple

Thanks Don.  We will call you at 1.

Now that RPI is a party to the second case it needs to conduct a thorough and reasonable search for all available documents – not the far more limited search it conducted when it was a third party.  In general, I'd like to reach an agreement about how to proceed, so that the case can move forward.  If RPI is waiting for formal discovery requests in the second case before it will agree to expand its search for documents, that is something Apple would like to know.  Apple cannot serve its discovery requests at this time since we have not responded to the complaint or conducted a Rule 26(f) conference.  Nonetheless, we want to be clear about the documents we need for claim construction, which include:

- Documents, including relevant email communications, from Dr. Hsu.  RPI has taken the position that it will not search these documents because Dr. Hsu has conducted his own search.  Now that RPI is a party to the case and arguments are to burden are largely irrelevant, this is not sufficient.

- Documents, including relevant email communications, from Dr. Boonjing, including all documents about his doctoral thesis and any system that came out of the thesis.  As you know, to date, Dr. Boonjing has produced four documents, so it is important that RPI conduct a thorough search for any documents in RPI's possession, custody, and control.

- The NSF grant proposal that formed the basis of the provisional application

- Anything related to that grant proposal

- Anything about the grant (if one was awarded)

- Anything related to any system that came out of the grant

- Anything about RPI receiving any funding from the NSF

It would also be helpful if you would identify the Bates numbers for the documents provided to Dynamic Advances from RPI, so that we can better understand the scope of their search.

Talk to you soon,
Leslie

---

**From:** Don Tiller [mailto:don.tiller@skiermontpuckett.com]
**Sent:** Thursday, June 20, 2013 11:24 AM
**To:** Leslie Kramer
**Cc:** David Lacy Kusters; Amy LaValle
**Subject:** RE: Dynamic Advances v. Apple

Leslie,

Feel free to call me between 12 and 2. I will be in the office.

The discussion will be more productive if you can give me the categories of documents that you want for claim-construction purposes.

Don

**Don Tiller | Skiermont Puckett LLP**
2200 Ross Ave., Suite 4800W, Dallas, Texas 75201
Office: 214.978.6611 | Mobile: 817.875.7052 | Fax: 214.978.6601
www.skiermontpuckett.com

---

**From:** Leslie Kramer [mailto:lkramer@fenwick.com]
**Sent:** Wednesday, June 19, 2013 4:44 PM
**To:** Don Tiller
**Cc:** David Lacy Kusters; Amy LaValle
**Subject:** RE: Dynamic Advances v. Apple

Sorry for the delay Don. We are free tomorrow between 12-2 Pacific, and Monday afternoon generally.  What works best for you?  Feel free to loop Nick in, if that is what RPI would like.

I will be in touch regarding categories of documents relating to claim construction in advance of the call.

---

**From:** Don Tiller [mailto:don.tiller@skiermontpuckett.com]
**Sent:** Wednesday, June 19, 2013 10:43 AM
**To:** Leslie Kramer
**Cc:** David Lacy Kusters; Amy LaValle
**Subject:** RE: Dynamic Advances v. Apple

Leslie:

Let me know when you would like to meet so I can set aside the time, and get Nick involved if necessary.

**Don Tiller | Skiermont Puckett LLP**
2200 Ross Ave., Suite 4800W, Dallas, Texas 75201
Office: 214.978.6611 | Mobile: 817.875.7052 | Fax: 214.978.6601
www.skiermontpuckett.com

---

**From:** Don Tiller
**Sent:** Monday, June 17, 2013 6:35 PM
**To:** 'Leslie Kramer'
**Cc:** David Lacy Kusters; Amy LaValle
**Subject:** RE: Dynamic Advances v. Apple

Hi Leslie,

Welcome back from vacation.

I am available this week to discuss. We may need to rope in Nick Mesiti as he represents RPI in responding to the subpoenas.

Can you give me a list of categories of documents that you think are necessary (or even relevant) to claim construction that haven't already been discussed in the context of the subpoenas? I think Theis Finlev was handling the subpoena discussions from your end.

**Don Tiller | SKIERMONT PUCKETT LLP**
2200 Ross Ave., Suite 4800W, Dallas, Texas 75201
Office: 214.978.6611 | Mobile: 817.875.7052 | Fax: 214.978.6601
www.skiermontpuckett.com

---

**From:** Leslie Kramer [mailto:lkramer@fenwick.com]
**Sent:** Monday, June 17, 2013 6:26 PM
**To:** Don Tiller
**Cc:** David Lacy Kusters
**Subject:** Dynamic Advances v. Apple

Hi Don,
I'd like to discuss how best to proceed with getting documents from RPI so that we can move forward with claim construction.

Are you available for a short call later this week?  I'm generally available Wednesday and Thursday.

Thanks,
Leslie

Fenwick
FENWICK & WEST LLP

**LESLIE KRAMER**
Fenwick & West LLP
Associate, Litigation Group
☎ (415) 875-2396
📠 (415) 281-1350
✉ lkramer@fenwick.com

---------------------------------------------
IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
---------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT I

SCHEDO

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:12-cv-03623-CCC-JAD

| | |
|---|---|
| CUOZZO SPEED TECHNOLOGIES LLC v. GARMIN INTERNATIONAL INC. et al | Date Filed: 06/15/2012 |
| | Jury Demand: Both |
| Assigned to: Judge Claire C. Cecchi | Nature of Suit: 830 Patent |
| Referred to: Magistrate Judge Joseph A. Dickson | Jurisdiction: Federal Question |
| Cause: 35:271 Patent Infringement | |

**Plaintiff**

| | | |
|---|---|---|
| **CUOZZO SPEED TECHNOLOGIES LLC** | represented by | **BRUCE DANIEL VARGO** |
| | | SCARPONE & VARGO LLC |
| | | 50 PARK PLACE |
| | | SUITE 1003 |
| | | NEWARK, NJ 07102 |
| | | 973-623-4101 |
| | | Email: bvargo@scarponevargo.com |
| | | *TERMINATED: 11/04/2013* |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **LAWRENCE C. HERSH** |
| | | 17 SYLVAN STREET |
| | | SUITE 102B |
| | | RUTHERFORD, NJ 07070 |
| | | (201) 507-6300 |
| | | Email: lh@hershlegal.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **GARMIN INTERNATIONAL INC.** | represented by | **LEDA DUNN WETTRE** |
| | | ROBINSON, WETTRE & MILLER LLC |
| | | ONE NEWARK CENTER |
| | | 19th FLOOR |
| | | NEWARK, NJ 07102 |
| | | (973) 690-5400 |
| | | Fax: (973) 466-2760 |
| | | Email: lwettre@rwmlegal.com |
| | | *LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*

