IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RENSSELAER POLYTECHNIC
INSTITUTE, *et al.*,

              Plaintiffs,        Civil Action No.
                                      1:13-CV-0633 (DEP)

      v.

APPLE INC.,

              Defendant.

_____

APPEARANCES:              OF COUNSEL:

FOR PLAINTIFFS:

| | |
|---|---|
| SKIERMONT PUCKETT LLP | PAUL J. SKIERMONT, ESQ. |
| 2200 Ross Avenue | AMY E. LaVALLE, ESQ. |
| Suite 4800W | DONALD E. TILLER, ESQ. |
| Dallas, TX 75201 | LENNY HUANG, ESQ. |
| | ALEXANDER E. GASSER, ESQ. |
| | |
| HESLIN ROTHENBERG FARLEY | NICHOLAS MESITI, ESQ. |
| & MESITI P.C. | |
| 5 Columbia Circle | |
| Albany, NY 12203 | |
| | |
| HARRIS BEACH PLLC | JAMES R. MULDOON, ESQ. |
| 333 West Washington Street | STEVEN P. NONKES, ESQ. |
| Suite 200 | |
| Syracuse, NY 13202 | |

FOR DEFENDANT:

FENWICK & WEST LLP        TERESA M. CORBIN, ESQ.
555 California Street         HECTOR J. RIBERA, ESQ.
12th Floor                  RYAN J. MARTON, ESQ.
San Francisco, CA 94101    DAVID M. LACY KUSTERS, ESQ.
                         WILLIAM A. MOSELEY, JR., ESQ.

MENTER, RUDIN          MITCHELL J. KATZ, ESQ.
& TRIVELPIECE, P.C.
308 Maltbie Street
Suite 200
Syracuse, NY 13204


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

Plaintiffs Rensselaer Polytechnic Institute ("RPI") and Dynamic Advances, LLC ("Dynamic"), have brought this action against defendant Apple Inc. ("Apple") alleging patent infringement.[1] Plaintiffs claim that, through its Siri personal assistant, available on certain Apple iPhones, iPads, and iPods, defendant has infringed United States Patent No. 7,177,798 ("'798 Patent"), entitled "Natural Language Interface Using Constrained Intermediate Dictionary of Results," which was issued to Cheng Hsu and Veera Boonjing, and assigned to RPI. Apple has

---

[1] This matter is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c). Dkt. No. 32.

answered plaintiffs' complaint, denying infringement, asserting various affirmative defenses, and counterclaiming seeking declarations of non-infringement and patent invalidity. A scheduling order has been issued in the case, discovery is underway, and the parties are working toward a claim construction hearing, which the court contemplates holding in the coming months.

In October 2013, Apple petitioned the United States Patent and Trademark Office ("PTO"), requesting *inter partes* review ("IPR") of all claims contained within the '798 Patent. Currently pending before the court is Apple's request to stay this action during the pendency of IPR. For the reasons set forth below, after examining the relevant factors, I conclude that the motion should be denied, without prejudice to renewal once the PTO has decided whether to accept the matter for review.

I.     BACKGROUND

The roots of this action can be traced to a complaint filed in a separate suit initiated by Dynamic against Apple on October 19, 2012. *Dynamic Advances, LLC v. Apple, Inc.* ("*Dynamic I*"), No. 12-CV-1579 (N.D.N.Y. filed Oct. 19, 2012). After questions arose concerning Dynamic's standing to sue for infringement of the '798 Patent, this action was commenced by Dynamic and RPI on June 3, 2013. Dkt. No. 1.

*Dynamic I* was subsequently dismissed on stipulation of the parties, without prejudice to the right of plaintiffs to pursue, in this action, the infringement claims that were originally asserted in that case by Dynamic alone. *See Dynamic I*, No. 12-CV- 1579, Dkt. No. 68 at 1-2 ("[RPI], [Dynamic], and Apple Inc. jointly request the Court to coordinate Civil Action No. 1:12-cv-1579-DNH-DEP with Civil Action No. 1:13-cv-633-DNH-DEP under Rule 42 of the Federal Rules of Civil Procedure as follows: . . . Civil Action No. 1:12-cv-1579-DNH-DEP is dismissed without prejudice and the parties will proceed to litigate their claims and defenses in Civil Action No. 1:13-cv-633-DNH-DEP.").

