IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

RENSSELAER POLYTECHNIC
INSTITUTE, *et al.*,

        Plaintiffs,        Civil Action No.
                                    1:13-CV-0633 (DEP)

   v.

APPLE INC.,

        Defendant.

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFFS:

SKIERMONT PUCKETT LLP        PAUL J. SKIERMONT, ESQ.
2200 Ross Avenue                  AMY E. LaVALLE, ESQ.
Suite 4800W                        DONALD E. TILLER, ESQ.
Dallas, TX 75201                  LENNY HUANG, ESQ.
                                          ALEXANDER E. GASSER, ESQ.

HESLIN ROTHENBERG FARLEY    NICHOLAS MESITI, ESQ.
& MESITI P.C.
5 Columbia Circle
Albany, NY 12203

HARRIS BEACH PLLC             JAMES R. MULDOON, ESQ.
333 West Washington Street      STEVEN P. NONKES, ESQ.
Suite 200
Syracuse, NY 13202

FOR DEFENDANT:

FENWICK & WEST LLP
555 California Street
12th Floor
San Francisco, CA 94101

MENTER, RUDIN
& TRIVELPIECE, P.C.
308 Maltbie Street
Suite 200
Syracuse, NY 13204

TERESA M. CORBIN, ESQ.
HECTOR J. RIBERA, ESQ.
RYAN J. MARTON, ESQ.
DAVID M. LACY KUSTERS, ESQ.
WILLIAM A. MOSELEY, JR., ESQ.

MITCHELL J. KATZ, ESQ.

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

Plaintiffs Rensselaer Polytechnic Institute ("RPI") and Dynamic Advances, LLC ("Dynamic") have sued defendant Apple Inc. ("Apple") for patent infringement. In their complaint, plaintiffs accuse Apple of infringing United States Patent No. 7,177,798 (the "'798 Patent"), entitled "Natural Language Interface Using Constrained Intermediate Dictionary of Results," through implementation of Siri, the personal assistant available on various Apple devices, and specifically Siri's natural language input processing functionality.

Currently before the court is plaintiffs' request for court intervention regarding seven distinct discovery-related issues. In their motion, plaintiffs challenge (1) the printing and copying limitations of Apple's source code

contained within the governing protective order; (2) the existing definition of "source code" set forth in the protective order; (3) the provision in the protective order governing designation of documents as "source code"; (4) Apple's refusal to produce all requested Siri source code for inspection; (5) the sufficiency of Apple's response to an interrogatory propounded by the plaintiffs concerning Siri's function and source code; (6) Apple's alleged improper designation of required disclosures under the court's local patent rules; and (7) Apple's position as to the scope of a deposition to be taken of its records custodian. For the reasons set forth below, plaintiffs' motion is denied.

I.     BACKGROUND

This action was commenced on June 3, 2013.[1] On April 3, 2013, at the joint request of the parties, the court issued a protective order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, accompanied by an order governing electronic discovery. The protective order placed strict parameters on plaintiffs' review of Apple source code, requiring that such materials be made available for inspection at Apple's

---

[1] A precursor action was filed on October 19, 2012, by Dynamic Advances, the exclusive licensee under the '798 Patent. *See Dynamic Advances, LLC v. Apple, Inc.*, No. 12-CV-0159 (DNH/DEP). That action was discontinued without prejudice to the right of the parties to litigate, in the instant case, the claims and defenses asserted in that action.

offices, under supervision, on secured, stand-alone computers, with limited ability of plaintiffs' representations to take notes or otherwise replicate the source code. *Id.* Under the agreement, plaintiffs are permitted to print limited source code excerpts "only when reasonably necessary to prepare court filings or pleadings or other papers (including a testifying expert's report)." The order presumes that the printing of either more than ten pages of a continuous block of source code, or in excess of 200 pages in total, is excessive. The order further specifies that, in the event plaintiffs believe that the page limits set forth in the protective order are unduly burdensome, they must negotiate in good faith with Apple to resolve the dispute prior to raising the issue with the court.