**MICHAEL JAMES GESUALDO**
ROBINSON WETTRE & MILLER LLC
ONE NEWARK CENTER
19TH FLOOR
NEWARK, NJ 07102
973-690-5400
Email: mgesualdo@rwmlegal.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**GARMIN USA, INC.**      represented by    **LEDA DUNN WETTRE**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MICHAEL JAMES GESUALDO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRYSLER GROUP LLC**      represented by    **LIZA M. WALSH**
CONNELL FOLEY, LLP
85 LIVINGSTON AVENUE
ROSELAND, NJ 07068
(973) 535-0500
Email: lwalsh@connellfoley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**HECTOR DANIEL RUIZ**
CONNEL FOLEY, LLP
85 LIVINGSTON AVENUE
ROSELAND, NJ 07068
(973) 535-0500
Email: hruiz@connellfoley.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/15/2012 | 1 | COMPLAINT against CHRYSLER GROUP LLC, GARMIN INTERNATIONAL INC., GARMIN USA, INC. ( Filing fee $ 350 receipt number 4407092) with JURY DEMAND, filed by CUOZZO SPEED TECHNOLOGIES LLC. (Attachments: # 1 Certification -Local Rule 11.2, # 2 Supplement Form AO 120, # 3 Civil Cover Sheet)(ld, ) (Entered: 06/19/2012) |

| | | |
|---|---|---|
| 06/15/2012 | 2 | Corporate Disclosure Statement by CUOZZO SPEED TECHNOLOGIES LLC identifying NONE as Corporate Parent.. (ld, ) (Entered: 06/19/2012) |
| 06/15/2012 | 3 | AO120 Patent/Trademark Form filed. (ld, ) (Entered: 06/19/2012) |
| 06/19/2012 | 4 | SUMMONS ISSUED as to CHRYSLER GROUP LLC, GARMIN INTERNATIONAL INC., GARMIN USA, INC. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. Issued By *LEROY DUNBAR* (ld, ) (Entered: 06/19/2012) |
| 07/05/2012 | 5 | SUMMONS Returned Executed by CUOZZO SPEED TECHNOLOGIES LLC. GARMIN USA, INC. served on 6/28/2012, answer due 7/19/2012. (VARGO, BRUCE) (Entered: 07/05/2012) |
| 07/05/2012 | 6 | SUMMONS Returned Executed by CUOZZO SPEED TECHNOLOGIES LLC. CHRYSLER GROUP LLC served on 6/28/2012, answer due 7/19/2012. (VARGO, BRUCE) (Entered: 07/05/2012) |
| 07/05/2012 | 7 | CERTIFICATE OF SERVICE by CUOZZO SPEED TECHNOLOGIES LLC *Summons and Complaint served upon Defendant Garmin International, Inc. via Certified Mail* (VARGO, BRUCE) (Entered: 07/05/2012) |
| 07/13/2012 | 8 | MOTION to Dismiss *Plaintiff's Claims For Indirect Patent Infringement* by GARMIN INTERNATIONAL INC., GARMIN USA, INC.. Responses due by 7/23/2012 (Attachments: # 1 Brief In Support of Garmin's Motion to Dismiss Plaintiff's Claims For Indirect Patent Infringement, # 2 Declaration of Ajay Sharma In Support of Garmin's Motion to Dismiss Plaintiff's Claims For Indirect Patent Infringement, # 3 Exhibit A to Sharma Declaration, # 4 Exhibit B to Sharma Declaration, # 5 Exhibit C to Sharma Declaration, # 6 Exhibit D to Sharma Declaration, # 7 Text of Proposed Order) (WETTRE, LEDA) (Entered: 07/13/2012) |
| 07/13/2012 | 9 | Corporate Disclosure Statement by GARMIN INTERNATIONAL INC., GARMIN USA, INC.. (WETTRE, LEDA) (Entered: 07/13/2012) |
| 07/13/2012 | | Set Deadlines as to 8 MOTION to Dismiss *Plaintiff's Claims For Indirect Patent Infringement*. Motion set for 8/6/2012 before Judge Claire C. Cecchi. The motion will be decided on the papers. No appearances required unless notified by the court. (dc, ) (Entered: 07/16/2012) |
| 07/16/2012 | 10 | ANSWER to Complaint with JURY DEMAND by GARMIN INTERNATIONAL INC., GARMIN USA, INC..(WETTRE, LEDA) (Entered: 07/16/2012) |
| 07/19/2012 | 11 | Letter from Liza M. Walsh, Esq. to the Honorable Joseph A. Dickson, U.S.M.J.. (Attachments: # 1 Stipulation and Proposed Order)(WALSH, LIZA) (Entered: 07/19/2012) |
| 07/20/2012 | 12 | Letter from Leda Dunn Wettre, Esq. to Judge Dickson. (Attachments: # 1 Declaration of Leda Dunn Wettre, Esq. In Support of Admissions Pro Hac Vice, # 2 Declaration of Eric A. Buresh In Support of Admission Pro Hac Vice, # 3 Declaration of Jason R. Mudd In Support of Admission Pro Hac Vice, # 4 Declaration of Ajay A. Sharma In Support of Admission Pro Hac Vice, # 5 Text of Proposed Order)(WETTRE, LEDA) (Entered: 07/20/2012) |

| 07/23/2012 | 13 | ORDER resetting deadlines as to 8 MOTION to Dismiss *Plaintiff's Claims For Indirect Patent Infringement*.( Motion set for 8/20/2012 before Judge Claire C. Cecchi. The motion will be decided on the papers. No appearances required unless notified by the court.), etc., Signed by Judge Claire C. Cecchi on 7/23/12. (dc, ) (Entered: 07/23/2012) |
| --- | --- | --- |
| 07/23/2012 | 14 | STIPULATION AND ORDER extending Deft. Chrysler Group LLC's time to answer until 8/18/12. Signed by Magistrate Judge Joseph A. Dickson on 7/23/12. (dc, ) (Entered: 07/23/2012) |
| 07/23/2012 | | Answer Due Deadline Update - The document 14 Stipulation and Order submitted by CHRYSLER GROUP LLC has been GRANTED. The answer due date has been set for 8/18/12. (dc, ) (Entered: 07/23/2012) |
| 07/24/2012 | 15 | NOTICE of Appearance by LIZA M. WALSH on behalf of CHRYSLER GROUP LLC (WALSH, LIZA) (Entered: 07/24/2012) |
| 07/24/2012 | 16 | NOTICE of Appearance by HECTOR DANIEL RUIZ on behalf of CHRYSLER GROUP LLC (RUIZ, HECTOR) (Entered: 07/24/2012) |
| 07/25/2012 | 17 | MOTION for Leave to Appear Pro Hac Vice by CUOZZO SPEED TECHNOLOGIES LLC. (Attachments: # 1 Certification of Bruce D. Vargo, Esq., # 2 Certification of Edward W. Goldstein, Esq., # 3 Certification of Cabrach J. Connor, Esq., # 4 Certification of Jason W. Deats, Esq., # 5 Text of Proposed Order)(VARGO, BRUCE) (Entered: 07/25/2012) |
| 07/25/2012 | | Set Deadlines as to 17 MOTION for Leave to Appear Pro Hac Vice . Motion set for 8/20/2012 before Judge Claire C. Cecchi. The motion will be decided on the papers. No appearances required unless notified by the court. (dc, ) (Entered: 07/26/2012) |
| 07/30/2012 | 18 | CONSENT ORDER FOR ADMISSION PRO HAC VICE OF ERIC A. BURESH, ESQ., JASON R. MUDD, ESQ., AND AJAY A. SHARMA, ESQ.. Signed by Magistrate Judge Joseph A. Dickson on 7/30/12. (dc, ) (Entered: 07/30/2012) |
| 07/30/2012 | 19 | ORDER granting 17 Motion for Leave to Appear Pro Hac Vice for Edward W. Goldstein, Esq. Signed by Magistrate Judge Joseph A. Dickson on 7/30/12. (dc, ) (Entered: 07/30/2012) |
| 07/31/2012 | 20 | NOTICE of Appearance by MICHAEL JAMES GESUALDO on behalf of GARMIN INTERNATIONAL INC., GARMIN USA, INC. (GESUALDO, MICHAEL) (Entered: 07/31/2012) |
| 07/31/2012 | 21 | Notice of Request by Pro Hac Vice Jason R. Mudd, Esq. to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-4492255.) (WETTRE, LEDA) (Entered: 07/31/2012) |
| 07/31/2012 | 22 | Notice of Request by Pro Hac Vice Eric A. Buresh, Esq. to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-4492309.) (WETTRE, LEDA) (Entered: 07/31/2012) |
| 07/31/2012 | 23 | Notice of Request by Pro Hac Vice Ajay A. Sharma, Esq. to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-4492371.) (WETTRE, LEDA) (Entered: 07/31/2012) |