In accordance with a case management scheduling order issued in *Dynamic I* and made applicable to this action with certain modifications, the case has proceeded in accordance with this court's local patent rules, and the parties have commenced fact discovery principally addressed to claim construction. *See, e.g.,* Text Minute Entry Dated Oct. 22, 2013; Dkt. No. 35. Under the current schedule, opening claim construction briefs must be filed on January 17, 2014, and opposing claim construction briefs are due by February 17, 2014. Dkt. No. 27. While no claim construction hearing has yet been scheduled, the court contemplates conducting one in late March or early April of this year. Text Minute Entry Dated Oct. 22,

2013.

On October 21, 2013, Apple filed an IPR petition with the PTO requesting review of all twenty-one claims of the '798 Patent.[2]  Dkt. No. 39-6 at 2.  That petition seeks review of all of the '798 Patent claims under the expedited procedure prescribed by the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 S. Stat. 284 (2011), codified at 35 U.S.C. §§ 311-319.  No action has yet been taken by the PTO with regard to Apple's IPR petition, to which an answer from plaintiffs is currently due later this month.

The IPR process set out in the AIA represents a "new, more streamlined adjudicative proceeding" intended to replace the more cumbersome and time-consuming *inter partes* reexamination that could take upwards of three years to conclude.  *Ultratec, Inc. v. Sorenson Commc'ns, Inc.,* No. 13-CV-346, 2013 WL 6044407, at *1 (W.D. Wisc. Nov. 14, 2013); *see also Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013) ("The purpose of this reform was to convert inter partes reexamination from an examinational to an adjudicative

---

[2]      Apple's reply papers disclose the filing of two additional IPR petitions pertaining to the '798 Patent on January 3, 2014.  Dkt. Nos. 43-1, 43-2, 43-3.  At oral argument regarding the pending motion to stay, held on January 9, 2014, plaintiffs informed the court of their intention to object to the filing of the most recent IPR petitions as untimely.

proceeding[.]").   Under the procedures governing IPR, which became

effective on September 16, 2012, a request for review must be filed by the

petitioner within one year of being served with a complaint alleging

infringement of the patent in issue.  35 U.S.C. § 315(b); *see Evolutionary*

*Intelligence LLC v. Yelp Inc.,* No. 13-CV-3587, 2013 WL 6672451, at *2

(N.D. Cal. Dec. 18, 2013).  Significantly, a petitioner may challenge the

validity of a patent claim in an IPR petition only on grounds that could be

raised under 35 U.S.C. §§ 102 (anticipation) or 103 (obviousness), and

then only "on the basis of prior art consisting of patents or printed

publication."  35 U.S.C. § 311(b); *see Automatic Mfg. Sys., Inc. v. Primera*

*Tech., Inc.* ("*Automatic Mfg. Sys., Inc. II*"), No. 12-CV-1727, 2013 WL

6133763, at *2 (M.D. Fla. Nov. 21, 2013);[3] *Evolutionary Intelligence LLC,*

2013 WL 6672451, at *2.  Once an IPR petition is filed, the patent owner

may submit a preliminary response within three months, or may instead

expedite the process by waiving the right to submit a preliminary

---

[3]     In *Automatic Mfg. Sys., Inc.*, the Middle District of Florida entertained two
motions to stay by the defendant.  The first was filed on March 21, 2013, before the
PTO decided whether to institute IPR; that motion was addressed in a written decision
issued on May 13, 2013.  *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.* ("*Automatic
Mfg. Sys., Inc. I*"), No. 12-CV-1727, 2013 WL 1969247 (M.D. Fla. May 13, 2013).  The
second motion to stay was filed by the defendants after the PTO instituted an IPR trial,
and the court issued its decision on that motion on November 21, 2013.  *Automatic
Mfg. Sys, Inc. II*, 2013 WL 6133763.

response.[4]  35 U.S.C. § 313; 37 C.F.R. § 42.107(b); *see Evolutionary Intelligence LLC*, 2013 WL 6672451, at *2.