In October 2013, plaintiffs reviewed four versions of the Siri Natural Language Processing ("NLP") source code, comprised of over 46,000 files and 62,000 directories, and containing more than 17 million lines of code. One of those versions, identified as "903," contained nearly 10,000 files alone, distributed over more than 13,000 directories, and contained more than two million lines of code. Apple's attorneys have informed plaintiffs' counsel that yet another version of the server-side Siri NLP source code, corresponding to the newest operating system, is now available for inspection.

During the course of discovery, plaintiffs propounded a first set of interrogatories. One of those interrogatories requested the following information:

> INTERROGATORY NO. 2:
>
> Identify each of Siri's functional blocks involved in any task performed as part of Siri's natural language processing function, including Siri's natural language interface function, including by listing: the name, code name, nickname, or other identifier of the functional block; the name of every data structure, object, method, property, library, function, procedure, or other pertinent block of source code that is an instance, implementation, description, or definition of all or a portion of the functional block; for each source code file that includes an instance, implementation, description, or definition of the functional block, the location of the pertinent block of source code within each file; and each document (by production number) that contains a full or partial description of the functional block.

Apple responded as follows:

> RESPONSE TO INTERROGATORY NO. 2:
>
> Apple incorporates by reference its General Objections as if fully set forth herein. Apple objects to this Interrogatory to the extent it calls for production of confidential or proprietary information. Apple objects to this Interrogatory to the extent it seeks discovery of information protected by the attorney-client privilege, work product immunity, or any other applicable privilege or protection. Apple objects to this Interrogatory to the extent that it seeks discovery that is obtainable

from some other source that is more convenient, less burdensome, or less expensive, including, but not limited to, information that is publicly available and information sought in response to other discovery requests. Apple objects to this Interrogatory as overly broad to the extent it seeks information that is not relevant to the claims or defenses asserted in this litigation or the subject matter of this litigation, or that is not reasonably expected to lead to the discovery of admissible evidence. In particular, Apple objects to this Interrogatory as overbroad, burdensome, vague, ambiguous and unintelligible in general and in particular to the extent that it seeks the identification of all documents that contain a description of the functional block, rather than documents sufficient to show the functionality. Apple objects to this Interrogatory as vague and ambiguous, particularly with respect to the terms 'functional block' and 'natural language interface function.' Apple objects to this Interrogatory as impermissibly compound.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds as follows: Pursuant to Rule 33(d), Apple identifies the source code made available pursuant to Patent L.R. 3-4(a) and documents labeled with Bates numbers APLDynAdv_00000001 through APLDynAdv_00000371.

On February 13, 2013, the court held a hearing in connection with this action to address various issues. Among them was the number and duration of depositions to be taken in the case. During that hearing, I limited the total number of hours of deposition for fact and Federal Rule of Civil Procedure 30(b)(6) witnesses to seventy hours per side, with a

maximum of seven hours for each individual witness.  I also permitted an additional seventy hour maximum for each expert identified, and an additional seven hours for the deposition of one or more records custodians.  In accordance with that authorization, plaintiff Dynamic Advances served a notice on August 23, 2013, seeking to depose an Apple records custodian.  The notice contained a comprehensive set of definitions and identified fifty-eight separate topics to be addressed during the deposition.

II.     DISCUSSION

   A.     Relief from Stipulated Protective Order

In their motion, plaintiffs request modification of the existing protective order in three respects.  First, they argue that the printing and copying limits contained within the protective order are unduly restrictive and should be expanded.  Second, they request that the definition of "source code" be relaxed.  Third, plaintiffs ask the court to amend the requirements for designating a "source code" document under the protective order.

Rule 26(c) of the Federal Rules of Civil Procedure empowers a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ.

7

P. 26(c). In this instance, the governing protective order was the product of extensive negotiations between the parties, involving the exchange of nine drafts between December 17, 2012, and February 6, 2013. Following a court hearing on February 13, 2013, the parties continued their negotiations, exchanged additional drafts, and submitted a stipulated protective order to the court on April 1, 2013. Following review, that order was approved and entered by the court on April 3, 2013.