| 08/02/2012 | 24 | MOTION for Leave to Appear Pro Hac Vice by CHRYSLER GROUP LLC. (Attachments: # 1 Statement in Lieu of Brief, # 2 Certification of Frank C. Cimino, Jr., # 3 Certification of Thomas D. Anderson, # 4 Supporting Certification of Liza M. Walsh, # 5 Text of Proposed Order, # 6 Certificate of Service, # 7 Cover Letter) (WALSH, LIZA) (Entered: 08/02/2012) |
| 08/02/2012 | | Set Deadlines as to 24 MOTION for Leave to Appear Pro Hac Vice . Motion set for 9/4/2012 before Judge Claire C. Cecchi. The motion will be decided on the papers. No appearances required unless notified by the court. (dc, ) (Entered: 08/03/2012) |
| 08/06/2012 | 25 | ORDER granting 24 Motion for Leave to Appear Pro Hac Vice for Frank C. Cimino, Jr. and Thomas D. Anderson. Signed by Magistrate Judge Joseph A. Dickson on 8/6/12. (dc, ) (Entered: 08/06/2012) |
| 08/06/2012 | 26 | MEMORANDUM in Opposition filed by CUOZZO SPEED TECHNOLOGIES LLC re 8 MOTION to Dismiss *Plaintiff's Claims For Indirect Patent Infringement* (Attachments: # 1 Declaration of Cabrach J. Connor In Opposition to Garmin Motion to Dismiss and In Support of Plaintiff's Cross-Motion for Leave to Amend Complaint, # 2 Certificate of Service)(VARGO, BRUCE) (Entered: 08/06/2012) |
| 08/06/2012 | 27 | Cross MOTION for Leave to File *Amended Complaint* by CUOZZO SPEED TECHNOLOGIES LLC. (Attachments: # 1 Brief in Opposition to Garmin Motion to Dismiss and In Support of Plaintiff's Motion for Leave to Amend Complaint, # 2 Declaration of Cabrach J. Connor In Opposition to Garmin Motion to Dismiss and In Support of Plaintiff's Motion for Leave to Amend, # 3 Text of Proposed Order, # 4 Certificate of Service)(VARGO, BRUCE) (Entered: 08/06/2012) |
| 08/06/2012 | | Set Deadlines as to 27 Cross MOTION for Leave to File *Amended Complaint*. Motion set for 8/20/2012 before Judge Claire C. Cecchi. The motion will be decided on the papers. No appearances required unless notified by the court. (dc, ) (Entered: 08/08/2012) |
| 08/09/2012 | 28 | Notice of Request by Pro Hac Vice Frank C. Cimino, Jr. to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-4513161.) (WALSH, LIZA) (Entered: 08/09/2012) |
| 08/09/2012 | 29 | Notice of Request by Pro Hac Vice Thomas D. Anderson to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-4513169.) (WALSH, LIZA) (Entered: 08/09/2012) |
| 08/13/2012 | | Pro Hac Vice fee: $ 150, receipt number NEW014327 for Edward W. Goldstein. (dc, ) (Entered: 08/13/2012) |
| 08/15/2012 | 30 | STIPULATION *and Order on Plaintiff's Leave to File First Amended Complaint and Garmin Defendants' Withdrawal of their Motion to Dismiss* by CUOZZO SPEED TECHNOLOGIES LLC. (Attachments: # 1 Stipulation and proposed order)(VARGO, BRUCE) (Entered: 08/15/2012) |
| 08/17/2012 | | Pro Hac Vice fee: $ 300, receipt number TRE024679 for Cabrach J. Connor and Jason W. Deats. (dc, ) (Entered: 08/17/2012) |

| | | |
|---|---|---|
| 08/20/2012 | 31 | Notice of Request by Pro Hac Vice Edward W. Goldstein, Esq. to receive Notices of Electronic Filings. (VARGO, BRUCE) (Entered: 08/20/2012) |
| 08/20/2012 | 32 | Notice of Request by Pro Hac Vice Cabrach J. Connor, Esq. to receive Notices of Electronic Filings. (VARGO, BRUCE) (Entered: 08/20/2012) |
| 08/20/2012 | 33 | Notice of Request by Pro Hac Vice Jason W. Deats, Esq. to receive Notices of Electronic Filings. (VARGO, BRUCE) (Entered: 08/20/2012) |
| 08/20/2012 | 34 | STIPULATION AND ORDER ON PLAINTIFF'S LEAVE TO FILE FIRST AMENDED COMPLAINT AND DEFENDANT'S WITHDRAWAL OF THEIR MOTION TO DISMISS re 8 Motion to Dismiss; 27 Motion for Leave to File Amended Complaint. Signed by Judge Claire C. Cecchi on 8/20/12. (dc, ) (Entered: 08/20/2012) |
| 08/20/2012 | 35 | AMENDED COMPLAINT against CHRYSLER GROUP LLC, GARMIN INTERNATIONAL INC., GARMIN USA, INC., filed by CUOZZO SPEED TECHNOLOGIES LLC.(VARGO, BRUCE) (Entered: 08/20/2012) |
| 08/22/2012 | 36 | Letter from Leda Dunn Wettre, Esq. to Judge Cecchi. (WETTRE, LEDA) (Entered: 08/22/2012) |
| 08/31/2012 | 37 | *Garmin's* ANSWER to Amended Complaint *For Patent Infringement* by GARMIN INTERNATIONAL INC., GARMIN USA, INC..(WETTRE, LEDA) (Entered: 08/31/2012) |
| 09/06/2012 | 38 | ANSWER to Amended Complaint by CHRYSLER GROUP LLC.(WALSH, LIZA) (Entered: 09/06/2012) |
| 09/06/2012 | 39 | Corporate Disclosure Statement by CHRYSLER GROUP LLC. (WALSH, LIZA) (Entered: 09/06/2012) |
| 09/11/2012 | 40 | TEXT ORDER: In person Status/Scheduling Conference set for 10/9/2012 03:00 PM in Newark - Courtroom 2D before Magistrate Judge Joseph A. Dickson.SO ORDERED by Magistrate Judge Joseph A. Dickson on 9/11/12. (nm, ) (Entered: 09/11/2012) |
| 10/03/2012 | 41 | Letter from Leda Dunn Wettre, Esq. to Judge Dickson. (Attachments: # 1 Exhibit A to Letter to Judge Dickson)(WETTRE, LEDA) (Entered: 10/03/2012) |
| 10/04/2012 | 42 | Letter from Bruce D. Vargo to Magistrate Judge Dickson re 41 Letter. (VARGO, BRUCE) (Entered: 10/04/2012) |
| 10/05/2012 | 43 | TEXT ORDER: Defendant's request to adjourn the in person status conference set for 10/9/12 is DENIED. The conference will go forward on 10/9/12 at 3:00 p.m. SO ORDERED by Magistrate Judge Joseph A. Dickson on 10/5/12. (nm, ) (Entered: 10/05/2012) |
| 10/05/2012 | 44 | MOTION for Leave to Appear Pro Hac Vice by CHRYSLER GROUP LLC. (Attachments: # 1 Statement in Lieu of Brief, # 2 Certification of Megan S. Woodworth, # 3 Supporting Certification of Liza M. Walsh, # 4 Text of Proposed Order, # 5 Certificate of Service, # 6 Cover Letter)(WALSH, LIZA) (Entered: 10/05/2012) |
| 10/05/2012 | 45 | Letter from Bruce Vargo Esq. to Magistrate Dickson. (VARGO, BRUCE) (Entered: 10/05/2012) |