An IPR trial may be initiated by the PTO if the petitioner demonstrates a reasonable likelihood of prevailing with respect to at least one challenged claim.  35 U.S.C. § 314(a); *Evolutionary Intelligence LLC,* 2013 WL 6672451, at *3.  The PTO must decide whether to institute an IPR within three months of the filing of a response by the patentee, or, if none is submitted, within three months of the date upon which one was due.  35 U.S.C. § 314(b); *Evolutionary Intelligence LLC,* 2013 WL 6672451, at *2; *Ultratec, Inc.*, 2013 WL 6044407, at *1.

Unlike the prior *inter partes* reexamination proceeding, which was accomplished largely through submissions before a PTO examiner, IPR under the AIA is conducted before a panel of three of the technically-trained administrative judges comprising the Patent Trial and Appeal Board ("PTAB").   35 U.S.C. § 6(a), (c).  In the event IPR is initiated, the PTAB must issue a final determination within one year after commencement, although that period may be extended, for good cause, to

---

[4]      In this case, plaintiffs have until January 21, 2014, to respond to Apple's first IPR petition.  As to the second and third IPR petitions filed by Apple, which were filed on January 3, 2014, it is unclear when plaintiffs' response may be due in light of (1) plaintiffs' representation to the court during oral argument that they intend to challenge the timeliness of those petitions; and (2) Apple's request to the PTO that it consolidate its second and third petitions with its first.

eighteen months.  35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c); *see*

*Evolutionary Intelligence LLC,* 2013 WL 6672451, at *2.   A party

dissatisfied with the PTAB's final decision may appeal the determination to

the Federal Circuit.  35 U.S.C. § 141; *see Evolutionary Intelligence LLC,*

2013 WL 6672451, at *3.  Given this timeframe, IPR can take two years

before the PTO, and an appeal to the Federal Circuit can extend that

timeline further.

Because the new IPR procedures implemented under the AIA are in

their relative infancy, empirical data concerning the PTO's response to

such petitions is relatively sparse.  As of November 7, 2013, for the fiscal

year 2013, out of 203 decisions issued by the PTO regarding institution,

trial was instituted in approximately eighty-seven percent of the cases.[5]

Patent Trial and Appeal Board, AIA Progress,

http://www.uspto.gov/ip/boards/bpai/stats/aia_statistics_11_07_2013.pdf

(last visited Jan. 15, 2014).  For the fiscal year 2014, the percentage of

petitions that were instituted dropped slightly to eighty-three percent.  *Id.*

Since the IPR provisions of the AIA took effect in September 2012, the

---

[5]     This calculation includes ten cases that were joined with existing proceedings,
which the court has construed as an institution of a petition.  Patent Trial and Appeal
Board, AIA Progress,
http://www.uspto.gov/ip/boards/bpai/stats/aia_statistics_11_07_2013.pdf (last visited
Jan. 15, 2014).

PTAB has issued only three final written decisions – two in fiscal year 2013, and one in fiscal year 2014.   *Id.*

On December 23, 2013, after the depositions were taken of co-inventor Dr. Hsu and Apple employee Didier Guzzoni, and the parties exchanged a significant volume of written documents, Apple moved to stay this action pending a determination by the PTO in connection with its IPR petitions.  Dkt. No. 39.  Plaintiffs oppose the request, arguing that the relevant factors to be considered when deciding whether to grant such relief, particularly in advance of an initial determination by the PTO regarding whether to accept the matter for review, weigh against the issuance of a stay.  Dkt. No. 41.

II.    DISCUSSION

A.    Governing Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am., Co.*, 299 U.S. 248, 254 (1936); *accord, Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008).  "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Landis*, 299 U.S. at

254-55.  As the party seeking a stay, Apple bears the burden to demonstrate that such relief is warranted.  *Automatic Mfg. Sys., Inc. II*, 2013 WL 6133763, at *1 (*citing Landis*, 299 U.S. at 255).

When a party moves to stay patent infringement litigation during the pendency of PTO proceedings concerning the validity of patents in suit, courts consider three factors, including "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."  *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 404, 406-07 (W.D.N.Y. 1999); *see also Automatic Mfg. Sys., Inc. II*, 2013 WL 6133763, at *2; *Internet Patents Corp. v. eBags, Inc.*, No. 12-CV-3385, 2013 WL 4609533, at *2 (N.D. Cal. Aug. 28, 2013).   These factors are not exclusive, however, and in the end, an overarching consideration of the circumstances in their totality governs.  *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030-31 (C.D. Cal. 2013); *accord*, *Automatic Mfg. Sys., Inc. II*, 2013 WL 6133763, at *2.