Notwithstanding the issuance of any protective order, the court possesses the power to modify it, even over the objection of one of the parties initially agreeing to its entry. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d Cir. 2004). A party requesting modification, however, bears a heavy burden to establish justification for granting that request. *See Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978) ("[W]here a protective order is agreed to by the parties before its presentation to the court, there is a higher burden on the movant to justify the modification of the order."). In this case, plaintiffs have cited no changed or unforeseen circumstances that would warrant relieving them of their agreement in connection with the protective order.

It should be noted that the somewhat drastic strictures included in the stipulated protective order reflect the extent to which Apple protects

8

the security of its proprietary, trade-secret source code.[2]  To ensure the desired measure of security, the protective order is specifically structured to permit source code review only under rigid conditions, including use of stand-alone computers at Apple, under the supervision of Apple employees, and with limitations on printing and copying.  Under the protective order, source code printing is allowed only "when reasonably necessary to prepare court filings or pleadings or other papers (including a testifying expert's report)."  Even then, the order sets forth limitations on the extent of the printing.  The protective order also provides a mechanism for plaintiffs to address concerns that the specified page limits are overly burdensome.  When such a concern is raised, the order requires the parties to negotiate prior to raising the issue with the court.[3]

While plaintiffs' request seeks relief from the protective order's printing and copying limits, it is not tied to any necessary preparation of court filings or pleadings or other papers, including testifying expert reports.  Instead, plaintiffs' application for modification of that provision points to other cases in which less severe limits upon copying have been

---

[2] The importance of the source code and the measures of protection implemented at Apple are detailed in a declaration provided by Siamak Hodjat, an Apple Software Development Engineer.  Dkt. No. 79-5.

[3] According to Apple, plaintiffs have failed to follow the agreed-upon procedure for resolving source code printing disputes.

imposed, and again is not tied to any particular need for copying in this case. Based upon these circumstances, I find that plaintiffs have not carried their burden of establishing a basis to relieve them of the agreed-upon copying and printing limitations set forth in the protective order.[4]

Plaintiffs also seek a modification to the definition of the term "source code" as used in the protective order. As currently comprised, the order defines "source code" as follows:

> 'Source Code' means computer code, scripts, assembly, object code, source code listings, and descriptions of source code, object code listings and descriptions of object code, and Hardware Description Language ('HDL') or Register Transfer Level ('RTL') files that describe the hardware design any ASIC or other chip.

Plaintiffs propose removing both "computer code" and "descriptions of source code" from the existing definition of source code, and replacing them with, respectively, "computer code in a format that can be directly

---

[4] In this respect, the court pauses to make three observations. First, the court agrees with Apple that the three sample documents cited by plaintiffs in fact contain Siri computer code, scripts, and description of source code, contrary to plaintiffs' assertions, and thus fall within the definition of source code under the protective order. Those documents include Apple-SC000000 91-98, Apple-SC000000 91-123, and Apple-SC00000124-162. Second, the governing protective order does not limit plaintiff's access to source code and descriptions of source and object code. Instead, it merely provides a limitation on the copying and printing of such documents. Third, the court's denial of plaintiffs' current application does not limit their right, in the future, to object with particularity to the limitations following the procedure outlined in the protective order by first engaging in good-faith discussions with Apple, and then submitting the dispute to the court.

compiled" and "source code in a format that can be directly compiled." According to plaintiffs, their proposed modifications would eliminate documents that merely describe Siri's design or architecture, which plaintiffs contend are not part of the true source code, from the definition. Apple objects, noting that documents describing the architecture of source code are every bit as proprietary and trade-secret as the source code itself, which is the reason for including source code and descriptions of object code in the definition. Once again, I find no basis to modify the previously agreed upon definition of source code.