| 10/09/2012 | 46 | Joint Discovery Plan by CUOZZO SPEED TECHNOLOGIES LLC.(VARGO, BRUCE) (Entered: 10/09/2012) |
| 10/09/2012 | 47 | ORDER granting 44 Motion for Leave to Appear Pro Hac Vice for Megan S. Woodworth. Signed by Magistrate Judge Joseph A. Dickson on 10/9/12. (dc, ) (Entered: 10/09/2012) |
| 10/09/2012 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Dickson: Status Conference held on 10/9/2012. Order to be submitted. (CD #ECR.) (nm, ) (Entered: 10/10/2012) |
| 10/12/2012 | 48 | Transcript of Proceedings held on 10/09/2012, before Judge JOSEPH A. DICKSON. Court Reporter/Transcriber KLJ TRANSCRIPTION SERVICES/TERRY L. DEMARCO ((201) 703-1670). Tape Number: RULE 16 CONFERENCE. **NOTICE REGARDING REDACTION OF TRANSCRIPTS:** The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this Transcript. Redaction Request due 11/2/2012. Redacted Transcript Deadline set for 11/13/2012. Release of Transcript Restriction set for 1/10/2013. (ma) (Entered: 10/12/2012) |
| 10/17/2012 | 49 | MOTION for Leave to Appear Pro Hac Vice by CUOZZO SPEED TECHNOLOGIES LLC. (Attachments: # 1 Certification of Bruce D. Vargo, Esq., # 2 Certification of David A. Skeels, Esq., # 3 Certification of Dave R. Gunter, Esq., # 4 Certification of Todd I. Blumenfeld, Esq., # 5 Text of Proposed Order)(VARGO, BRUCE) (Entered: 10/17/2012) |
| 10/17/2012 | | Set Deadlines as to 49 MOTION for Leave to Appear Pro Hac Vice . Motion set for 11/19/2012 before Judge Claire C. Cecchi. The motion will be decided on the papers. No appearances required unless notified by the court. (dc, ) (Entered: 10/18/2012) |
| 10/19/2012 | 50 | Amended MOTION for Leave to Appear Pro Hac Vice by CUOZZO SPEED TECHNOLOGIES LLC. (Attachments: # 1 Certification of Bruce D. Vargo, Esq., # 2 Certification of David A. Skeels, Esq., # 3 Text of Proposed Order)(VARGO, BRUCE) (Entered: 10/19/2012) |
| 10/19/2012 | | Set Deadlines as to 50 Amended MOTION for Leave to Appear Pro Hac Vice . Motion set for 11/19/2012 before Judge Claire C. Cecchi. The motion will be decided on the papers. No appearances required unless notified by the court. (dc, ) (Entered: 10/19/2012) |
| 10/19/2012 | 51 | Notice of Request by Pro Hac Vice Megan S. Woodworth to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 0312-4637522.) (WALSH, LIZA) (Entered: 10/19/2012) |
| 10/23/2012 | 52 | ORDER granting 50 Motion for Leave to Appear Pro Hac Vice for David A. Skeels, Esq. Signed by Magistrate Judge Joseph A. Dickson on 10/22/12. (dc, ) (Entered: 10/23/2012) |
| 10/23/2012 | 53 | Letter from Bruce Vargo, Esq. to Hon. Joseph A. Dickson. (VARGO, BRUCE) (Entered: 10/23/2012) |

| 11/07/2012 | 54 | Letter from Leda Dunn Wettre, Esq. to Judge Dickson. (WETTRE, LEDA) (Entered: 11/07/2012) |
| 11/07/2012 | 55 | Letter from Liza M. Walsh, Esq. to the Honorable Joseph A. Dickson, U.S.M.J.. (WALSH, LIZA) (Entered: 11/07/2012) |
| 11/07/2012 | | Pro Hac Vice fee: $ 150, receipt number NEW015112 for David A. Skeels, Esq. (dc, ) (Entered: 11/09/2012) |
| 11/09/2012 | 56 | Notice of Request by Pro Hac Vice David A. Skeels, Esq. to receive Notices of Electronic Filings. (VARGO, BRUCE) (Entered: 11/09/2012) |
| 11/15/2012 | 57 | Letter from Bruce D. Vargo, Esq. to Hon. Joseph A. Dickson re 54 Letter, 55 Letter. (VARGO, BRUCE) (Entered: 11/15/2012) |
| 11/16/2012 | 58 | Letter from Bruce D. Vargo, Esq. to Hon. Joseph A. Dickson, U.S.M.J.. (Attachments: # 1 Text of Proposed Order, # 2 Certification of Cabrach J. Connor, Esq.)(VARGO, BRUCE) (Entered: 11/16/2012) |
| 02/08/2013 | 59 | Letter from Leda Dunn Wettre, Esq. to Judge Dickson. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(WETTRE, LEDA) (Entered: 02/08/2013) |
| 04/26/2013 | 60 | Letter from Plaintiff and Defendant Garmin, jointly, to Hon. Joseph A. Dickson re 59 Letter. (VARGO, BRUCE) (Entered: 04/26/2013) |
| 06/17/2013 | 61 | TEXT ORDER: The parties are advised that an in person Status Conference is set for 8/1/2013 10:00 AM in Newark - Courtroom 2D before Magistrate Judge Joseph A. Dickson. A case status letter from all parties regarding all outstanding unresolved issues is to be e-filed with the Court by 7/26/13. SO ORDERED by Magistrate Judge Joseph A. Dickson on 6/17/13. (nm, ) (Entered: 06/17/2013) |
| 07/17/2013 | 62 | ORDER granting Plaintiff's lead counsel to attend the 8/1/13 10:00 AM conference via telephone. Signed by Magistrate Judge Joseph A. Dickson on 7/17/13. (gmd, ) (Entered: 07/18/2013) |
| 07/23/2013 | 63 | Notice of Request by Pro Hac Vice Cabrach J. Connor, Esq. to receive Notices of Electronic Filings. (VARGO, BRUCE) (Entered: 07/23/2013) |
| 07/26/2013 | 64 | STATUS REPORT by CUOZZO SPEED TECHNOLOGIES LLC. (VARGO, BRUCE) (Entered: 07/26/2013) |
| 07/26/2013 | 65 | Letter from Leda Dunn Wettre, Esq. to Judge Dickson. (WETTRE, LEDA) (Entered: 07/26/2013) |
| 07/26/2013 | 66 | Letter from Liza M. Walsh, Esq. to the Honorable Joseph A. Dickson, U.S.M.J.. (WALSH, LIZA) (Entered: 07/26/2013) |
| 08/01/2013 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Dickson: Status Conference held on 8/1/2013. (nm, ) (Entered: 08/01/2013) |
| 08/08/2013 | 67 | TEXT ORDER: In person Status Conference set for 9/5/2013 02:00 PM before Magistrate Judge Joseph A. Dickson in Newark in the matters of Cuozzo Speed Technologies, LLC v. General Motors LLC, et al., Civ. A. No. 2:12-cv-3624 (CCC)(JAD) and Cuozzo Speed Technologies, LLC v. TomTom, Inc., Civ. A. No. |