B.    Undue Prejudice or Clear Tactical Disadvantage

The question of undue prejudice or clear tactical advantage is informed by four sub-factors, including "(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Davol, Inc. v. Atrium Med. Corp.*, No. 12-CV-0958, 2013 WL 3013343, at *2 (D. Del. June 17, 2013). It should be noted that "[m]ere delay in the litigation does not establish undue prejudice." *Universal Elecs., Inc.,* 943 F. Supp. 2d at 1033; s*ee also Internet Patents Corp.,* 2013 WL 4609533, at *4 ("[C]ourts have refused to find undue prejudice based solely on delay caused by the reexamination process.")

1.    Timing of the Review Request

A review of the court's records reveals that the summons and complaint in *Dynamic I* were served upon Apple on October 23, 2012. *See Dynamic I*, No. 12-CV-1579, Dkt. No. 7. Accordingly, under the AIA procedures, Apple's IPR petition was due on October 23, 2013. As was previously noted, Apple filed its petition two days before that deadline, on October 21, 2013. The fact that an accused infringer waits until one year after being served with a complaint in an infringement action to submit its IPR petition "at least raises the possibility that [it] was a dilatory tactic."

*Evolutionary Intelligence LLC,* 2013 WL 6672451, at *9.

The justification offered by Apple for consuming nearly the full allotted one-year time period before requesting IPR is not particularly persuasive.   It argues that it was unable to meaningfully evaluate whether to petition for IPR before receiving plaintiff's infringement contentions. Those initial infringement contentions, however, were served by plaintiffs in March of 2013.[6]   While Apple maintains that they were not particularly enlightening, plaintiffs served revised infringement contentions upon the defendant, which Apple concedes were more comprehensive, in June 2013.  In any event, Apple has failed to explain how infringement contentions would bear upon issues to be presented to the PTAB in an IPR proceeding, which examines validity based upon anticipation and obviousness.

Moreover, I find unpersuasive Apple's argument that, after plaintiffs initiated this lawsuit in October 2012, delay was occasioned because it "focused its efforts on transferring the case to the Northern District of California," as well as "evaluating and challenging standing."  Dkt. No. 43-

---

[6]     Under the schedule implemented in *Dynamic I*, and carried over in relevant part to this action, plaintiff's infringement contentions were due to be served on March 5, 2013.  *See Dynamic I*, No. 12-CV-1579, Dkt. No. 45-1.  While that schedule was subsequently altered, the modifications did not affect the exchange of infringement and non-infringement contentions.  *Id.*, Dkt. No. 52 at 2.

1 at 2.  Similarly, Apple contends that it used the full one-year timeframe to strengthen its IPR petition.  Dkt. No. 43 at 11.  These arguments, and particularly the way Apple frames them in its motion papers, suggest that it was not possible for Apple to adequately evaluate venue, standing, and its IPR petition simultaneously, thus rendering necessary the use of the full statutory period to accomplish each task separately and timely file its IPR petition.  *See* Dkt. No. 43 at 10-11 ("Dynamic Advances initiated this suit in October 2012 . . . . For the next several months Apple focused its efforts on transferring the case . . . and evaluating and challenging standing . . . . Apple received plaintiffs' infringement contentions in March 2013 and served its invalidity contentions in April 2013 . . . . Apple then worked diligently to narrow issues to strengthen its IPR petition and filed its petition in October 2013.").  This contention, however, is belied by the nature of the tasks described, as well as the size of Apple and its access to resources that would seemingly enable it to efficiently address each of those tasks in parallel.  By way of example, although the court is not in a position to suggest how long a party spends on certain tasks, I am aware that this particular patent action is not the first, nor the last, in which Apple has argued in support of or opposition to a motion to transfer venue to the Northern District of California.  *See, e.g., In re Apple Inc.*, 456 F. App'x