Finally, plaintiffs request the court amend the requirements under the protective order for designating a "source code" document. According to plaintiffs, the protective order's provisions regarding the designations of documents as "Confidential – Outside Attorneys' Eyes Only" and "Confidential – Outside Attorneys' Eyes Only – Source Code" are inconsistent in that the former requires a much higher standard. Apple disagrees that there is an inconsistency, and acknowledges that confidential source code "would always qualify as 'Confidential – Outside Attorney's Eyes Only.'" Because the court cannot discern the inconsistency asserted by plaintiffs, and because it appears the parties are not actually in disagreement, plaintiffs' request to modify the provision

governing "source code" designation of documents is denied.

B.  Inspection of All Siri Source Code

During discovery, plaintiffs have requested specific versions of (1) all server-side source code implementing any Siri function, (2) all client-side source code for implementing or interfacing to any Siri function, and (3) all device source code for implementing or interfacing to Siri. Apple acknowledges that, in response to this request, it has produced only portions of Siri source code corresponding to Siri's NLP functionality. Plaintiffs argue that the undisclosed source code is relevant either to the issue of infringement under the '798 Patent, or, at a minimum, to a reasonable royalty damage computation.[5]

A review of plaintiffs' complaint and infringement contentions reveals

---

[5]  The court rejects plaintiffs' assertion that Apple has waived an objection to their request for the production of all Siri source code. That argument is based upon Apple's failure to object to a source code inspection notice served by the plaintiffs under the Rule 26(c) stipulated protective order. It is true, as plaintiff's note, that the failure to object to a request for the production of documents or a notice of inspection under Rule 34 in a timely fashion can result in a waiver of any objections. *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 236 (W.D.N.Y. 1998). In this case, plaintiffs' request for the production of all Siri's source code is dated March 15, 2013. Objections to that document request, specifically objecting to the demand for all Siri source codes, were submitted on April 18, 2013, and thus within the thirty-day period for raising such objections. Plaintiffs now contend that its notice-of-source-code review, issued to Apple seven months later on August 23, 2013, is an additional, formal document demand under Rule 34. It is clear, however, that the notice was intended not as a demand, but rather a request to review source code as required by the protective order. The court therefore does not view Apple as having waived the right to object to the production of irrelevant source code.

their contention that Apple directly infringes the asserted claims by performing all steps disclosed "in processing natural language through the Siri technology." To support their position, plaintiffs point to two claim limitations in the '798 Patent, including "providing a natural language query by the user" and "providing, through a user interface, a result of the search to a user." The record now before the court discloses, however, that Apple has made available for inspection the source code providing this functionality.

Plaintiffs contend they need all Siri source code to calculate reasonable royalty damages. It does not appear, however, that the entire source code is necessary to determine the importance of NLP functionality features to the other, non-accused features comprising Siri for purposes of a reasonable royalty analysis. The court therefore rejects plaintiffs' efforts to expand discovery in this action by utilizing a reasonably royalty argument. To the degree there may be minimal relevance of the non-accused source code for purposes of determining the importance of the accused features to the whole of the Apple product, it is far outweighed by the burden, annoyance, and expense of complying. The court therefore finds that the rule of proportionality applies and dictates against requiring the production of non-accused source code. Fed. R. Civ. P.

26(b)(2)(C)(iii).

In sum, the court rejects plaintiffs' request for an expanded production of Siri's source code. Apple will be required, however, to certify that it has produced all Siri source code related to NLP functionality for inspection by plaintiffs.

C. Interrogatory No. 2

Plaintiffs' interrogatory no. 2, which is recounted above, requests detailed information concerning Siri's NLP functionality. As Apple argues, on its face the interrogatory requests a full annotated narrative description of Siri's source code. And, as plaintiffs have noted, the NLP source code of Siri is exceedingly extensive. The court agrees with Apple that the appropriate vehicle for discerning the information sought is to make available, for plaintiffs' review, Apple's source code, which Apple has agreed to do, and to provide one or more witnesses for deposition in order to permit plaintiffs to probe the functionality and explanation for everything that remains unclear after a review of the source code. While plaintiffs argue that the prerequisites for invoking Rule 33(d)(1) of the Federal Rule of Civil Procedure have not have been satisfied in the case, I conclude that the foregoing procedure represents the most efficient and effective

means of obtaining the information sought.[6]  I therefore find that defendant Apple has made a proper response to interrogatory no. 2.