| | | |
|---|---|---|
| | | 2:12-cv-3626 (CCC)(JAD). Counsel in the Garmin and JVC matters are invited to appear in person or telephonically. So Ordered by Magistrate Judge Joseph A. Dickson on 8/8/13.(nm, ) (Entered: 08/09/2013) |
| 08/09/2013 | 68 | SCHEDULING ORDER: that, the following scheduling Order shall apply to the Garmin and JVC Matters ONLY. A Markman hearing shall not occur until after the Patent Trial and Appeal Board of the United States Patent and Trademark Office (the "Board") renders a decision in the pending inter partes review proceeding, No. IPR2012-00001. In-person Status Conference set for 9/5/2013 02:00 PM in Newark - Courtroom 2D before Magistrate Judge Joseph A. Dickson. Signed by Magistrate Judge Joseph A. Dickson on 8/8/13. (gmd, ) (Entered: 08/09/2013) |
| 08/15/2013 | 69 | Letter from Bruce D. Vargo, Esq. to Hon. Joseph A. Dickson. (VARGO, BRUCE) (Entered: 08/15/2013) |
| 08/15/2013 | 70 | ORDER granting Plaintiff's request to extend the time to serve infringement contentions pursuant to L.PatR. 3. from 8/15/13 to 8/30/13; and extending Defendants time to serve invalidity contentions pursuant to L.PatR. 3.3 from 9/30/13 to 10/30/13. Signed by Magistrate Judge Joseph A. Dickson on 8/15/13. (gmd, ) (Entered: 08/15/2013) |
| 09/05/2013 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Dickson: Status Conference held on 9/5/2013. (nm, ) (Entered: 09/06/2013) |
| 09/10/2013 | 71 | LETTER ORDER that Defendants, Tom Tom, Inc. and Mazda Motor of America, Inc. may file a summary judgment motion, (9/5/13 status conference), to determine the construction and resulting consequences with respect to the claim term, etc. The motion on this issue shall be filed no later than 9/30/13. Signed by Magistrate Judge Joseph A. Dickson on 9/9/13. (gmd, ) (Entered: 09/11/2013) |
| 09/11/2013 | 72 | Court's Letter Re: case management responsibilities; and directing parties to submit a case summary within 7 days (dc, ) (Entered: 09/11/2013) |
| 09/11/2013 | | Remark - Please disregard Docket Entry No. 72. This case remains assigned to Magistrate Judge Dickson. (LM, ) (Entered: 09/11/2013) |
| 09/27/2013 | 73 | Letter ORDER that the deadline to submit motions for summary judgment as to the claim term "to delineate which speed readings are in violation of the speed limit at a vehicle's current location," shall be extended to November 20, 2013 for all parties. Signed by Magistrate Judge Joseph A. Dickson on 9/25/13. (jd, ) (Entered: 09/30/2013) |
| 10/16/2013 | 74 | NOTICE by JASON W. DEATS *of Withdrawal as pro hac vice counsel to Cuozzo Speed Technologies LLC* (VARGO, BRUCE) (Entered: 10/16/2013) |
| 10/23/2013 | 75 | TEXT ORDER - An in-person status conference is scheduled for OCTOBER 30, 2013 at 12:00 p.m. in Newark - Courtroom 2B before Judge Claire C. Cecchi. ORDERED by Judge Claire C. Cecchi on 10/23/13. (jl, ) (Entered: 10/23/2013) |
| 10/24/2013 | 76 | AMENDED TEXT ORDER re 75 Order - By October 28, 2013, each party shall submit directly to Chambers a letter, not to exceed three (3) pages in length, summarizing their client's position in this matter and detailing the status of these proceedings. To the extent that certain Defendants' interests may be aligned, those Defendants may alternatively choose to submit a joint letter on their behalf, also limited to three pages. |

|  |  | ORDERED by Judge Claire C. Cecchi on 10/24/13. (jl, ) (Entered: 10/24/2013) |
|---|---|---|
| 10/25/2013 | 77 | Letter from Bruce D. Vargo, Esq. requesting adjournment. (VARGO, BRUCE) (Entered: 10/25/2013) |
| 10/28/2013 | 78 | ORDER: The In-Person Conference previously scheduled for 10/30/13 has been adjourned to 12/4/2013 11:00 AM before Judge Claire C. Cecchi. Status letters shall b submitted to the Court no later than 11/20/13. Signed by Judge Claire C. Cecchi on 10/28/13. (gmd, ) (Entered: 10/28/2013) |
| 10/29/2013 | 79 | Letter from Bruce D. Vargo, Esq. re: Substitution of Attorney. (Attachments: # 1 Consent Substitution of Attorney (Proposed))(VARGO, BRUCE) (Entered: 10/29/2013) |
| 10/30/2013 | 80 | NOTICE of Appearance by LAWRENCE C. HERSH on behalf of CUOZZO SPEED TECHNOLOGIES LLC (HERSH, LAWRENCE) (Entered: 10/30/2013) |
| 11/01/2013 | 81 | CONSENT ORDER granting substitution of attorney, LAWRENCE C. HERSH, ESQ. as counsel of record for CUOZZO SPEED TECHNOLOGIES, LLC. Attorney BRUCE DANIEL VARGO terminated. Signed by Judge Claire C. Cecchi on 11/1/13. (gmd, ) (Entered: 11/04/2013) |
| 11/05/2013 | 82 | APPLICATION/PETITION for the Pro Hac Vice Admission of Neal G. Massand, Esq. by Consent for by CUOZZO SPEED TECHNOLOGIES LLC. (Attachments: # 1 Declaration of Neal G. Massand, Esq. in support of Pro Hac Vice Admission, # 2 Text of Proposed Order)(HERSH, LAWRENCE) (Entered: 11/05/2013) |
| 11/19/2013 | 83 | Letter from Leda Dunn Wettre on behalf of Garmin International, Inc. and Garmin USA, Inc. to Judges Cecchi and Dickson. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(WETTRE, LEDA) (Entered: 11/19/2013) |
| 11/20/2013 | 84 | Supplemental MOTION for Summary Judgment *(Partial) of Non-Infringement of U.S. Patent No. 6,778,074* by CHRYSLER GROUP LLC. (Attachments: # 1 Memorandum of Law, # 2 Declaration of Thomas D. Anderson with Exhibits 1 - 7, # 3 Declaration of Michael Wielgat, # 4 Statement of Undisputed Facts, # 5 Text of Proposed Order, # 6 Certificate of Service, # 7 Cover Letter)(WALSH, LIZA) (Entered: 11/20/2013) |
| 11/20/2013 | 85 | Letter from Liza M. Walsh, Esq. to Hon. Claire C. Cecchi, U.S.D.J. and Hon. Joseph A. Dickson, U.S.M.J.. (WALSH, LIZA) (Entered: 11/20/2013) |
| 11/20/2013 | 86 | Letter from Leda Dunn Wettre, Esq. to Hon. Claire C. Cecchi, U.S.D.J. and Hon. Joseph A. Dickson, U.S.M.J.. (WETTRE, LEDA) (Entered: 11/20/2013) |
| 11/20/2013 | 87 | Letter from Plaintiff's Counsel Neal Massand, Esq. to the Hon. Claire C. Cecchi, U.S.D.J. and the Hon. Joseph A. Dickson, U.S.M.J... (HERSH, LAWRENCE) (Entered: 11/20/2013) |
| 11/21/2013 |  | Set Deadlines as to 84 Supplemental MOTION for Summary Judgment *(Partial) of Non-Infringement of U.S. Patent No. 6,778,074*. Motion set for 12/16/2013 before Judge Claire C. Cecchi. The motion will be decided on the papers. No appearances required unless notified by the court. (gmd, ) (Entered: 11/21/2013) |
| 11/22/2013 | 88 | ORDER granting 82 Application/Petition Pro Hac Vice admission as to LAWARENCE C. HERSH, ESQ. Signed by Magistrate Judge Joseph A. Dickson on 11/21/13. (gmd, ) |

| | | (Entered: 11/25/2013) |
|---|---|---|
| 11/25/2013 | 89 | Rule 7.1(d)(5) Letter for an automatic extension of the return date of a dispositive motion filed by CUOZZO SPEED TECHNOLOGIES LLC re 84 Supplemental MOTION for Summary Judgment *(Partial) of Non-Infringement of U.S. Patent No. 6,778,074* (HERSH, LAWRENCE) (Entered: 11/25/2013) |
| 12/04/2013 | 90 | Minute Entry for proceedings held before Judge Claire C. Cecchi: Status Conference held on the record on 12/4/2013. (Court Reporter: YVONNE DAVION) (jl, ) (Entered: 12/12/2013) |
| 12/18/2013 | 91 | Letter from Neal Massand, Esq. with proposed briefing schedule. (HERSH, LAWRENCE) (Entered: 12/18/2013) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/03/2014 20:06:33 | | | |
| **PACER Login:** | sp5224 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:12-cv-03623-CCC-JAD Start date: 1/1/1970 End date: 1/3/2014 |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

# EXHIBIT J

# ROBINSON, WETTRE & MILLER LLC

ATTORNEYS AT LAW

ONE NEWARK CENTER, 19TH FLOOR

NEWARK, NEW JERSEY 07102

(973) 690-5400

FAX (973) 466-2760

www.rwmlegal.com

November 19, 2013

**SENT VIA ECF & FED EX**

Honorable Claire C. Cecchi, U.S.D.J.