907, 908 (Fed. Cir. 2012) (requesting writ of mandamus seeking transfer of venue); *Emblaze Ltd. v. Apple, Inc.*, No. 10-CV-5713, 2011 WL 2419802, at *1 (S.D.N.Y. June 3, 2011) (seeking transfer of venue); *Apple Inc. v. High Tech Computer Corp.*, No. 10-CV-0544, 2011 WL 143909, at *1 (D. Del. Jan. 18, 2011) (opposing a motion to transfer venue). Accordingly, I find that it is reasonable to infer that arguing for or against a motion to transfer venue is a task that, although likely not without merit or substance, is routine for Apple, and does not require "several months" worth of focus.[7]

In light of the timing of Apple's IPR petition and its failure to offer a plausible explanation for delaying the filing of the petition until two days before the expiration of the deadline under the AIA, I conclude that this sub-factor weighs against a stay. *Compare Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*, No. 12-CV-0021 (C.D. Cal. Dec. 19, 2012) (finding that the ten-month delay in filing the IPR petition was justified where the plaintiffs' claim "contentions identified 100 claims from the six contested patents and provided claim charts and exhibits totaling more than 35,000 pages").

---

[7]     I note, moreover, that Apple does not contend the choice of venue choice dictates whether IPR would be sought to test validity of the '798 Patent.

## 2.    Timing of the Request for the Stay

While Apple filed its IPR petition on October 21, 2013, it was not until December 9, 2013, that it requested permission to bring the instant motion, which was filed on December 23, 2013.  Dkt. Nos. 36, 39.  In the interim, Apple participated in a telephone conference with the court, held in connection with this action on October 22, 2013, to discuss the status of discovery in the case.  Text Minute Entry Dated Oct. 22, 2013.  During that conference, Apple neglected to inform the court and plaintiffs that it had submitted an IPR petition to the PTO.  Instead, the parties discussed the briefing schedule in advance of the claim construction hearing, and Apple pressed to take the deposition of co-inventor Dr. Hsu, an event which would (and did, upon completion) trigger that schedule.  Dkt. No. 35.  At the motion hearing regarding the pending motion to stay, Apple did not offer a particularly persuasive reason for its lack of candor with the court and plaintiffs during the telephone conference regarding the fact that it filed an IPR petition.  More specifically, Apple argued that it would have been "premature" to mention the filing because Apple had not yet received, from the PTO, a "filing date" of its petition.  In contrast to that position, however, Apple repeats throughout its motion papers that it filed its IPR petition on October 21, 2013.  Dkt. No. 39-1 at 13; Dkt. No. 39-2 at

3; Dkt. No. 43-4 at 1.

In light of the foregoing, I conclude that Apple's failure to notify the court and plaintiffs of the filing of its IPR petition in a telephone conference in which scheduling was discussed was calculated to secure tactical advantage by obtaining desired discovery while rebuffing plaintiffs' efforts to obtain reciprocal discovery until the stay motion could be interposed. For that reason, I find that this sub-factor also weighs against the granting of a stay.

3.     Status of the Review Proceedings

Courts are divided on whether to grant a stay while an IPR petition undergoes initial review by the PTO, or wait until the PTO decides the scope of an IPR trial, if any.  Several courts have concluded that the factors relevant to a stay analysis cannot be meaningfully addressed until the PTO determines whether to institute an IPR.  In *Automatic Mfg. Sys., Inc. I*, for example, the court reasoned that a patent owner should be able to prosecute its claims at least until the PTO has decided it will review any challenged claims "because a petition does not shed much light on the potential scope of an [IPR], and because a stay could delay [the district court] proceedings for at least six months with little to show.[]"  *Automatic Mfg. Sys., Inc. I*, 2013 WL 1969247, at *3; *see also Ultratec, Inc.*, 2013 WL