### D. Proper Designation of Disclosures Under Local Patent Rule 3.3

On April 4, 2013, Apple served non-infringement and invalidity contentions on plaintiffs in the previously filed case, No.12-CV-1579 (DNH/DEP), pursuant to rule 3.3 of the local patent rules of practice for this court.  Those contentions were supplemented on April 25, 2013.  The bodies of both of those contentions were designated as "confidential" under the parties' protective order.  The accompanying appendices were designated as "confidential-outside attorneys eyes only (technical)."  In

---

[6] That rule provides, in relevant part,

> [i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records, including electronically stored information, and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> > (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> >
> > (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).  The court believes that these minimal requirements for invoking Rule 33(d) actually have been met in this case.

15

their motion, plaintiffs request the court direct Apple to remove the confidential designation from the main bodies of the two documents.

In its response to this portion of the motion, Apple contends that plaintiffs have not suffered any prejudice. A redacted, confidential version of its non-infringement chart was provided to plaintiffs. Of the forty pages, twenty-seven short sections were redacted. Apple has also provided plaintiffs with a redacted version of its contentions, designated as confidential, meaning that counsel is able to share those redacted versions with plaintiffs' representatives.

After careful consideration, the court discerns no prejudice associated with the designation, and no compelling reason why the designation should be modified. I note that the protective order provides for a process to be followed should a party object to a designation. The order also provides a standard by which designation changes should be made, and casts the burden upon the party seeking modification to justify a re-designation. In this case, it does not appear that the requisite procedure was followed or that plaintiffs have justified the request for re-designation.

E. Records Custodian Deposition

When addressing the question of depositions in this case, the court

has previously noted that, consistent with standard practice in these types of cases, each side should be permitted seven hours to conduct the deposition of one or more records custodians. It was envisioned that any such deposition would broadly describe the system for retaining records and the record retention policy of a party, and would identify the custodian of the particular records. The aim was to provide sufficient information to allow the inquiring party to serve a focused request for the production of documents based upon what was learned during the deposition.

Taking advantage of that opportunity, plaintiffs have served a deposition notice on Apple that contains fifty-eight expansive subjects to be covered by an Apple representative. While, in a broad sense, those fifty-eight categories purport to seek only information concerning the existence of records, the notice requests specific information concerning a broad array of documents. An example of the topics specified in the notice of deposition is as follows:

> The location and identity of documents and the custodians of documents concerning any economic evaluation, market analysis, sales analysis, marketing plan, marketing strategy, market research, forecast, business plan, development plan, or consumer research or survey, advertising, or other market evaluation or communications relating to any natural language processing technology or Siri that was created, performed, reviewed, or published by or for Apple since April

7, 1999.

This request goes far beyond seeking testimony that may provide a broad overview of the types of records contained, the format in which they are retained, and the applicable document retention policy and the custodian of records. Indeed, it purports to require a search by the records custodian to discern whether specific documents exist. This was not what was contemplated when the court permitted the deposition of a records custodian. Accordingly, the court hereby strikes plaintiffs' notice of deposition and directs that any deposition of an Apple records custodian be conducted consistent with the foregoing guidance.

III. ORDER

Based upon the foregoing, it is hereby

ORDERED as follows:

(1) Within fourteen days from the date of this order, Apple shall certify to plaintiffs that it has made available or offered to make available all existing source code related to Siri's NLP functionality for inspection by plaintiffs' representatives.

(2) With the exception of the foregoing, plaintiffs' motion to compel discovery (Dkt. No. 66) is DENIED.

(3) No costs or attorney's fees are awarded to any party in

connection with plaintiffs' motion to compel discovery.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   May 8, 2014
         Syracuse, New York