Honorable Joseph A. Dickson, U.S.M.J.

United States District Court

Martin Luther King, Jr. Federal Building & U.S. Courthouse

50 Walnut Street

Newark, New Jersey 07102

> Re: *Cuozzo Speed Technologies, LLC v. Garmin International, Inc. et al.*
> Civil Action No. 12-cv-03623 (CCC) (JAD)

Dear Judge Cecchi and Judge Dickson:

Defendants Garmin International, Inc. and Garmin USA, Inc. ("Garmin") write to notify the Court that the Patent Office has issued a Final Written Decision in Garmin's Inter Partes Review (IPR) of the asserted patent in this case. In addition to cancelling the claims under review (claims 10, 14, and 17) as unpatentable over the prior art, the Patent Office confirmed, under the "broadest reasonable interpretation" standard, that the asserted patent does not cover single-LCD devices (like the accused Garmin devices and the devices accused in the companion cases). Accordingly, Garmin writes to update the Court on the details of the IPR proceeding and to request leave to file a single-issue summary judgment motion predicated on the Patent Office's claim construction findings.

More specifically, Garmin submits this case status letter in response to the Court's orders of August 8, 2013 (Dkt. No. 68) and October 28, 2013 (Dkt. No. 78): i) to notify the Court of the November 13, 2013 Final Written Decision of the Patent Trial and Appeal Board of the United States Patent and Trademark Office (the "Board") in IPR2012-00001 and its implications on this matter, ii) to provide the Court with a status update in advance of the in-person conference scheduled for December 4, 2013 before Judge Cecchi, and iii) to renew Garmin's request for pre-motion leave to file a motion for summary judgment of noninfringement in light of the Board's final claim construction of the "integrally attached"

# ROBINSON, WETTRE & MILLER LLC

Hon. Claire Cecchi and Hon. Joseph A. Dickson
November 19, 2013
Page 2

claim term and its supporting analysis.[1]  Garmin believes this single issue would be dispositive as to all defendants in all the currently pending *Cuozzo Speed* matters currently before the Court.

In this case, Cuozzo asserts U.S. Pat. No. 6,778,074 (the '074 patent) against Garmin personal navigation devices that utilize a single LCD screen to display various information to users, including a moving map, turn-by-turn directions, and, in some cases, an indication that the driver is exceeding the speed limit, as shown in the lower right-hand portion of the screenshot from a Garmin device below:



While Garmin's devices utilize a single LCD to display both the speed and a colored speed limit indication, the '074 patent instead discloses and claims a separate speedometer that is "integrally attached" to a separate colored display.  The sole embodiment disclosed utilizes a conventional speedometer attached to a colored filter, which the patent calls a colored display, that is rotated to delineate which speed readings on the speedometer are in violation of the speed limit, as shown by the excerpt from Figure 1 of the patent below (with red highlighting and annotations added):

---

[1] Garmin notes that the status report for the December 4 status conference was not to exceed 3 pages (Dkt. No. 76), but as stated, this letter respectfully is submitted to satisfy two requests:  Judge Dickson's request for a status report regarding the Final Decision in the IPR and its implications on this matter (Dkt. No. 68), as well as Judge Cecchi's request for a status report in advance of the in-person conference (Dkt. No. 78).

R O B I N S O N, W E T T R E & M I L L E R llc

Hon. Claire Cecchi and Hon. Joseph A. Dickson
November 19, 2013
Page 3



'074 Patent, Fig. 1 (excerpt)

In Garmin's petition, Garmin requested that the claims of the '074 patent be held unpatentable over numerous prior art references that utilized a single LCD screen to display a speedometer and a colored display delineating which speeds on the speedometer were in violation of the current speed limit, such as the Aumayer reference (with red highlighting added for "Red scale mark 107" denoting the current speed limit):



In its initial decision instituting the IPR, the Board adopted a claim construction of "integrally attached" that held that the claims, in their broadest reasonable interpretation, could not encompass devices that use a single LCD screen to display both the speedometer and the colored speed limit indication because such devices lacked a separate speedometer "integrally attached" to a separate colored display. *See* Garmin's February 8, 2013 Letter

Robinson, Wettre & Miller llc

(Dkt. No. 59). Because of its construction of "integrally attached," the Board found that single-LCD references such as Aumayer did not anticipate the claims of the patent but instead rendered the claims obvious when combined with prior art references that included separate speedometers attached to separate colored filters. Notwithstanding the fact that a broader construction of "integrally attached" would be adverse to Cuozzo's interests in defending the patentability of its claims, Cuozzo contested the Board's claim construction and contended that "integrally attached" *should* be construed to encompass the single LCD scenario.

In its Final Written Decision, the Board sided with Garmin on all issues under review, including: affirming the Board's prior claim construction of "integrally attached," denying Cuozzo's effort to "swear behind" certain prior art, cancelling all claims under review (claims 10, 14, and 17) as unpatentable over the prior art on multiple grounds, and denying Cuozzo's motion to amend its claims on the basis that the amended claims would be improperly enlarging and not supported by the original written description of the patent. The Board's Final Decision is attached hereto as Exhibit A.

Most important to this matter, the Board has now thoroughly considered and rejected each of Cuozzo's claim construction arguments that the '074 patent's "integrally attached" limitation should be construed to encompass a single electronic display that displays both speed readings and the delineation of which readings are above the speed limit. Cuozzo fully litigated this issue during the course of the IPR proceeding, and has now lost, with the Board affirming its original construction. *See* Ex. A, Decision, at 7-20.

Under the Board's construction, the patent's requirement of an "integrally attached" speedometer and colored display requires a separate speedometer and separate colored display. The Board's holding fully comports with a common sense understanding of the term "attached," because a single display that graphically presents two items would not be referred to as being "attached" to itself. Specifically, the Board construed "integrally attached" to require "discrete parts physically joined together as a unit without each part losing its own separate identity." Ex. A at 9. The Board specifically noted that the '074 patent claims "(1) a speedometer that is 'integrally attached' to a colored display" and does not claim "(2) an integrated or integral electronic display using a single liquid crystal display." *Id.* at 15.

Further, in rejecting Cuozzo's proposed amended claims, which sought to expressly encompass a single liquid crystal display (LCD) screen that was itself both the speedometer and the colored display, the Board found that such claims would improperly enlarge the

# ROBINSON, WETTRE & MILLER LLC

Hon. Claire Cecchi and Hon. Joseph A. Dickson
November 19, 2013
Page 5

scope of the patent and would also lack support in the original written description of the patent. *Id*. at 47-49.

The Board's analysis and decision regarding the construction of "integrally attached," if adopted by this Court, conclusively establish that the accused Garmin devices do not infringe the '074 patent. Cuozzo alleges that the Garmin devices contain an "integrally attached" speedometer and colored display only by virtue of Garmin's alleged "speedometer" and "colored display" being displayed on a single LCD screen. *See* Exhibit B, Cuozzo's Infringement Contentions Against Garmin, at 9 (alleging that "[t]he speedometer is integrally attached to the colored display because, at a minimum, the LCD is shared by both the colored display and the speedometer."). The Board's construction and analysis, therefore, exclude Garmin's devices from the scope of the claims.