16

6044407, at *3 (denying the defendants' motion to stay because, *inter alia*, "the fact that the [PTO] has not yet granted the petitions to review the nine patents [at issue] adds an additional layer of doubt whether the [IPR] will even occur"); *Davol*, 2013 WL 3013343, at *2 (finding that, where the status of the defendant's IPR was at its "earliest stage[]" (*i.e.*, the PTO had yet to determine whether to institute an IPR), such status weighs against granting a stay). Other courts, on the other hand, have concluded that the plaintiff risks only a modest delay where the court stays pending litigation while awaiting the PTO's initial response to an IPR petition, and that risk of delay is, on balance, prudent in light of the prospect of benefiting from the PTO's unique expertise on a highly complex topic. *See Evolutionary Intelligence LLC*, 2013 WL 6672451, at *7 ("On the other hand, if the PTAB rejects the IPR request, the stay will be relatively short."); *Capriola Corp. v. LaRose Indus.,* No. 12-CV-2346, 2013 WL 1868344, at *3 (M.D. Fla. Mar. 11, 2013) (granting the defendants' motion to stay, citing, as two of its justifications, the fact that (1) "the PTO . . . will not consume much time unless [it] perceives an important patent issue within the PTO's particular expertise"; and (2) "an important issue that appears in the litigation also appears to fall within the PTO's province and particular expertise, prudence").

As was briefly mentioned above, the timetable associated with Apple's IPR three pending petitions is anything but clear. Although Apple filed its first IPR petition on October 21, 2013, rendering plaintiffs' response due by January 21, 2013, and the PTO's decision regarding whether to institute trial due thereafter by April 21, 2013, it has filed two additional IPR petitions on January 3, 2014. Those new petitions potentially extend the date on which to anticipate an initial PTO determination regarding all three IPR petitions to July 3, 2014.[8] It is only once the PTO makes its preliminary decision on IPR institution that the parties and court will know whether the issues in this case will, as defendants contend, be narrowed by a final IPR determination.

Because the PTO has yet to make even an initial determination of the pending IPR petitions, and neither plaintiffs nor Apple can be certain of when the PTO may issue that decision, I conclude that this factor weighs against granting a stay. While sensitive to the expense associated with litigating a patent infringement case, I am unable to conclude that there is

---

[8]     That date could be extended even further in light of Apple's argument to the PTO that the dismissal of *Dynamic I* without prejudice rendered that action a nullity for purposes of the AIA procedural scheme. In that potential scenario, according to Apple, it has until June 6, 2014, to file its IPR petitions, rendering all three pending IPR petitions before the PTO timely. Although Apple has represented to the court that it does not intend to file any further IPR petitions, if the PTO agrees with Apple's analysis of the effect of the dismissal of *Dynamic I*, it has the potential to extend the entire IPR timeline by several months.

a sound basis to place this case on hold during the pendency of the IPR

petition and preclude the parties from continuing to engage in pretrial

discovery. Until the PTO acts on the pending petition, the court is unable

to assess with precision the extent, if at all, to which a decision on the

petitions may serve to simplify the issues of this case.[9]

### 4.     Relationship of the Parties

This fourth sub-factor, which examines the relationship between the

litigants, is an important consideration when the parties to the infringement

litigation are direct competitors. In those cases, "there is a reasonable

chance that delay in adjudicating the alleged infringement will have

outsized consequences . . ., including the potential loss of market share

and an erosion of goodwill." *Davol*, 2013 WL 3013343, at *3 (quotations

---

[9]     Additionally, as at least one court has recognized, because the IPR procedures demand the PTO undertake a more strict review of the petitions at the outset than its *inter partes* reexamination predecessor, there is a likelihood that the number of petitions it institutes will be lower. *See Capriola Corp.*, 2013 WL 1868344, at *2 ("Thus, the rate at which the PTAB will grant the [IPR] is likely lower."). Although not determinative by any means, this theory is supported with the latest statistics from the PTO regarding IPR. Between fiscal years 2013 and 2014, the number of IPR petitions instituted by the PTO decreased by approximately four percent from eighty-seven to eighty-three percent. Patent Trial and Appeal Board, AIA Progress, http://www.uspto.gov/ip/boards/bpai/stats/aia_statistics_11_07_2013.pdf (last visited Jan. 15, 2014). Moreover, as plaintiffs argued during the motion hearing regarding the pending motion to stay, it seems only likely that the PTO will continue to decrease the number of IPR petitions it accepts as its caseload grows and the IPR procedures become more familiar to those practicing in this field. To be sure, however, in light of the novelty of the still relatively new IPR procedures, the court is left to speculate regarding the likelihood (or not) of whether a petition will be instituted, and thus I have not afforded this consideration great weight.