While the Court is not necessarily bound to adopt the Board's construction, the Court should find it, at a minimum, highly persuasive and wholly within the interest of judicial economy to consider the extensive analysis already provided by the Board. While Garmin's IPR is the first to reach a final written decision (leaving no room for IPR-specific precedent to date), the Federal Circuit has noted in the analogous setting of reexamination proceedings that reexamination statements by the PTO "are relevant prosecution history when interpreting claims" and "[t]he reexamination procedure serves an important role in providing a district court with an 'expert view of the PTO.'" *St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270, 276 (Fed. Cir. 2011) (quoting *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) & *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). More specifically, the Federal Circuit has stated that the Patent Office's construction of the asserted claims in the context of patent reexamination "carries significant weight." *Id*. "Significant weight" should tend toward dispositive weight in the context of the new *inter partes* review proceedings where a panel of highly experienced Administrative Patent Judges expressly analyze claim construction issues in a fully litigated advocatorial setting complete with discovery, expert opinions, oral argument, etc., as happened here. Cuozzo has had a full chance to make its arguments, and the Board's analysis is exceptionally complete and detailed, leaving little else for the Court other than to review, confirm, and adopt the Board's analysis.

Garmin has informed Cuozzo's new counsel that it lacks an objectively reasonable basis to continue to maintain this lawsuit, and Garmin still remains hopeful that Cuozzo will voluntarily dismiss its case with prejudice. But in the event that Cuozzo does not do so, Garmin respectfully requests permission to file a targeted motion for summary

**ROBINSON, WETTRE & MILLER** LLC

Hon. Claire Cecchi and Hon. Joseph A. Dickson
November 19, 2013
Page 6

judgment on this single issue. Such a motion should require minimal briefing as the facts are not in dispute, and the claim construction has already been fully litigated by the parties and amply considered by the Board.

Finally, Garmin notes that several months ago, the Court granted leave for TomTom and Mazda to file motions for summary judgment on different claim terms (*i.e*, the "delineate which" terms) than those analyzed by the Board and now proposed by Garmin. *See* Dkt. No. 71. It is unclear in view of the Court's setting of a case management conference whether it still intended for those motions to be filed on November 20 as currently scheduled. Garmin believes it may be best for the Court to hold all motions in abeyance pending the status conference on December 4, so the Court may consider the greater economy of motion practice in its entirety. Specifically, while TomTom and Mazda's motions may focus on issues in addition to those found by the Board in the recent IPR to dispose of these cases on summary judgment, Garmin submits that it would be more efficient for the Court to consider Garmin's proposed motion first because the Board's findings in the IPR will invariably maximize judicial economy, the resulting infringement issue is straightforward (the accused devices indisputably use the single display expressly excluded by the Board's analysis), and the issue is dispositive as to all accused products in all the pending cases.

We thank the Court for its continued time and attention to this matter and look forward to a fair and efficient resolution of this matter.

Respectfully,

*Leda Dunn Wettre*

Leda Dunn Wettre

cc: All Counsel of Record (via ECF)

Attachments:
Exhibit A – IPR2012-00001 Final Written Decision
Exhibit B – Cuozzo's Infringement Contentions

# EXHIBIT K



Neal G. Massand
**NI, WANG & ASSOCIATES, PLLC**
8140 Walnut Hill Lane, Ste. 310
Dallas, Texas 75231
Tel: 972-331-4601
Fax: 972-314-0900
Email: nmassand@nilawfirm.com
WWW.NILAWFIRM.COM

November 20, 2013

**VIA ECF**
Honorable Claire C. Cecchi, U.S.D.J.
Honorable Joseph A. Dickson, U.S.M.J.
United States District Court
Martin Luther King Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

RE:     *Cuozzo Speed Technologies LLC v. Garmin Int'l et al*, Case No.: 12-cv-03623-CCC-JAD

      *Cuozzo Speed Technologies, LLC v. General Motors LLC*, Case .No.: 12-cv-3624-CCC-JAD

      *Cuozzo Speed Technologies, LLC v. TomTom, et al.*, Case No,: 12-cv-3626-CCC-JAD

Dear Judge Cecchi and Judge Dickson,

      I write on behalf of the Plaintiff, Cuozzo Speed Technologies LLC ("Cuozzo Speed") pursuant to the Court's October 28, 2013, Order regarding the in-person conference scheduled for December 4, 2013.  Lawrence C. Hersch, Esq., substituted as counsel for Plaintiff on October 30, 2013, and the undersigned's pending application for *Pro Hac Vice* admission was filed on November 5, 2013.

      In the above-referenced cases, Plaintiff has accused the various respective defendants of infringing U.S. Patent No. 6,778,074 ("the '074 Patent") through making, using, selling or importing certain navigation systems in violation of 35 U.S.C. § 271.  The '074 Patent discloses methods and apparatuses for displaying the speed of a vehicle and how it relates to the speed limit at a vehicle's current location to make it easier for a driver to determine whether his/her current speed is in excess of the speed limit.

      Pursuant to the Court's previous Orders, Defendants Tom Tom, Mazda, Chrysler and General Motors have filed Motions for Summary Judgment regarding the claim term "to delineate which speed readings are in violation of the speed limit at a vehicle's current location." Plaintiffs believe that the respective Motions are without merit and will ultimately be denied.

November 20, 2013
Page 2

  In addition, on November 13, 2013, the Patent Trial and Appeal Board ("PTAB") issued its written opinion in Case IPR2012-00001, which was brought by Defendants Garmin International, Inc., and Garmin USA, Inc., regarding the '074 Patent. In this *inter partes review*, the PTAB denied the petition as to claims 1-9, 11-13,15, 16 and 18-20 and instituted proceedings related only to claims 10, 14 and 17. In its written opinion, the PTAB construed the claim term "integrally attached" and found that claims 10, 14 and 17 were unpatentable. Plaintiff believes that the PTAB's claim construction is not binding on this Court and was, nevertheless, incorrect and intends to appeal this construction, as well as findings in the written opinion related to the validity of claims 10, 14 and 17 and the proper date of invention of the '074 Patent, to the Court of Appeals for the Federal Circuit. Further, even under the PTAB's incorrect construction of "integrally attached" in claim 10 as "discrete parts physically joined together as a unit without each part losing its own separate identity," all of the accused navigation systems meet this claim limitation. That is, each of the accused navigation system includes a speedometer (a microprocessor that measures and outputs a speed value) which is a discrete part physically joined, e.g., through an electronic circuit, as a unit with a colored display (a liquid crystal display screen) without each part losing its own separate identity, i.e., the microprocessor could be removed and it will still measure and output a speed value, and the liquid crystal display could be removed and it will still be a liquid crystal display.

  Defendant Garmin has sought leave to file a motion for summary judgment regarding non-infringement in light of the PTAB's written opinion. Plaintiffs believe that leave should not be granted because the petition was denied as to claims 1-9, 11-13, 15, 16 and 18-20 and, therefore, these claims remain unaffected by the written opinion. Furthermore, Plaintiffs will appeal the written opinion as to its construction of "integrally attached" and its finding of unpatentability for claims 10, 14 and 17.

  We appreciate the Court's attention to this matter and look forward to the in-person conference on December 4, 2013.