marks omitted); *see also Evolutionary Intelligence LLC,* 2013 WL 6672451, at *8 ("If the parties are not competitors . . ., the plaintiff does not risk irreparable harm by the defendant's continued use of the accused technology and can be fully restored to the *status quo ante* with monetary relief.").  Where, as here, the parties are not direct competitors, as neither RPI nor Dynamic practices the '798 Patent, there is little risk that the plaintiff will suffer irreparable harm through the continued use of accused technology that cannot be compensated through monetary relief.  *See Semiconductor Energy Lab. Co. Ltd.*, 2012 WL 7170593, at *3 (finding that the plaintiff would not suffer damage to its revenues because it is not a direct competitor of the defendants); *Evolutionary Intelligence LLC*, 2013 WL 6672451, at *8 (finding no risk that the plaintiff would suffer harm in the marketplace, where the record before the court did not support a finding that it practiced the patents at issue).  Accordingly, this sub-factor weighs in favor of granting Apple's motion.  On balance, however, the four sub-factors comprising the larger prejudice inquiry informing a stay analysis weigh in favor of denying defendant's motion.

C.    Simplification of Issues

At first blush, in light of the PTO's recognized technical expertise, the specter that a decision by the PTO will simplify issues in this case during the IPR process is appealing. *See, e.g., e-Watch Inc. v. Avigilon Corp.*, No. 13-CV-0347, 2013 WL 6633936, at *2 (S.D. Tex. Dec. 17, 2013) ("The Court finds that it is advantageous for the IPR issues to be addressed first by the PTAB and based on its expertise.").  Also appealing is that, by statute, once an IPR decision has been issued by the PTAB, the petitioner is estopped from challenging the validity of any patent claim in an infringement action on the grounds that it either raised or reasonably could have raised during the course of that review.  35 U.S.C. § 315(e)(2).  This, then, suggests that the issues to be addressed in this case will be narrowed by the PTAB's actions.

As enticing as this estoppel rule appears, however, the scope of the IPR process necessarily limits its effect.  Even assuming that the PTO institutes IPR on some or all of the '798 Patent claims, the review is limited to invalidity arguments based on anticipation and obviousness, and then only based on prior art consisting of patents or printed publications.  35 U.S. C. § 311(b); *Automatic Mfg. Sys., Inc. II*, 2013 WL 6133763, at *2.

Thus, barring a cancellation of all of the claims challenged by Apple,[10] the PTAB's IPR decision will serve to enlighten the parties and the court on a limited number of matters, and estoppel will attach only to the claims Apple asserted or could have reasonably asserted before the PTO.[11]

Moreover, as was noted above, in light of the posture of Apple's IPR petitions, it is not at all clear whether the process will, in fact, simplify any of the issues in this action. The PTO has yet to issue an initial determination regarding whether to institute an IPR trial. The standard for granting review is more exacting than under the prior *inter partes* reexamination procedure. *Automatic Mfg. Sys., Inc. II*, 2013 WL 6133763, at *2; *Capriola Corp.*, 2013 WL 1868344, at *2. Accordingly, if review is granted, it follows that there is a strong likelihood that the PTAB's decision will simplify the issues, but only in connection with invalidity defenses based on anticipation and obviousness. Of course, on the other hand, this elevated standard for granting IPR may result in a smaller percentage of trials instituted, than was the case under the former regime. *Universal*

---

[10]     Of course, if the PTO accepts the IPR petition in full, thus choosing to reexamine all of the twenty-one claims of the '798 Patent, and the PTAB concludes those claims are invalid, then the issues in this case would not only be simplified, plaintiffs' claims in their entirety would be rendered moot. *Evolutionary Intelligence LLC*, 2013 WL 6672451, at *6.

[11]     For example, Apple's invalidity claim under 35 U.S.C. § 112 cannot be adjudicated by the PTAB, and thus would remain for trial regardless of the outcome of IPR.

*Elecs., Inc.*, 943 F. Supp. 2d at 1033; *Capriola Corp.*, 2013 1868344, at *2; *accord, Automatic Mfg. Sys., Inc. II*, 2013 6133763, at *2.  Once again, the court is reminded that plaintiff's prediction that the number of IPR petitions accepted for trial will decrease over time is supported by the currently available statistics regarding IPR petitions.  In fiscal year 2014, the PTO instituted approximately four percent less IPR trials than it did for the previous year.  Patent Trial and Appeal Board, AIA Progress, http://www.uspto.gov/ip/boards/bpai/stats/aia_statistics_11_07_2013.pdf (last visited Jan. 15, 2014).