       NI, WANG & ASSOCIATES, PLLC

       Neal G. Massand

# EXHIBIT L

**Jennifer Westin**

| | |
|---|---|
| **From:** | Alex Gasser |
| **Sent:** | Tuesday, November 19, 2013 3:14 PM |
| **To:** | Leslie Kramer |
| **Cc:** | Dynamic_Team; Apple-Dynamic Advances Service; David Lacy Kusters; Jeffrey Ware |
| **Subject:** | RE: Dynamic Advances/RPI v. Apple: Deposition Objections and Dates |

Hi Leslie,

We respond to your emails of November 1, 7, and 18 that proposed dates for Apple's 30(b)(6) and 30(b)(1) witnesses.

With respect to Apple's designated 30(b)(6) witnesses, the dates for witnesses Kellerman (12/17/13), Murphy (1/7/14), Bellagarda (1/08/14), Perica (1/29/14), Buckley (2/11/14), and Denison (2/24/14) are premature given that:

1) Most importantly, Apple has barely, if at all, commenced – much less completed – the production of documents relating to the topics on which the above 30(b)(6) witnesses are designated to testify;
2) The parties need to meet and confer regarding Apple's narrowing of the noticed topics and Apple's refusal to produce witnesses in response to several of Plaintiffs' noticed topics; and
3) The 30(b)(6) notice and designations are an exercise of Apple's own making, given its insistence that we serve a 30(b)(6) notice so Apple could designate its 30(b)(1) witnesses to testify on various 30(b)(6) topics. Apple delayed the 30(b)(1) depositions for several months based on its representation that the 30(b)(1) witnesses would testify on various 30(b)(6) topics, even though Apple ultimately designated none of the five original 30(b)(1) witnesses to testify on a single 30(b)(6) topic. Apple now prematurely sets dates for 30(b)(6) witness depositions even though Apple waited more than six months before even commencing its presently incomplete production of documents relevant to Apple's noticed 30(b)(6) topics.

In view of the above, please confirm that Apple will negotiate in good faith to find alternative mutually convenient dates for its 30(b)(6) witnesses Bellagarda, Kellerman, Murphy, Perica, and Buckley, after Apple has substantially completed its respective document production.  The presently provided dates for 30(b)(6) witnesses Denison and Treadgold (February 25, 2014, and sometime in March 2014, respectively) may be sufficiently late next year to allow time for our preparation, provided Apple substantially completes its relevant document productions well prior to those dates.  We reserve the right to revisit the scheduling of 30(b)(6) witnesses Denison and Treadgold if Apple's relevant document production (i.e., production of documents relevant to their respective deposition topics) is not substantially complete sufficiently prior to their respective depositions, and if their dates are not mutually convenient.

With respect to the 30(b)(1) witnesses, we accept the proposed dates for Stasior (1/14/14), Khosla (1/16/14), Haas (1/23/14) and Gruber (2/7/14).  We presume you are aware that your proposed dates for Stasior and Khosla are on the Tuesday and Thursday just prior to the Friday, January 17, 2014 deadline for both parties' opening Markman briefs.

Finally, please provide us with the specific address for Mr. Guzzoni's December 10 deposition, so that we can make necessary arrangements for the deposition.

Regards,

Alex

Alexander E. Gasser | SKIERMONT PUCKETT LLP
2200 Ross Ave., Suite 4800W, Dallas, Texas 75201
Office: 214.978.6605 | Fax: 214.978.6601
www.skiermontpuckett.com

This message is the property of SKIERMONT PUCKETT LLP and contains confidential information.  If this message has been delivered to you by mistake, then do not copy or deliver this message to anyone.  Instead, destroy it and notify me by reply e-mail.

**From:** Leslie Kramer [mailto:lkramer@fenwick.com]
**Sent:** Monday, November 18, 2013 8:37 PM
**To:** Don Tiller; Alex Gasser
**Cc:** Dynamic_Service; Ryan Marton; David Lacy Kusters; Jeffrey Ware
**Subject:** RE: Dynamic Advances/RPI v. Apple: Deposition Objections and Dates

Hi Alex,
Jerome Bellegarda is no longer available on December 12.  He is available on January 8.

If you can confirm these dates as soon as possible, we would appreciate it.

Best,
Leslie


-----Original Message-----
From: Leslie Kramer [mailto:lkramer@fenwick.com]
Sent: Thursday, November 07, 2013 12:32 PM
To: Don Tiller; Alex Gasser
Cc: Dynamic_Service; Teresa Corbin; Hector Ribera; David Lacy Kusters; Jeffrey Ware; Will Moseley
Subject: Re: Dynamic Advances/RPI v. Apple: Deposition Objections and Dates

Hi Alex,
We would like to confirm these dates as soon as possible.  Can you please let me know when they are confirmed on your end? In particular, Didier needs to make international travel arrangements so if you would like to go forward with the proposed date below we need to know this week.

Thanks,
Leslie

On Nov 7, 2013, at 8:02 AM, "Leslie Kramer" <lkramer@fenwick.com<mailto:lkramer@fenwick.com>> wrote:

Adrien Perica is available on January 29th for his deposition.  Nick Treadgold's deposition will likely be in March, when he is in the US next.  As soon as his travel dates are confirmed, we will let you know.

Best,
Leslie


**From:** Leslie Kramer [mailto:lkramer@fenwick.com]
**Sent:** Friday, November 01, 2013 10:05 PM
**To:** Don Tiller; Alex Gasser

**Cc:** Dynamic_Service; Teresa Corbin; Hector Ribera; David Lacy Kusters; Jeffrey Ware; Will Moseley
**Subject:** Dynamic Advances/RPI v. Apple: Deposition Objections and Dates

Don and Alex,

Attached are Apple's objections to the 30(b)(6) deposition notice.  Below are dates of availability for both Apple's designees and the 30(b)(1) deponents.  All depositions will be in or around Cupertino, CA.

Given the Court's guidance to Apple to provide dates for the noticed depositions and Dynamic Advances' expressed urgency to take these depositions we have endeavored to provide availability for the witnesses in the next four months, but, in practice, the range of dates seem somewhat compressed.  Given the lack of a deadline for the close of discovery, we propose that the parties confer about spreading the depositions over a longer range of dates.  Please let me know your thoughts on the scheduling.

| Date | Witness | 30(b)(6) Topics (if any) |
| --- | --- | --- |
| 12/10/2013 | Guzzoni | N/A |
| 12/12/2013 | Bellegarda | 3 |
| 12/17/2013 | Kellerman | 45, 46, 49 |
| 1/7/2014 | Murphy | 19, 20, 21, 22, 23, 27, 37 |
| 1/14/2014 | Stasior | N/A |
| 1/16/2014 | Khosla | N/A |
| 1/23/2014 | Haas | N/A |
| 2/7/2014 | Gruber | N/A |
| 2/11/2014 | Buckley | 8,  11, 15, 16, 17, 18 |
| 2/25/2014 | Denison | 1, 2, 9, 10 |
| TBD (likely mid-January) | Treadgold | 33, 34, 35, 36, 38 |
| TBD | Perica | 3, 5, 6, 7, 30, 31 |

As you can see from the chart, there are a few witnesses that we have not been able to confirm dates with yet.  We are working diligently on this.  Nick Treadgold resides in Australia.  We would like to schedule his deposition during engineering week in January.  As soon as his dates are set, we will be able to select a date.  I expect to have dates for Adrien Perica by early next week at the latest.

Regarding Peter Oppenheimer, Apple requests a conference of counsel on his deposition notice.  Please let me know when you are available to confer on this issue.

Regarding Bill Stasior, Mr. Stasior has only a supervisory role and is a recent addition to the Siri group.  As such, he is unlikely to have any relevant personal knowledge that cannot be obtained from other, more relevant witnesses.  Nonetheless, we have provided you with a date for his deposition.

Best,
Leslie



**LESLIE KRAMER**

Fenwick & West LLP

Associate, Litigation Group

☎ (415) 875-2396

📠 (415) 281-1350

✉ lkramer@fenwick.com

---------------------------------------------
IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
---------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.