The plaintiffs have invited the court to evaluate the merits of Apple's invalidity contentions and predict that, applying the more strict standard for review under the AIA, the PTO will reject Apple's IPR petitions for trial. Plaintiffs have submitted an expert declaration in support of their position that the PTO will likely deny the petitions outright.  Dkt. No. 41-2.  I have found no authority, however, to suggest that a court, lacking the expertise of the PTO, should examine the strength of a petitioner's claims of invalidity asserted in an IPR petition when addressing a motion to stay. Accordingly, I decline to make any determination regarding the likelihood that the IPR petitions may be instituted, other than to acknowledge the statistics made available by the PTO, which, at least for now, suggest that

it is more likely than not that IPR will be instituted.

In summary, I find that whether any issues attendant to this litigation may simplified through the IPR process is speculative primarily in light of the fact the PTO has yet to accept or deny Apple's petitions for further review. *See Ultratec, Inc.*, 2013 WL 6044407, at *4 ("[T]he fact that the [PTO] has not yet granted the petitions to review the nine patents adds an additional layer of doubt whether the [IPR] will even occur, let alone whether it will simplify the issues or reduce the burden of litigation for the parties or the court."); *Automatic Mfg. Sys., Inc. I*, 2013 WL 1969247, at *3 ("[I]t seems clear that a stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for [IPR] was filed in the [PTO]."). Accordingly, I find that this second factor informing the stay analysis weighs in favor of denying defendant's motion at this time.

D.     Status of This Action

The last relevant factor for consideration by the court when deciding a party's motion to stay focuses on the stage of the litigation proceedings, and whether discovery is complete and a trial date has been set. *Xerox Corp.*, 69 F. Supp. at 406-07. The clear import of this factor is the need to ensure that proceedings in the context of the litigation are not

24

meaningless. The court, however, is charged with the duty to control its docket and to satisfy its obligation to "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; *see also Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. 06-CV-4206, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007) ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts."); *accord, Universal Electronics, Inc.,* 943 F. Supp. 2d at 1035. The plaintiffs, like any other litigant, are entitled to the benefit of this rule. I am, of course, sensitive to the economics accompanying patent litigation, as well as the need to avoid wasteful litigation and conserve party and court resources.

This action has been pending for more than a year when considering the relation-back to the filing of its predecessor action, *Dynamic I.* The parties are winding their way through fact discovery and the claim construction process. Apple has failed to provide justification for halting the claim construction process, at least prior to determination of whether IPR will be granted. The focus of the PTAB in such a proceeding is upon validity; even if an IPR is conducted, that administrative body will not engage in claim construction. In making its determination, the PTAB is mandated to accord claim terms their broadest possible construction. 37

C.F.R. § 42.100(b).  In the event that communications between the parties and the PTAB, or the PTAB, in any final decision, provides insights into claim construction, the court may take them into account even after a claim construction ruling because it retains the power to modify its claim constructions in an infringement action up until the time a jury renders its verdict.  *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005).  In light of the fact that the disputed terms now raised for construction by the court go to the heart of the claims in this case, with nine of ten being found in one or both of the two independent claims in the '798 Patent, *Dynamic I*, No. 12-CV-1579, Dkt. No. 58, unless the petition is granted and all twenty-one claims are invalidated, it does not appear that the claim construction exercise will be a waste of time and resources.  Accordingly, all things considered, the current posture of this case is a neutral factor, weighing neither in favor of nor against granting defendant's motion.

IV.    <u>SUMMARY AND ORDER</u>

Applying the relevant factors, and in consideration of the totality of the circumstances, I find that Apple has failed to carry its burden of establishing that a stay should be granted at this juncture, prior to a decision by the PTO on whether to accept the matter for IPR.  Accordingly,

it is hereby

ORDERED that defendant's motion for a stay of this action (Dkt. No.

39) is DENIED, without prejudice to renewal after the PTO has acted upon

the pending petitions for *inter partes* review.

Dated:     January 15, 2014
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge